Clerk's Office
Filed Date: 9/2/21

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

---------------------------------------------------------------

GILEAD SCIENCES, INC., GILEAD SCIENCES
IRELAND UC, and GILEAD SCIENCES, LLC,

                   Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC; PATRICK
BOYD; CHARLES BOYD; WORLDWIDE
PHARMA SALES GROUP, INC. d/b/a
PHARMASALES.COM; ADAM S. BROSIUS;
BOULEVARD 9229 LLC; ISHBAY SHUKUROV;
PETER KHAIM; ZAFAR ABDULLAEV;
PROPHARMA DISTRIBUTION LLC; LEVI
ELLIS; SYNERGY GROUP WHOLESALERS
LLC; CARLOS VEGA; ISLAND CHEMISTS,
INC. d/b/a MEADOW DRUGS & SURGICAL;
RANDOLPH MOHABIR; V.L.S. PHARMACY
INC.; GOPESH M. PATEL; LIN PHARMACY
INC. d/b/a MAKKI PHARMACY; SAMUEL
YAKUBOV; MONICA A. NGO; ASCENSION
PHARMACY HOLDINGS I LLC d/b/a
MERMAID RX AND ARIEL PHARMACY; and
ALEX GELBINOVICH,

                   Defendants.

---------------------------------------------------------------

Case No. 21-cv-4106 (AMD) (RER)

**FILED UNDER SEAL
PURSUANT TO 15 U.S.C. § 1116(d)
AND COURT ORDER (DKT. NO. 20)**

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE FOR CONTEMPT SANCTIONS AGAINST DEFENDANTS PETER KHAIM, BOULEVARD 9229 LLC, SYNERGY GROUP WHOLESALERS LLC, AND CARLOS VEGA

Plaintiffs Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead Sciences, LLC

(together, "Gilead") respectfully submit this memorandum of law in support of its Order to Show

Cause for Contempt Sanctions against Defendant Boulevard 9229 LLC ("Boulevard") and its

principal Peter Khaim ("Khaim") (the "Boulevard Defendants") and Synergy Group Wholesalers

LLC ("Synergy") and its principal Carlos Vega ("Vega") (together, the "Synergy Defendants").

1

In this anti-counterfeiting action, Gilead recently completed its second round of seizures against sellers of dangerous counterfeits of Gilead's HIV medication. Those seizures were successful, and led to Gilead removing thousands of infringing bottles with fake pedigrees from the distribution stream. However, two sets of Defendants – the Boulevard Defendants and the Synergy Defendants – are acting in open defiance of this Court's orders to produce corporate records regarding their counterfeiting and, in so doing, these Defendants are actively impeding Gilead's ability to continue tracing and removing these dangerous counterfeits from the market. Having infused the U.S. pharmaceutical supply chain with these counterfeits, the Boulevard Defendants and the Synergy Defendants are now flouting this Court's orders requiring them to immediately produce records concerning their trafficking of all Gilead-branded medicines. Gilead urgently needs this information in order to keep counterfeit HIV medication out of patients' hands.

The Boulevard Defendants and the Synergy Defendants have each invoked the Fifth Amendment in an attempt to excuse their refusal to comply with this Court's orders. For present purposes, and without waiver of any arguments, Gilead seeks contempt sanctions solely with regard to these Defendants' failure to produce Boulevard's and Synergy's corporate records. The black-letter law is beyond debate: there is no Fifth Amendment right to refuse to produce corporate documents. The corporations themselves, Boulevard and Synergy, have no Fifth Amendment rights. And even in closely held, one-person corporations, the individual custodians of corporate records, such as Khaim and Vega, cannot invoke the Fifth Amendment to refuse to produce those records, regardless of whether those documents might implicate them in a crime.

There is no excuse under the law for these Defendants' willful refusal to turn over the corporate records they have already been ordered to produce. The public health need for those

2

documents is acute and urgent. The Court should hold Boulevard, Khaim, Synergy, and Vega in contempt, and issue coercive sanctions until they comply. Gilead encloses a proposed order to show cause, and respectfully suggests that the issue should be heard at the conference in this action set for 1:30 p.m. tomorrow, September 3, 2021.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Seizure Order and Asset Freeze Order

In addition to allowing Gilead to seize products and documents, this Court's Seizure Orders (Dkt. Nos. 18, 46) contains the following provisions that require the Boulevard Defendants and Synergy Defendants to provide documents and information:

- "Defendants and their employees shall provide all keys, passwords, or codes needed to inspect the contents of any rooms, closets, cabinets, safes, vehicles, containers, desks, electronic storage devices, computer drives, desktop computers, laptop computers, or tablets located on the premises." Dkt. No. 18, at 3; Dkt. No. 46, at 4-5.

- "[I]mmediately upon receipt of this Order, Defendants shall disclose to Gilead's attorneys and investigators the following information concerning their purchases and/or sales of any product bearing any of the Gilead Marks . . . from January 1, 2019 to the present: (1) the Drug Supply Chain Security Act pedigree documentation; (2) the price and quantity of each purchase or sale; (3) the product, including the specific type or variety of product; (4) the lot numbers; (5) the contact information, including names, address, email addresses, and telephone numbers of all associate individuals and/or companies from which Defendants have purchased or to whom Defendants sold the products . . . ." Dkt. No. 18, at 4-5; Dkt. No. 46, at 6.

- "ORDERED that Defendants serve by email and mail upon Gilead's counsel ... five days before the [September 3, 2021] confirmation hearing [*i.e.*, by August 29, 2021] scheduled herein copies . . . of all business records, inventory records, invoices, emails, text messages, instant messages [and other types of documents] ... relating or referring in any manner to the manufacture, promotion, publicity, advertising, receiving, acquisition, importation, shipment, purchase, sale, offer for sale or distribution of any merchandise bearing any of the Gilead Marks . . . that are in the possession custody, or control of any Defendant . . . ." Dkt. No. 18, at 6; Dkt. No. 46, at 7-8.

Moreover, the Asset Freeze Order (Dkt. No. 47) provides in relevant part:

- "Immediately upon Receipt of this Order ... Peter Khaim ... Synergy Group Wholesalers LLC ... and Carlos Vega shall disclose to Plaintiffs' attorneys a list of all

assets held by, for, or on account of them, including an account for which they have signatory authority, in any bank, brokerage house, or financial institution, including account title, account number, and balance." Dkt. No. 47 ¶ 2.

## B.  The Boulevard Defendants

In its original moving papers in support of the first round of seizures, Gilead set forth substantial evidence that Defendant Boulevard was a knowing, fly-by-night counterfeiter who sold thousands of bottles of purported Gilead medication with fake pedigrees. Before filing suit, Gilead retrieved samples of these bottles sold by Boulevard and confirmed them to be counterfeits, with the wrong pills in the bottle. Decl. of Susmitha Sunkara, dated July 20, 2021 ("First Sunkara Decl.") ¶¶ 39-43, 54-58. Because Boulevard abandoned its corporate offices, Gilead sought and obtained an order allowing it to conduct the seizure at the residence of Boulevard's owner (now known to be only a nominal owner), Defendant Ishbay Shukurov ("Shukurov"). Decl. of Patrick McAllister, dated July 19, 2021 ¶¶ 3-10; Decl. of Hannah Coleman, dated July 21, 2021 ("First Coleman Decl."), Exs. 3-4.

During the seizure at his home, Shukurov professed near-complete ignorance and claimed he was paid to "sign some papers" and given a monthly $5,000 bribe to keep Boulevard under his name. Decl. of Thomas P. Kurland, dated Aug. 3, 2021, ¶¶ 4-5. From its seizure at the offices of Defendant Safe Chain Solutions, LLC ("Safe Chain"), Gilead learned that the individual who was actually directing Boulevard's counterfeiting was Peter Khaim. Khaim texted directly with Safe Chain's CEO to peddle the counterfeits (Khaim's number was saved as "Peter Boulevard" in Safe Chain's CEO's phone), and Khaim arranged for their hand delivery to Safe Chain of obviously illegitimate Gilead-branded product in loose, jumbled boxes. *See* Decl. of Geoffrey Potter, dated Aug. 18, 2021 ("Second Potter Decl.") Exs. 49, 50, 53, 54, 55. From the Safe Chain seizure, Gilead knows that Khaim, through Boulevard, sold **14,899 bottles of**

4

**purported Gilead medication with fake pedigrees worth roughly \$46.6 million**. *Id.* ¶ 14.

And that is just the Gilead product that Boulevard sold to Safe Chain – documents obtained from the seizure and third-party discovery show that Boulevard also offered large quantities of Gilead-branded medicines to other customers as recently as mid-August 2021 – all while Khaim was on pretrial supervised release on a \$3 million bond in the pending healthcare fraud criminal matter pending before Your Honor. *See, e.g.*, Decl. of Geoffrey Potter, dated Sept. 2, 2021 ("Third Potter Decl.") Ex. 66; *see United States v. Peter Khaim*, No. 20-cr-580 (AMD) (RML) (E.D.N.Y.).

Gilead added Khaim as a defendant in its First Amended Complaint on August 19, 2021, and sought and obtained a temporary restraining order, asset freeze order, and seizure order against him. Dkt. Nos. 45, 46, 47. Gilead executed the seizure at Khaim's palatial house in Queens:



Decl. of Timothy Waters, dated Sept. 2, 2021 ("Waters Decl.") ¶ 3.

Khaim's home has multiple CCTV cameras pointed at the street, and he came out to meet law enforcement before they could enter the premises. *Id.* ¶ 4. He immediately claimed not to have a phone or a computer – which Gilead of course knew to be false, because Khaim had personally texted with Safe Chain on behalf of Boulevard. *Id.* ¶ 5. Although the Seizure Order specifically stated Khaim's phone should be seized, Dkt. No. 46, at 4, Khaim continued to deny that he owned a phone and refused to disclose its location. Waters Decl. ¶ 5. Only after being told that the seizure team would have to complete a thorough, room-by-room search of all locations where he could have hidden his phone did Khaim speak to his counsel and finally agree to produce at least one of his phones. *Id.* Khaim's counsel explained that he would produce the phone – and, at Gilead's request, briefly showed that the phone had recently received multiple text messages – but would produce it locked, and would not provide the passcode to unlock it. *Id.* ¶ 6.

Although Khaim refused to provide the passcode, Gilead's forensic collection specialists were able to unlock the phone. *Id.* ¶ 7. It was associated with two gmail.com email addresses: pkhaim01@gmail.com and consultinggroup910@gmail.com. *Id.* For both addresses, the phone had a limited number of cached emails – *i.e.*, locally stored copies of messages that could be accessed without an internet connection. *Id.* The cached emails did not have any attachments, and they could not be copied, forwarded, or forensically collected: they could only be viewed on the device itself. *Id.* The cached emails showed that on the morning of the seizure, Khaim's phone had downloaded emails from both email addresses. *Id.* But when Gilead's forensic analysts unlocked the phone and connected it to the Internet, the Gmail passwords stored on the phone no longer worked: **Khaim had already changed the passwords to all his email**

6

**accounts**, deliberately making it impossible for Gilead to review emails (other than the locally stored cache). *Id.*

Despite Khaim's obstruction, Gilead was able to confirm that Khaim used both email addresses identified above to conduct Boulevard business. For example, on the morning of the seizure, August 23, 2021, Boulevard's insurance broker emailed copies of Boulevard's latest policy to Khaim at pkhaim01@gmail.com; a copy of that email was stored in the cache. *Id.*; Third Potter Decl. Ex. 68. And Khaim had locally saved on one of his computers an email that his corporate agent sent to consultinggroup910@gmail.com when Boulevard was first formed in July 2019, providing copies of Boulevard's initial corporate filings, including its articles of incorporation and New York filing receipt. *Id.* Ex. 67. Moreover, as noted above, the phone that Khaim produced had recent text messages in which Khaim attempted to sell large quantities of purported Gilead medications. *Id.* Ex. 66.

Khaim and Boulevard have not produced *any* documents in this action, in defiance of the Seizure Order. Notably, although Gilead knows that Khaim has asked Boulevard business contacts, including Safe Chain, to contact him at 646-678-7468, Gilead has not been provided a phone utilizing this number, and Gilead has no idea what communications might have been made on that device. *See, e.g.*, Second Potter Decl. Exs. 49, 50, 54. Gilead is also aware that Khaim used the email address consulting012345@gmail.com to sell counterfeit Gilead medicines to Safe Chain from Boulevard. *See, e.g.*, *id.* Ex. 56. But, because of Khaim's refusal to comply with the Court's orders, Gilead is unable to discovery additional information concerning Boulevard's businesses.

Khaim continues to act in defiance of this Court's orders by not producing a single document or piece of information. Through his counsel, Khaim has generally asserted his Fifth Amendment privileges to all aspects of the Seizure Order and Asset Freeze Order.

## C. The Synergy Defendants

Similarly, Synergy sold Safe Chain **2,757 bottles** of purported Gilead product with fake pedigrees worth roughly **$8.6 million** – and Synergy almost certainly sold to entities other than Safe Chain. Second Potter Decl. ¶ 15. Vega is Synergy's owner and sole principal. Decl. of Hannah Coleman, dated Aug. 18, 2021 ("Second Coleman Decl.") Ex. 24. From the Safe Chain seizure, Gilead knows that Vega routinely did business with Safe Chain on behalf of Synergy using, at minimum, the email address carlos@synergygroupwholesaler.com. *See e.g.*, Second Potter Decl. Ex. 58, 60.

In prior motion papers, Gilead described Synergy's brazen scam to pass off its infringing product as though it were legitimate Gilead medication from an authentic source. Vega sent an email that purported to be from a real employee of Cesar Castillo, a Gilead-authorized distributor. The email copied the real employee's information, but used a spoofed email address; Vega sent it from the domain @cesarcastilloinc.co, when real Cesar Castillo employees use the domain @cesarcastillo.com. *See* Second Coleman Decl. ¶¶ 30-32 & Ex. 27. In the spoofed email, Vega fraudulently claimed Synergy bought its Gilead-branded medicines from Cesar Castillo, the authorized distributor. *Id.*

Like Boulevard, Synergy's offices were abandoned by the time they were visited by Gilead's investigators, and so Gilead moved for the seizure to occur at Vega's home in Miami. Decl. of Patrick McAllister, dated Aug. 12, 2021 ("Second McAllister Decl.") ¶¶ 3-8. Gilead executed that seizure on August 23, 2021.

8

At the seizure, Gilead learned that Vega and Synergy had taken its fake "Cesar Castillo" scam even further. In his residence, Vega had checkbooks for a company called "Cesar Castillo LLC." Decl. of Aron Fischer ("Fischer Decl.") ¶ 3; Third Potter Decl. Ex. 69. As the addresses on the checks indicated, this copycat Cesar Castillo had been founded in Colorado. *Id.* There can be no doubt that the Synergy Defendants used, or planned on using, that copycat "Cesar Castillo" to continue its scam of selling purported Gilead products by creating a fraudulent paper trail to pretend the medication came from a Gilead-authorized distributor.

Vega was present during the seizure, but refused to provide any information about the activities of Synergy. Fischer Decl. ¶ 4. During the course of the seizure, counsel for the Synergy Defendants, Juan Berrio, spoke with Gilead's counsel. Mr. Berrio stated that his clients would not be producing documents or information until further notice. *Id.* Mr. Berrio maintained this position even when Gilead's counsel explained that such a position would put his clients in contempt of the Court's orders. *Id.*

Among the items seized from Vega's home were: one password-locked smartphone and one password-locked desktop computer. *Id.* ¶ 5. The number for the locked phone is the number that Synergy listed as its primary business contact number when it applied for and received state licensure as a pharmaceutical wholesaler. *Id.*; Second Coleman Decl. Ex. 26 & ¶¶ 28-29. At the seizure, Vega confirmed that the locked phone was the one he had listed on Synergy's license and that he used it to conduct Synergy's business. Fisher Decl. ¶ 5. Vega also confirmed at the seizure that he used the locked computer to conduct business, and distinguished it from an unlocked computer that he said was personal. *Id.*

Vega refused to provide the passwords for the locked devices.[1]  *Id.*  Neither Synergy nor Vega have produced any of the documents or information they were required to produce under the Seizure Order and the Asset Freeze Order.

## ARGUMENT

Each of the four Defendants at issue in this motion – Boulevard, Khaim, Synergy, and Vega – are intentionally violating this Court's orders.  This Court ordered that the Defendants be compelled to produce the documents and information at issue on an immediate or highly expedited basis because Gilead needs that information to stop the spread of counterfeit HIV medication sold by the Defendants.  The Boulevard and Synergy Defendants are openly in contempt.

**A.  Under Black-Letter Law, Neither the Corporate Nor the Individual Defendants Can Refuse to Produce Corporate Records Under the Fifth Amendment**

Boulevard has yet to appear through counsel in this action.  The remainder of the defendants at issue – Khaim, Synergy, and Vega – are all represented by counsel with criminal-law expertise, and all of them have invoked the Fifth Amendment in refusing to comply with this Court's orders.

Under certain limited circumstances, individuals may resist the production of personal documents under the Fifth Amendment pursuant to the so-called act-of-production privilege.  *See e.g.*, *Braswell v. United States*, 487 U.S. 99 (1988).  But *Braswell* also settled the issue that that the act-of-production privilege does not apply with regard to corporate records, and "a corporate

---

[1] On Thursday, September 2, 2021, at 11:51 A.M. EDT, as Gilead's counsel was preparing to file these papers by hand before the Clerk's Office closed to the public at 3:00 P.M., the Synergy Defendants' lawyer emailed purported passwords for two of the locked devices to Gilead's counsel.  This belated effort does not cure the Synergy Defendants' contempt.  The Synergy Defendants have still failed to provide the passwords for any business email accounts, the documentation required to trace the purchase and sale of the counterfeit Gilead medicines, and documentation concerning the location of the millions of dollars of proceeds for the counterfeits that Safe Chain bought from the Synergy Defendants.

custodian . . . may not resist a subpoena for corporate records on Fifth Amendment grounds." *Braswell*, 487 U.S. at 108-09. As the Second Circuit recently summarized it: "Because the Fifth Amendment privilege protects only natural persons, collective entities such as corporations or partnerships may not invoke it to evade document requests. Nor may an individual custodian holding a collective entity's records in a representative capacity refuse to produce documents." *United States v. Fridman*, 974 F.3d 163, 180 (2d Cir. 2020) (citations omitted) (citing, *inter alia*, *Braswell*, 487 U.S. at 102, 104-08); *see also Armstrong v. Guccione*, 470 F.3d 89, 97-100 (2d Cir. 2006) ("In *Braswell v. United States*, the Supreme Court held that a corporate custodian could not invoke the Fifth Amendment as a basis for refusing to produce corporate records, even though the act of producing those records has independent testimonial significance, which might incriminate the custodian personally.").

Under *Braswell* and its progeny, it is immaterial whether the custodian of corporate records happens to be the sole owner and principal of the corporation. Even in the case of "one-person corporations," the Fifth Amendment does not apply, and the custodian must produce the corporate documents, even if those corporate records implicate the custodian personally in a crime. *See Fridman*, 974 F.3d at 181.

### B. The Court Should Hold Each of the Boulevard Defendants and the Synergy Defendants in Contempt and Issue Coercive Sanctions

Here, there is no doubt that the Boulevard Defendants and Synergy Defendants have responsive corporate records in their possession, custody, and/or control that they are willfully refusing to produce – including, most saliently, records of Boulevard's and Synergy's purchases of the fake drugs from their suppliers (or their manufacture of the counterfeits), as well as their sales to customers other than Safe Chain. Those documents are critical to determining the source

11

of the counterfeit medicines and to remove the Defendants' potentially dangerous counterfeits from the pharmaceutical supply chain.

The corporate Defendants at issue, Boulevard and Synergy, have no Fifth Amendment rights. They are nakedly and willfully in contempt of this Court's orders to produce their business records and should be so held. The individual principals and custodians, Khaim and Vega, are equally in willful contempt. Khaim and Vega routinely and personally sold purported Gilead products on behalf of their respective companies. And Khaim and Vega are the *only* representatives of their respective companies that appear in the communications with Safe Chain and the sole custodian of their respective company's corporate records.

Individuals who are the custodians of corporate records and refuse to produce them by making a meritless claim of Fifth Amendment privilege are properly subject to contempt sanctions. *See, e.g., Braswell*, 487 U.S. at 108-09 (affirming order of contempt against individual who refused to produce subpoenaed corporate documents). Although, as in *Braswall*, this issue often arises in the context of a grand jury subpoena, contempt sanctions against custodians of corporate records are equally appropriate in civil cases. *See, e.g., Diamant v. GMS Diamonds Corp.*, No. 04-cv-2636, 2004 WL 2710028, at *1-2 (S.D.N.Y. Nov. 24, 2004) (holding, in a breach-of-contract case, the sole owner and principal of the defendant corporation could not refuse to produce corporate records under the Fifth Amendment, finding the owner to be in contempt, awarding attorneys' fees, and setting a daily monetary fine until the owner produced the documents). Indeed, in a civil securities fraud case, the Second Circuit affirmed the incarceration of an individual custodian for <u>seven years</u> as a coercive sanction for his continued refusal to produce documents under a meritless Fifth Amendment privilege claim. *Armstrong*, 470 F.3d at 97-100.

12

When issuing contempt sanctions, "the district court has broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982); *see also Diamant*, 2004 WL 2710028, at *2 (citing *Perfect Fit*). Generally speaking, the Court should consider the willful nature of the contempt, as well as "character and magnitude of the harm threatened by continued contumacy, . . . the probable effectiveness of any suggested sanction in bringing about [compliance], and the amount of [the contemnor's] financial resources and the consequent seriousness of the burden to [him]." *Perfect Fit*, 673 F.2d at 57 (alterations in original) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 302 (1947)). These factors are discussed in turn below.

First, as outlined above, the Boulevard Defendants and the Synergy Defendants are not only in willful contempt for failing to produce corporate documents, but also have taken active steps to prevent Gilead from receiving those documents through the civil seizure process. Khaim lied about not owning a phone or a computer; hid his phones when he saw the seizure team approaching his home; refused to provide the password for his phone when he finally agreed to produce it; and then immediately changed his email passwords so Gilead could not access his business emails from his phone. Waters Decl. ¶¶ 5-10. Vega violated the Seizure Order by refusing to provide the passwords for the business phone and business computer he had in his apartment, even after being informed that such refusal was in contempt of the Court's orders. Fischer Decl. ¶¶ 4-5. It is difficult to imagine clearer cases of willful, brazen contempt.

Second, as stated above, Gilead needs the documents that the Boulevard Defendants and the Synergy Defendants have been ordered to produce in order to investigate the source(s) of the counterfeit medicines the Boulevard Defendants and the Synergy Defendants sold, and to track down and stop the further sale of their potentially dangerous counterfeit HIV medication.

13

Removing those counterfeit Gilead HIV drugs from the supply chain is first and foremost an urgent public safety issue. And as Gilead set forth in its original moving papers, the sale of the counterfeits also irreparably harms Gilead.

Third, the Boulevard Defendants and the Synergy Defendants have refused to comply with the provision of the Asset Freeze Order that requires them to disclose all of their assets, and have refused to comply with the provisions of the Seizure Order that require them to produce corporate records regarding their purchases and sales of counterfeit Gilead medicines. In short, because of their contempt, the Court does not have access to information about the Boulevard Defendants' and the Synergy Defendants' current assets. However, Gilead is confident that its damages for all of the Defendants' counterfeiting – whether measured as statutory damages, Gilead's actual damages, or disgorgement of Defendants' profits – will far exceed their available assets. Thus, the payment of a monetary fine is unlikely to secure compliance.

Under the circumstances, Gilead submits that the most appropriate coercive sanction, and the one most likely to bring about compliance, is the incarceration of Khaim and Vega until such time that they comply with the Court's orders. *See Armstrong*, 470 F.3d at 101 ("The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance." (alteration in original) (quoting *Int'l Union v. Bagwell*, 512 U.S. 821, 828 (1994)). However, Gilead believes Khaim and Vega should be given one final opportunity to comply with the Court's orders before that sanction is implemented. Gilead therefore respectfully requests that the Court immediately find each of the Boulevard Defendants and the Synergy Defendants to be in contempt, and provide them one week to comply and make a full production of the corporate documents in their

14

possession, custody, or control before enforcing the sanction of incarceration. The Court should also issue an award of Gilead's attorneys' fees and costs associated with the Boulevard Defendants' and Synergy Defendants' contempt.

## CONCLUSION

For the reasons stated above, the Court should find that no Defendant is excused from producing corporate documents pursuant to the Seizure Order, and thus find Boulevard, Khaim, Synergy, and Vega to be in contempt of that Order and issue an award of attorneys' fees. The Court should also provide each of those Defendants a seven-day period in which to come into full compliance, and order that if they fail to come into compliance during that period, Khaim and Vega shall be incarcerated indefinitely until such time as they come into compliance.

Dated: September 2, 2021

Respectfully Submitted,

GEOFFREY POTTER
ARON FISCHER
TIMOTHY A. WATERS
JOSHUA R. STEIN
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel:   (212) 336-2000
Fax:   (212) 336-2222
gpotter@pbwt.com
afischer@pbwt.com
twaters@pbwt.com
jstein@pbwt.com

*Attorneys for Plaintiffs*
*Gilead Sciences, Inc., Gilead Sciences Ireland UC,*
*and Gilead Sciences, LLC*

15

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2021, I served the foregoing upon the following:

Todd Mizeski
Jesse Dresser
Lucas Morgan
FRIER LEVITT, LLC
tmizeski@frierlevitt.com
jdresser@frierlevitt.com
lmorgan@frierlevitt.com

*Counsel for Defendants Safe Chain Solutions,*
*LLC, Patrick Boyd, Charles Boyd, Worldwide*
*Pharma Sales Group, Inc. d/b/a*
*Pharmasales.com, and Adam S. Brosius*

Susan Brichler Trujillo
Gregory T. Everts
Hector J. Diaz
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004
Susan.trujillo@quarles.com
Gregory.everts@quarles.com
Hector.diaz@quarles.com
Tel: (602) 229-5200

*Counsel for Defendants ProPharma*
*Distribution LLC and Levi Ellis*

Jonathan Savella
40 Exchange Place, Ste. 1800
New York, NY 10005
Jonathan.savella@gmail.com

*Attorney for Defendant Ishbay Shukurov*

James R. Froccaro
20 Vanderventer Avenue
Suite 103W
Port Washington, NY 11050
jrfesq61@aol.com

*Attorney for Defendant Peter Khaim*

Juan Diego Berrio
Berrio & Berrio PA
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Jdberrio@hotmail.com

*Attorney for Defendants Synergy Group*
*Wholesalers LLC and Carlos Vega*

Gerald J. Di Chiara
585 Stewart Ave. - L16
Garden City, NY 11530
jdichiarag@aol.com

*Attorney for Defendant Zafar Abdullaev*

*/s/ Joshua R. Stein*

16