UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| GILEAD SCIENCES, INC. and GILEAD SCIENCES IRELAND UC,<br><br>       Plaintiffs,<br><br>v.<br><br>SAFE CHAIN SOLUTIONS, LLC; PATRICK BOYD; CHARLES BOYD; WORLDWIDE PHARMA SALES GROUP, INC. d/b/a PHARMASALES.COM; ADAM S. BROSIUS; BOULEVARD 9229 LLC; ISHBAY SHUKUROV; PETER KHAIM; ZAFAR ABDULLAEV; PROPHARMA DISTRIBUTION LLC; LEVI ELLIS; SYNERGY GROUP WHOLESALERS LLC; CARLOS VEGA; ISLAND CHEMISTS, INC. D/B/A MEADOW DRUGS & SURGICAL; RANDOLPH MOHABIR; V.L.S. PHARMACY INC.; GOPESH M. PATEL; LIN PHARMACY INC. D/B/A MAKKI PHARMACY; SAMUEL YAKUBOV; MONICA A. NGO; ASCENSION PHARMACY HOLDINGS I LLC D/B/A MERMAID RX AND ARIEL PHARMACY; AND ALEX GELBINOVICH,<br><br>       Defendants. | Case No. 21-cv-4106 (AMD) (RER)<br><br>**FILED UNDER SEAL**<br>**PURSUANT TO 15 U.S.C. § 1116(d)**<br><br>**FILED**<br>IN CLERK'S OFFICE<br>U.S. DISTRICT COURT E.D.N.Y.<br><br>★ SEP 24 2021 ★<br><br>BROOKLYN OFFICE |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT SAFE CHAIN SOLUTIONS, LLC'S EMERGENCY MOTION TO LIFT ASSET FREEZE ORDER RELATING TO ACCOUNTS CRITICAL TO ITS ONGOING BUSINESS**

Defendant Safe Chain Solutions, LLC ("Safe Chain"), moves this Court, on an emergency basis, to lift, vacate, or otherwise modify the Asset Freeze Order (the "Asset Freeze Order" or "Order") (Dkt. No. 19) entered against them by this Court on July 23, 2021 and modified on July 29, 2021 (Dkt. No. 28) with respect to two credit card processing accounts. Safe Chain makes this emergency motion in a good faith attempt to save its business from financial ruin. Safe Chain has not yet even had an opportunity to respond to the substance of Plaintiffs' complaint and has made a good faith effort to resolve this matter with Plaintiffs.

1

Nevertheless, if relief is not immediately granted, Safe Chain will likely be forced to cease operations as early as the end of this month, resulting in more than 30 employee layoffs, and destroying a business that has been in operations as a productive member of society for more than ten years. The Court should resist Plaintiffs' attempts to strongarm Safe Chain to the point of financial ruin, based on allegations comprised almost entirely of incomplete facts, circumstantial evidence, and conjecture, before an answer is even filed.

The two accounts at issue are not savings accounts. Rather, these credit card accounts exist to process payments made via credit card, the funds from which are then transferred into Safe Chain's operating account, which is not frozen. The funds currently in these accounts are not the result of the sale of alleged counterfeit products (or any Gilead branded products, for that matter), have no relation to the issues presented in this case, and had previously been specifically identified in prior negotiations, so were not excluded from the asset freeze. However, these accounts feed the Safe Chain operating account, which was excluded from the asset freeze. Although the unfreezing of these two credit card accounts without restriction plainly comports with the spirit of the parties' prior stipulation and the Court's modified freezer order, Plaintiffs inexplicably refuse to consent to the unfreezing the accounts without onerous restrictions, thus forcing Safe Chain to file this emergency motion.

## BACKGROUND

On July 23, 2021, the Court granted and entered the Asset Freeze Order (Dkt. No. 19), upon the *ex parte* application of Plaintiffs. The Asset Freeze Order froze and restrained the balance of any "account held by, for, or on account of Safe Chain Solutions, LLC" and the other defendants. This included every personal account, including credit cards and bank accounts held by the defendants. On July 29, 2021, in an effort to afford some interim relief from the Asset

Freeze Order while the Defendants began to review and digest the thousands of pages of documents that had been served on them by Plaintiffs, the Plaintiffs and Defendants entered into a stipulation and proposed order for the purposes of partially lifting the Asset Freeze Order.[1] (ECF 28). As part of this Stipulation, Defendants agreed to place $1.5 million in escrow with Univest Bank – an amount agreed upon by Plaintiff. (Id. at ¶ 6.c.). The Stipulation unfroze various accounts including Safe Chain's Operating Account with Univest Bank ("Operating Account") (Id. at ¶ 6.d.) so that Safe Chain could continue its operations. At the same time, in accordance with the TRO and Stipulated Preliminary Injunction, Safe Chain ceased selling any Gilead branded products by no later than July 28, 2021. *See*, Declaration of Amanda Biggart, ¶ 9. ("Biggart Decl.").

After the entry of the Stipulation, on August 4, 2021, Safe Chain's two credit card vendors, American Express Company and Elavon Inc., froze the two accounts at issue. (collectively "Credit Card Merchant Accounts"). Biggart Decl., ¶ 10. The Credit Card Merchant Accounts are critical to the day-to-day operation of the Safe Chain business. Biggart Decl., ¶ 11. The Credit Card Merchant Accounts are in essence bank accounts that allow Safe Chain to accept payments by debit or credit cards. Id. The accounts currently hold approximately 1,076,039.91, which are now frozen. They are a main source of funds for Safe Chain's Operating Account with Univest Bank (which was unfrozen on July 29, 2021). Id. These Credit Card Merchant Accounts constitute approximately 32% of the funds flowing into the Operating Account each month. *Id.* When customers pay for orders using a credit card or debit card, after the credit card company approves the transaction, the proceeds are deposited into the Credit Card Merchant Accounts.

---

[1] In the Stipulation, the parties did not agree that there was any liability or findings of fact and reserved all rights and defenses.

Biggart Decl., ¶ 12. Thereafter, on a daily basis, the balances of these accounts are swept into Safe Chain's Operating Account with Univest Bank. Biggart Decl., ¶ 18. These Credit Card Merchant Accounts are merely credit card processing accounts that feed Safe Chain's Operating Account, nothing more. Biggart Decl., ¶ 13.

Further, Credit Card Merchant Accounts cannot contain the proceeds of any sales of alleged counterfeit products. In accordance with the TRO and Stipulated Preliminary Injunction, Safe Chain ceased selling any Gilead branded products on or before July 28, 2021. Biggart Decl., ¶ 9. Thus, the balances in these accounts (which were cleared out daily) do not represent any proceeds from the sales of Gilead-branded products. Biggart Decl., ¶ 27. To confirm, Safe Chain has reviewed each of the transactions contributing to these balances and has verified that no transactions relate to sales of Gilead branded products. Indeed, the earliest known transaction is on August 4, 2021, well after Safe Chain ceased sales of Gilead branded products. Biggart Decl., ¶ 27. Further, for any of the sales allegedly at issue in this case, Safe Chain either did not permit credit card payments or required pre-payment, so it is not possible that any transactions after July 28, 2021—which is all of the transactions in the Merchant Accounts—contained any funds relevant to this proceeding. Biggart Decl., ¶ 26.

As discussed, Safe Chain's financial and cash flow situation is dire. $1.5 million of Safe Chain's money has already been placed into escrow pursuant to the Asset Freeze Order. And as discussed above, there is now an additional $1,076,039.91 frozen in the Credit Card Merchant Accounts. *See*, Biggart Decl., ¶ 13-16. This financial dilemma is simply not sustainable for Safe Chain. In addition to the loss of liquidity associated with the proceeds from its sales, Safe Chain faces a very real risk of losing its Line of Credit with Univest Bank, and in turn, its access to working capital. Biggart Decl., ¶ 20. As a just-in-time wholesaler operating on razor thin margins,

Safe Chain often buys and pays for its inventory the same day it is sold to its customers. Biggart Decl., ¶ 22. The Line of Credit is used to finance the purchases. Biggart Decl., ¶ 22. The Line of Credit is secured by a combination of Safe Chain's inventory, its accounts receivable, and the cash available in bank accounts held through Univest Bank. Biggart Decl., ¶ 22. If the total outstanding balance of the Line of Credit exceeds the sum total of Safe Chain's inventory, accounts receivable and account balances, Univest Bank becomes under-secured, and will in all likelihood cancel the Line of Credit and call the loan due. Biggart Decl., ¶ 23. This determination gets made at or around the end of every month. Biggart Decl., ¶ 23.

These Credit Card Merchant Accounts were not included in the original freeze modification because Safe Chain did not view them as assets, but merely as processing accounts tied to their Operating Account with Univest Bank (which Gilead agreed to unfreeze). Biggart Decl., ¶ 25. At the time the Stipulated Preliminary Injunction order was entered on July 29, 2021 modifying the asset freeze, as noted above, the accounts had a starting and ending balance of zero (thus, there were no funds being concealed). Biggart Decl., ¶ 25. The entirety of these balances is tied to sales of non-Gilead products, with transactions all occurring on or after August 4, 2021 (well after Safe Chain ceased making sales of Gilead branded products). Biggart Decl., ¶ 27.

Plaintiffs have been made aware of Safe Chain's inability to operate its business under the current state of their frozen accounts. Safe Chain has made numerous attempts to come to an additional stipulated modification of the Asset Freeze Order (as Gilead suggested in their original moving papers (Dkt. No. 19 ¶ 6). Plaintiffs used this as an opportunity to renegotiate the $1.5 million escrow and escrow and additional $1 million, even though these Credit Card Merchant Accounts were merely processing accounts for the Operating Account that Plaintiffs had already

5

agreed would be unfrozen. However, Plaintiffs have refused to agree to unfreeze these accounts without the most onerous of restrictions.

Safe Chain only resorts to this emergency motion as a last resort, aimed at saving its business. To this end, in accordance with the Asset Freeze Order (Dkt. No. 19), Safe Chain seeks a decision on this application on or before September 29, 2021. In accordance with the Asset Freeze Order, Defendants move before this Court by presenting facts and legal authority in support of their Emergency Motion to Modify the Asset Freeze Order relating to accounts critical to its ongoing operations. We request that the Court now balance the hardship placed on Safe Chain, and the substantial assets still frozen by Safe Chain (and other related defendants) that will continue to provide adequate security to Gilead.

Safe Chain only resorts to this emergency motion as a last resort to save its business. To this end, in accordance with the Asset Freeze Order (Dkt. No. 19), Safe Chain seeks a decision on this application on or before September 29, 2021.

## **LEGAL STANDARD**

Under the Lanham Act, 15 U.S.C.A. § 1116, the legal standard for granting a plaintiff's request to freeze assets is equivalent to the standard for granting injunctions. Courts unfreeze assets when (1) the asset freeze is not confined to preserving the equitable remedy of an accounting for profits; (2) the frozen assets are not linked to the profits of allegedly illegal activity; or (3) the amount frozen is in excess of the amount necessary to preserve Plaintiff's entitlement to an award of profits. *Klipsch Group, Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283(AJN), 2012 WL 5265727, at *3 (S.D.N.Y. Oct. 24, 2012) (ordering a reduction in an asset freeze from $2 million to $20,000 and concluding that assets in a PayPal account "here funds

flow in and out daily and the captured funds appear to represent the proceeds of [Defendant's] myriad worldwide sales" and only a small amount of counterfeit sales, if any.)

The freezing of the Credit Card Merchant Accounts conflicts with the scope of the remedy provided by the Lanham Act in that (1) the assets in the Credit Card Merchant Accounts are unrelated to any sale of products at issue in this proceeding; (2) Gilead already agreed to unfreeze the operating account fed by these Merchant accounts; (3) the amount frozen in the various accounts exceeds the amount necessary to preserve and award profits, even if the Credit Card Merchant Accounts are excluded; and (4) the balance of harms weigh significantly in Safe Chain's favor as the continued freezing of these funds will cause Safe Chain to cease operations.

## ARGUMENTS

### I. The Assets Within the Credit Card Merchant Accounts Are Unrelated to Any Sales of Gilead Branded Products

It is well-established that "assets may be frozen only to the extent they are the target of a claim for equitable relief." *Shamrock Power Sales, LLC v. Scherer*, No. 12CV8959KMKJCM, 2016 WL 6102370, at *7 (S.D.N.Y. Oct. 18, 2016) *citing Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11-CV-3489, 2013 WL 1915330, at *4 (S.D.N.Y. May 9, 2013) (limiting asset freeze to those assets traceable to the equitable claim); *see also, Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-CV-6283, 2012 WL 5265727, at *4 (S.D.N.Y. Oct. 24, 2012) (same).

As noted above, the Credit Card Merchant Accounts contain proceeds from sales of product by Safe Chain unrelated to the goods at issue in this case. Biggart Decl., ¶ 27. For the reasons stated above, none of the $1,076,039.91 in the American Express and Visa/Mastercard accounts, respectively, stems from sales of Gilead branded products. In accordance with the TRO and Stipulated Preliminary Injunction, Safe Chain ceased selling any Gilead branded products on

7

July 28, 2021. Thus, the balances in these accounts (which were cleared out daily) do not represent any proceeds from the sales of Gilead-branded products. On that basis, the Asset Freeze Order should be modified to exempt the Credit Card Merchant Accounts. *See, Diane Von Furstenberg Studio v. Snyder*, No. 1:06CV1356 JCC, 2007 WL 2688184, at *7 (E.D. Va. Sept. 10, 2007) (recognizing the appropriateness of asset freeze orders that do not apply to money earned by a defendant from sources other than the infringement activities); *see also, Monster Energy Co. v. Wensheng,* 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (citing *Luxottica USA LLC v. The Partnerships, et al.,* No. 1:14-cv-09061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015), and *North Face,* 2006 WL 838993, at *3).

## II. Gilead Agreed to Unfreeze the Operating Account Funded by the Credit Card Merchant Accounts

As noted above, Safe Chain and Gilead negotiated a Stipulated Preliminary Injunction that provided specific relief from the asset freeze. (Dkt. No. 28). That included the unfreezing of the Safe Chain's Operating Account with Univest Bank. (Dkt. No. 28 at ¶ 6.d.). The purpose behind this negotiation was so that Safe Chain could continue operations from their ongoing business. The Credit Card Merchant Accounts at issue are merely accounts for processing credit card payments that fund the Safe Chain Operating Account. See, Biggart Decl. ¶17. The Credit Card Merchant Accounts were not frozen at the time, and had zero balances. Now, the Credit Card Merchant Accounts have been frozen by the credit card vendors, and contain funds solely based on sales *after* the negotiation of the $1.5 million escrow and *after* the cessation of sale of Gilead products. Thus, while not specifically referenced in the Stipulation, the Credit Card Merchant Accounts should be treated the same as the Safe Chain Operating Account.

### III. Defendants Have Escrowed $1.5 Million, An Amount Agreed to by Gilead

Safe Chain has placed $1.5 million in escrow with Univest Bank – an amount agreed upon by Plaintiffs. (Dkt. No. 28 at ¶ 6.d.). In addition, several hundred thousand dollars' worth of additional personal assets of Adam Brosius, Patrick Boyd and Charles Boyd which have been frozen as well. See, Declarations of Adam Brosius, Patrick Boyd and Charles Boyd. Defendants are aware of the following additional amounts that have been frozen:

| Account | Approximate Balance | Account # Last Four Digits |
|---|---|---|
| American Express Credit Card Merchant Account | $739,825.92 | 7892 |
| Visa/MasterCard Credit Card Merchant Account | $336,213.99 | 8997 |
| Charles Boyd Wells Fargo Brokerage Account | $497,528.00 | 6080 |
| Charles Boyd Nationwide 401(k) Account | $84,217.00 | 0781 |
| Patrick Boyd Wells Fargo Account | $160,629.17 | 7331 |
| Patrick Boyd 401(k) Account | $171,047.98 | 0781 |
| Coinbase Pro | $150,000 | 1942 |

In all, Gilead has frozen at least $2,139,462.06 in assets across all Safe Chain Defendants, not including the $1.5 million that is escrowed.[2] If the Credit Card Merchant Accounts are unfrozen, approximately $1,076,039.91 in assets will remain frozen and another $1.5 million in escrow, for over $2.5 million in total.

The Lanham Act *only* permits a Court to freeze assets "to the extent they are the target of a claim for equitable relief." *Shamrock Power Sales, LLC v. Scherer*, No. 12CV8959KMKJCM, 2016 WL 6102370, at *7 (S.D.N.Y. Oct. 18, 2016) *citing Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11-CV-3489, 2013 WL 1915330, at *4 (S.D.N.Y. May 9, 2013)

---

[2] There are additional assets for which banks and other financial institutions have frozen, as the Asset Freeze Order was incredibly broad in scope, including accounts owned by individual defendants. Thus, the true number of frozen assets is larger.

(limiting asset freeze to those assets traceable to the equitable claim); *see also, Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-CV-6283, 2012 WL 5265727, at *4 (S.D.N.Y. Oct. 24, 2012) (same).

Contrary to Plaintiffs' suggestions, Safe Chain's actual gross receipts from the sale of Gilead branded medication are only $7,332,157.70. After deducting the costs of goods sold, GPO fees paid by Safe Chain to various group purchasing organizations, commissions paid to internal and external sales representatives, brokerage and finders' fees, and shipping/handling costs, Safe Chain's net profits are $1,925,160.35.[3] (Biggart Decl. ¶7).

Currently, the amount of assets known to have been encumbered by the Asset Freeze Order – over $3.5 million including the Credit Card Merchant Accounts and over $2.5 million if the Credit Card Merchant Accounts are unfrozen – far exceeds the roughly $1.925 million, representing the *maximum* amount of profits Gilead could lawfully seek to freeze. *Klipsch Group, Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283 (AJN), 2012 WL 5265727, at *3 (S.D.N.Y. Oct. 24, 2012) (any freeze must be limited to preserving the equitable remedy of an accounting for profits and may not by so broad as to preserve an award of monetary damages) citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).

Unless a modification is granted, the Court will have frozen accounts that are grossly in excess of any amount required to ensure the availability of the final equitable relief.

---

[3] As variable costs tied to the volume, value and incidence of sales, these expenses are properly deductible for purposes of the Lanham Act. *See, Aladdin Mfg. Co. v. Mantle Lamp Co. of Am.*, 116 F.2d 708, 714-16 (7th Cir. 1941) (allowing deductions for variable costs such as labor, raw materials and other costs associated with the production of infringing goods); *c.f., Roulo v. Russ Berrie & Co. Inc.*, 886 F.2d 931, 941 (7th Cir. 1989), cert. denied, 493 U.S. 1075 (1990) (finding that "fixed" administrative costs were not deductible from profit calculation); *Dorr-Oliver Inc. v. Fluid-Quip, Inc.*, 914 F. Supp. 210, 211 (N.D. Ill. 1995) (finding that corporate income taxes and costs related to "extraordinary" compensation paid to shareholders were not properly deductible).

### a. *In the Alternative, The $1.5 Million Already Placed In Escrow Mitigates Any Remaining Irreparable Harm*

While Defendants believe that there do not exist grounds to freeze any assets, assuming arguendo that Plaintiffs had met their burden as to the merits of the application, the court must (at a minimum) unfreeze the Credit Card Merchant Accounts and release the associated funds within those accounts. This action can be taken without any irreparable harm to Plaintiffs, as the Defendants have already agreed to place the substantial sum of $1.5 million in escrow with Univest Bank. Thus, there are significant assets safeguarded in the event Plaintiffs are ultimately successful in proving their case. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 71-72 (2d Cir.1998) (in determining an ultimate award of an accounting for profits, "[a] district court faced with a Lanham Act violation possesses some degree of discretion in shaping [the] relief according to the principles of equity and the individual circumstances of each case") (internal quotation marks omitted). Defendants will not be dissipating their assets and Plaintiff has substantial protection, and thus, there can be no irreparable harm.

### IV. Irreparable Harm and a Balancing of the Equities

Without the requested relief, on one hand, as early as September 30, 2021, Safe Chain will be unable to meet payroll, pay for employees' health insurance, and fund their ongoing business operations without the requested relief. Biggart Decl. ¶ 29. As noted above, Safe Chain employs approximately 30 employees. On the other hand, if the Court grants the request relief, there will still be $1,063,422.15 million frozen assets, including the $1.5 million in escrow.

Notably, Safe Chain has not had a day in court. Safe Chain consented to the Preliminary Injunction specifically so that its Operating Account would remain open and its business continue to operate. Safe Chain has operated for approximately 10 years. Safe Chain is licensed in 46 states and the District of Columbia and have filed dozens of registrations with the FDA for wholesaler

distribution. Safe Chain maintains a fulltime compliance officer along with a small compliance support staff. Safe Chain reported instances of counterfeiting of Gilead products to the FDA and quarantined suspect Gilead products. Gilead has only notified Safe Chain, and Safe Chain is only aware, of a handful of counterfeit products that Gilead has identified. Moreover, Gilead is already aware that several of its allegations against Safe Chain are not accurate. For example, Safe Chain never created false pedigrees or falsified documents. This evidenced that Safe Chain had not created any pedigree documents—as insinuated by Gilead—but rather, merely relied on the information and documents it was provided by its supplier. In short, Safe Chain is confident in its business record, and it looks forward to having the opportunity to defend itself in this matter.

Given the dire situation involving Safe Chain's cash flow and access to credit – caused by the freezing of its Credit Card Merchant Accounts – the equities strongly weigh in favor of unfreezing these accounts and releasing the funds. The Asset Freeze Order has crippled Safe Chain's business operations because of its overbreadth and it should be modified. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 563 (9th Cir. 1992). (approving asset freeze order that provided for withdrawal of living expenses and payment of legitimate business expenses). While the interim remedies of the July 29, 2021 and the August 11, 2021 orders adopted by the Court provided modest relief to Safe Chain, it is not sufficient to allow them to operate its business because the freezing of these two Credit Card Merchant Accounts were not specifically identified at that time but were contemplated as assets that should have been unfrozen as part of the Safe Chain Operating Account.

## CONCLUSION

Safe Chain seeks this emergency relief to preserve the ability to continue its operations. For the foregoing reasons, Defendants respectfully request that the two Credit Card Merchant Accounts be unfrozen by September 29, 2021.

Dated: September 23, 2021                     Respectfully Submitted,

    */s/ Lucas Morgan*
Lucas W. Morgan, Esq.
Jesse C. Dresser, Esq.
Todd Mizeski, Esq.
FRIER LEVITT, LLC
84 Bloomfield Avenue
Pine Brook, NJ 07058
lmorgan@frierlevitt.com
jdresser@frierlevitt.com
tmizeski@frierlevitt.com
(973) 618-1660

*Attorneys for Defendants Safe Chain Solutions, LLC, Patrick Boyd, Charles Boyd, Worldwide Pharma Sales Group, Inc. d/b/a Pharmasales.Com, and Adam S. Brosius*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of the foregoing was served upon the following via email:

>Geoffrey Potter
>Aron Fischer
>Timothy A. Waters
>Joshua R. Stein
>Patterson Belknap Webb & Tyler LLP
>1133 Avenue of the Americas
>New York, NY 10036
>gpotter@pbwt.com
>afischer@pbwt.com
>twaters@pbwt.com
>jstein@pbwt.com
>Attorneys for Plaintiffs
>Gilead Sciences, Inc. and Gilead Sciences Ireland UC

*via electronic mail on this 23rd day of September 2021*

           /s/ Lucas W. Morgan
           Lucas W. Morgan, Esq.