

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GILEAD SCIENCES, INC., GILEAD SCIENCES :
IRELAND UC, and GILEAD SCIENCES, LLC, :
: Case No. 21-cv-4106 (AMD) (RER)
Plaintiffs, :
:
v. :
: **FILED UNDER SEAL**
: **PURSUANT TO 15 U.S.C. § 1116(d)**
SAFE CHAIN SOLUTIONS, LLC; PATRICK : **AND COURT ORDER (DKT. NO. 20)**
BOYD; CHARLES BOYD; WORLDWIDE :
PHARMA SALES GROUP, INC. d/b/a :
PHARMASALES.COM; ADAM S. BROSIUS; :
BOULEVARD 9229 LLC; ISHBAY SHUKUROV;:
PETER KHAIM; ZAFAR ABDULLAEV; :
PROPHARMA DISTRIBUTION LLC; LEVI :
ELLIS; SYNERGY GROUP WHOLESALERS :
LLC; CARLOS VEGA; ISLAND CHEMISTS, :
INC. d/b/a MEADOW DRUGS & SURGICAL; :
RANDOLPH MOHABIR; V.L.S. PHARMACY :
INC.; GOPESH M. PATEL; LIN PHARMACY :
INC. d/b/a MAKKI PHARMACY; SAMUEL :
YAKUBOV; MONICA A. NGO; ASCENSION :
PHARMACY HOLDINGS I LLC d/b/a :
MERMAID RX AND ARIEL PHARMACY; and :
ALEX GELBINOVICH, :
:
Defendants. :

---

**JOINT SUBMISSION OF PLAINTIFFS AND SAFE CHAIN SOLUTIONS, LLC
CONCERNING SAFE CHAIN'S EMERGENCY MOTION TO LIFT THE ASSET
FREEZE AS TO ITS CREDIT CARD MERCHANT ACCOUNTS**

Plaintiffs Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead Sciences, LLC (collectively, "Plaintiffs" or "Gilead") and Defendant Safe Chain Solutions, LLC ("Safe Chain") respectfully submit this joint letter concerning Safe Chain's emergency motion to lift the asset freeze as to Safe Chain's credit card merchant accounts (the "merchant accounts").

1

I.  **GILEAD'S POSITION**

As set forth in Gilead's brief in opposition to Safe Chain's motion, the amount of Safe Chain funds currently frozen is far less than the amount of profits made from Safe Chain's sales of counterfeits, and thus far less than the amount that will be subject to disgorgement at the conclusion of this case. Furthermore, Gilead respectfully submits that Safe Chain's self-serving representations regarding its financial difficulties – which have not been subject to scrutiny and are presented for the purpose of obtaining money – must be taken with a generous helping of salt. Nevertheless, since yesterday's hearing before Your Honor, Gilead has attempted to negotiate an agreement with Safe Chain that would include unfreezing Safe Chain's merchant accounts and turning over to Safe Chain a substantial portion of the money that is currently frozen. Although these negotiations resulted in the narrowing of the parties' differences, they have unfortunately not led to an agreement.

Throughout the course of yesterday, the parties attempted to negotiate a resolution to Safe Chain's motion, including meeting in person in the courthouse following the hearing and exchanging proposals over email throughout the afternoon and evening. The parties agree that the merchant accounts should be unfrozen, and disagree only about the amount of funds that should be placed in escrow before the accounts should be unfrozen.

Based on the representation from Safe Chain's counsel that Safe Chain's frozen merchant accounts hold approximately $1.4 million and that other accounts held by Safe Chain principals Patrick Boyd and Charles Boyd have also been frozen, and in recognition of Safe Chain's representations of its financial difficulties, Gilead proposed that a total amount of $700,000 be transferred to escrow from the merchant accounts, and that the remaining $700,000 be immediately

unfrozen.[1] The stipulation and proposed order that Gilead provided to Safe Chain is attached hereto as **Exhibit 1**.

In response, Safe Chain has offered to transfer $325,000 to escrow if the remaining funds would be unfrozen. The stipulation and proposed order that Safe Chain provided to Gilead is attached hereto as **Exhibit 2**.

Gilead respectfully requests that the Court enter Gilead's proposed order. Gilead's proposal ensures that a substantial sum, although still only a small fraction of Safe Chain's actual profits, will be set aside for Gilead's potential recovery, while unfreezing the merchant accounts and providing Safe Chain and the Boyds with access to over $700,000 of funds. Gilead is confident that these unfrozen funds will alleviate any immediate financial emergency for Safe Chain and enable it to continue to operate its business indefinitely from future revenues if, as Safe Chain contends, it remains a profitable business.

Safe Chain's own financial submissions make clear Gilead's proposal provides sufficient funds to ensure that Safe Chain will be able to pay its expenses. Along with the $700,000 to be unfrozen from Safe Chain's merchant accounts, Safe Chain has $254,500.85 in its operating account and an available line of credit of $542,219.79, for a total of roughly $1.5 million in available cash flow. *See* Biggart Reply Decl. ¶¶ 10, 11. This will enable Safe Chain to fully pay its overdue accounts payable balances of $1,138,277.79, and its $83,927.77 payroll – with $274,515.60 remaining. *Id.* ¶¶ 12, 13. Although Safe Chain states that is has $885,275.47 in current balances, many of these bills are not due until late October. *See* Biggart Reply Decl. Ex.

---

[1] Gilead's proposal also provides that two accounts held in the names of Patrick Boyd and Charles Boyd, with a total balance of approximately $255,264.98, be immediately unfrozen.

E. With over $3 million of revenue a month,[2] Safe Chain will be able to pay its bills when they come due.

Gilead's proposed compromise freezes only a small percentage of Safe Chain's proceeds from its counterfeiting. Although Safe Chain extols its legitimacy and integrity by describing that it has "distributed $400 million of inventory" over 10 years, it fails to mention that over $75 million is counterfeit Gilead medicines over the last 14 months, and tens of millions more is counterfeits from the same suppliers for other pharmaceutical manufacturers.[3] Every single bottle Safe Chain sold violates Gilead's trademark rights – and violates federal law governing pharmaceuticals – by falsely representing the origin and pedigree of the Gilead medication. There can be no serious question that the profits from these counterfeit products are subject to disgorgement.

---

[2] Safe Chain represents that the approximately $1 million that passes through the merchant accounts each month is 32% of Safe Chain's total revenue. *See* Reply Br. at 4; Biggart Decl., dated Sept. 23, 2021, ¶ 11.

[3] In its brief, Safe Chain states that "it has never faced any incident (patient complaint, suspect product, supply chain concerns) other than with Gilead's products." Reply at 13. **This is flat out wrong.** As but one example, in July 2021, a pharmacy reported that a bottle of SYMTUZA®, a Janssen (Johnson & Johnson) product, that Safe Chain sold had the wrong pills inside:

| ParentDate | Time Sent | Teams - Chat Body | Entity From | Entity To | Entity Participant |
|---|---|---|---|---|---|
| (All) ▼ | Filter | Filter | Filter | Filter | Filter |
| 07/01/2021 | 11:00:45 | Hi Harris, As we spoke this morning, we filled a bottle of Symtuza that was ordered on 5/6/21 and the pills inside that bottle were Prezcobix. SG59676-0800-30 SYMTUZA-TAB-800MG-30/BT 19CG184 6/30/2021. The manufacturer has been informed as well as the patient had already contacted multiple entities. I wanted to inform you guys and update you with this information. Thank you. Aman (Rocky) Singh | Garrett | Boyd, Charles<br>Boyd, Pat<br>Brosius, Adam | Boyd, Charles<br>Boyd, Pat<br>Brosius, Adam<br>Garrett |
| 07/01/2021 | 11:06:31 | Janssen Product. Prezcobix is also a Janssen producyt | Garrett | Boyd, Charles<br>Boyd, Pat<br>Brosius, Adam | Boyd, Charles<br>Boyd, Pat<br>Brosius, Adam<br>Garrett |
| 07/01/2021 | 11:17:24 | shit | Boyd, Charles | Boyd, Pat<br>Brosius, Adam<br>Garrett | Boyd, Charles<br>Boyd, Pat<br>Brosius, Adam<br>Garrett |

With respect to these profits, Safe Chain's protestations that its sale of counterfeit Gilead products yielded only $1.9 million in profits is simply false, as a matter of fact and law. Gilead is unable reconcile Safe Chain's latest spreadsheet (Biggart Reply Decl. Ex. F) with the spreadsheets provided to Gilead in August in response to the Court's seizure order, because the latest spreadsheet does not include quantity, purchase date, lot number, or supplier – all of which would enable Gilead to match specific purchases and sales to particular invoices, purchase orders, or other documentation. The detailed spreadsheets provided by Safe Chain in August – when it was not seeking to minimize its profits – showed profits of over $15 million. Safe Chain had the opportunity to explain this discrepancy, but failed to do so.

Even taking Safe Chain's questionable new submissions at face value, it is clear that many of the "expenses" Safe Chain uses to reduce its profit figure are improper. First, Safe Chain deducts $1,315,774.78 in "GPO fees," citing Exhibit F of the Biggart Reply Declaration. However, that spreadsheet includes numerous non-Gilead products in its calculations, and cannot be relied upon. Second, Safe Chain deducts over $4 million in "commissions." As set forth in Gilead's brief, such outsized "commissions" are profit sharing, not expenses, and cannot validly be deducted from profits for purposes of disgorgement. Furthermore, Safe Chain made the tactical decision in its submissions not to explain who received these "commissions" or why. Based on seized records, Gilead has been able to determine that a substantial portion of "commissions" were paid to Defendant Adam Brosius, who both sourced and sold the counterfeits on behalf of Safe Chain. Defendant Brosius was a willful counterfeiter and knowing co-conspirator with Safe Chain. Payments from Safe Chain to Mr. Brosius are in every meaningful sense a *split* of Safe Chain's profits from its counterfeiting. They are in no sense legitimate business expenses that could reduce the amount of illicit profits to be disgorged.

Therefore, even accepting as legitimate the financial representations that Safe Chain submitted with its motion, the true amount of profits from Safe Chain's sale of counterfeit Gilead products exceed $6 million – far less than is currently under the asset freeze. Gilead's proposal would unfreeze substantial additional funds for Safe Chain's benefit, making it all but inevitable that Gilead will be unable to recover the disgorgement remedy to which it is entitled. Safe Chain's proposal – to place only $278,000 in escrow while unfreezing the rest – would result in Safe Chain's keeping even more of its illicit profits, and Gilead's being even more seriously undercompensated. The record concerning Safe Chain's financial difficulties does not warrant such an inequitable result.

Gilead takes exception to Safe Chain's suggestion that Gilead has acted unduly aggressively, much less "underhanded[ly]." As set forth in our prior brief, the parties' prior agreement explicitly provided that only certain specified accounts would be unfrozen, and that all other accounts not specifically named would remain frozen.[4] There can be no dispute that Safe Chain's current motion involves undoing the parties' prior agreement. Although Gilead has been and continues to be willing to renegotiate the parties' prior stipulation in good faith, Gilead cannot be blamed for using the parties' prior agreement as a starting point for further negotiations. For example, numerous accounts belonging to the Safe Chain individuals that the Safe Chain Defendants chose not to disclose, such as Defendant Brosius's Coinbase account, were properly frozen after the date of the parties' stipulation (because they were not disclosed at that time) and are not at issue here.

---

[4] Safe Chain complains that Gilead "moved to freeze" a bank account after the stipulation had been entered. Freezing the account in question was entirely consistent with the parties' stipulation. The account in question was not disclosed by Safe Chain and was, therefore, subject to the Court's asset freeze under the plain language of the parties' stipulation. It was fundamental to the parties' stipulation that such undisclosed accounts would be frozen.

## II.   SAFE CHAIN'S POSITION

In response to the Court's direction from September 29, 2021 regarding Safe Chain's Emergency Motion to Modify the Asset Freeze, counsel for Safe Chain engaged in good faith efforts to determine an amount Safe Chain could agree to remain frozen and/or place in escrow, and still remain financially viable - both in terms of its cash flow and working capital. It is important to note that due to Safe Chain's asset-based financing arrangement with its bank, Univest Bank, this specific issue has an exponential impact on Safe Chain and any money that is ultimately transferred from the Credit Card Merchant Accounts (Amex Acct No. -7892 and Elavon Acct. No. -7594) to the escrow account is essentially double the amount to Safe Chain, i.e., $325,000 is effectively a $650,000 hit to Safe Chain's cash flow and working capital, which is why Safe Chain cannot bend to every demand made by Gilead and why Safe Chain was ultimately forced to seek relief from the Court. To this end, Safe Chain made multiple good faith offers and counteroffers. Ultimately, Safe Chain offered to place the sum of $325,000 into escrow in exchange for Plaintiffs releasing the remaining balances of the Credit Card Merchant Accounts. This offer would have increased the amount being held in escrow in connection with this case as to Safe Chain from $1,500,000 to $1,825,000.

While Safe Chain maintains that the full amounts of the proceeds within the Credit Card Merchant Accounts should be released (as they are not proceeds from the sale of Gilead branded medications and they are merely an extension of the previously unfrozen Operating Account), Safe Chain began its negotiations yesterday by offering to transfer $278,314 into escrow and further by agreeing to leave certain accounts that are frozen in their status quo (an additional amount totaling

$255,264.98).[5] Safe Chain's initial offer of $278,314 represented the balance of the Credit Card Merchant Accounts when Safe Chain's counsel first brought this to Gilead's attention more than a month ago on August 23, 2021. Since that time, Gilead essentially ignored Safe Chain's repeated requests to address this issue, seemingly so that the balances in the accounts would grow and exacerbate the issue for Safe Chain. In fact, Gilead later moved to freeze the Visa/Mastercard (the Elavon account) account, <u>which was not frozen when Safe Chain's counsel voluntarily and in good faith brought this to Gilead's attention and provided the account information for the Visa/Mastercard account</u>, tactics which further reflect Gilead's heavy handed and bad faith approach to handling this specific situation. Thus far in this case, Gilead has responded to every good faith move made by Safe Chain with a ruthless and underhanded countermove. Such litigation tactics should not be rewarded.

Unfortunately, the parties were unable to reach an agreement, despite Safe Chain's good faith efforts, on an amount to be escrowed and which would resolve the motion and allow Safe Chain to remain a viable going concern. Provided along with this Joint Status Report as Exhibit 2 is a copy of the stipulation that Safe Chain indicated it would agree to in order to resolve this amicably with Gilead. However, based upon the arguments advanced in Safe Chain's Motion and further articulated during oral argument yesterday and because the Parties were not able to resolve this, Safe Chain requests that the Court enter an Order unfreezing the entire balance of the Credit Card Merchant Accounts and modify the freeze order to exclude these accounts going forward.

---

[5] Regarding these monies, these accounts only contain nonliquid assets such that Gilead's offer to unfreeze them would not have in any way helped to resolve the issue at hand, freeing up capital to put towards Safe Chain's cash flow and working capital to sustain its operations.

8

Dated: September 30, 2021

Respectfully submitted,

| *[Signature]* | *[Signature]* |
|---|---|
| GEOFFREY POTTER<br>ARON FISCHER<br>TIMOTHY A. WATERS<br>JOSHUA R. STEIN<br>PATTERSON BELKNAP WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, NY 10036-6710<br>Tel:  (212) 336-2000<br>Fax:  (212) 336-2222<br>gpotter@pbwt.com<br>afischer@pbwt.com<br>twaters@pbwt.com<br>jstein@pbwt.com<br><br>*Attorneys for Plaintiffs Gilead Sciences, Inc. and Gilead Sciences Ireland UC* | Jonathan Levitt<br>Todd Mizeski<br>Jesse Dresser<br>Lucas Morgan<br>FRIER LEVITT, LLC<br>jlevitt@frierlevitt.com<br>tmizeski@frierlevitt.com<br>jdresser@frierlevitt.com<br>lmorgan@frierlevitt.com<br><br>*Counsel for Defendants Safe Chain Solutions, LLC, Patrick Boyd, Charles Boyd, Worldwide Pharma Sales Group, Inc. d/b/a Pharmasales.com, and Adam S. Brosius* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2021, I served the foregoing upon the following:

Susan Brichler Trujillo
Gregory T. Everts
Hector J. Diaz
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004
Susan.trujillo@quarles.com
Gregory.everts@quarles.com
Hector.diaz@quarles.com
Tel: (602) 229-5200

Andrey Spektor
BRYAN CAVE LEIGHTON PAISNER LLP
andrey.spektor@bclplaw.com

*Counsel for Defendants ProPharma Distribution LLC and Levi Ellis*

Jonathan Savella
40 Exchange Place, Ste. 1800
New York, NY 10005
Jonathan.savella@gmail.com

*Attorney for Defendant Ishbay Shukurov*

James R. Froccaro
20 Vanderventer Avenue
Suite 103W
Port Washington, NY 11050
jrfesq61@aol.com

*Attorney for Defendant Peter Khaim*

Juan Diego Berrio
Berrio & Berrio PA
2333 Brickell Avenue, Suite A-1
Miami, FL 33129
Jdberrio@hotmail.com

*Attorney for Defendant Carlos Vega*

Gerald J. Di Chiara
585 Stewart Ave. - L16
Garden City, NY 11530
jdichiarag@aol.com

*Attorney for Defendant Zafar Abdullaev*

/s/ Lucas Morgan