UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
GILEAD SCIENCES, INC., GILEAD SCIENCES
IRELAND UC, and GILEAD SCIENCES LLC,

                                     Plaintiffs,

              -against-

SAFE CHAIN SOLUTIONS LLC, *et al.*,

                                  Defendants.
-----------------------------------------------------------------------x

**OPINION AND
ORDER**

21-CV-4106
(Donnelly, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

For the reasons set forth in this Opinion and Order, the Court **GRANTS IN PART AND
DENIES IN PART** Gilead Sciences, Inc., Gilead Sciences, UC, and Gilead Sciences LLC's
(collectively, "Gilead" or "Plaintiffs") Motion to Compel the testimony of Adam Brosius ("Mr.
Brosius").

**I.**    <u>**The Motion to Compel**</u>

The Court assumes the parties' familiarity with the relevant facts in this instant matter.

On February 9, 2024, Mr. Brosius sat for a deposition conducted by Gilead. *See* Dkt. No.
1315, at 41. During his deposition, Gilead asked Mr. Brosius questions about a fraud indictment
pending in the United States District Court for the District of New Jersey (the "Indictment"), in
which Mr. Brosius is a named defendant. *Id.* at 1-2. Specifically, in light of parallel references in
the indictment to allegations made by Gilead in this action against Mr. Brosius and defendant
World Wide Pharma, Gilead sought to ask questions regarding Mr. Brosius's involvement in a
purported scheme outlined in the indictment. *Id.* Gilead also argues that it is entitled "to question
[Mr.] Brosius about his use of the PharmaSales.com corporate identity in both his prior
pharmaceutical fraud and his fraudulent sale of counterfeit HIV medication"; and "to probe [Mr.]

Brosius's use of outside marketers to drum up customers for his prior pharmaceutical fraud, especially given that [Mr.] Brosius subsequently hired a team of several dozen outside marketers to help generate demand for the counterfeit HIV medication." Dkt. No. 1315, at 3. Gilead notes that "the indictment does not list the names of the multiple outside marketers that [Mr.] Brosius used in his prior fraudulent scheme, and so Gilead is entitled to learn through [Mr.] Brosius's deposition who those co-conspirators were, and whether he continued working with any of them when he began selling counterfeit HIV medication." *Id.*

Mr. Brosius's counsel, however, instructed his client not to answer certain lines of questioning related to the Indictment—purporting that the information being elicited is irrelevant to Gilead's claims and assertions in this instant litigation. *Id.* Notably, Mr. Brosius failed to interpose a privilege (or to proffer any other rationale for his refusal to answer); instead Mr. Brosius rested on his relevance argument. *Id.* at 2-5. Objecting to this refusal, Gilead moves to compel Mr. Brosius to either testify or invoke the Fifth Amendment in response to Gilead's pertinent questions. *Id.* at 2-4.

In opposition, Mr. Brosius argues that counsel's instruction was proper "because those allegations have no relevance whatsoever to Gilead's claims in this entirely unrelated civil matter." *Id.* at 4. Specifically, Mr. Brosius argues that the apparent lack of relevance renders Gilead's questioning a "fishing expedition into (alleged) past wrongdoings." *Id.* at 5. In support for his relevance argument, Mr. Brosius distinguishes "key" differences between the instant action and the facts underlying the Indictment stating, in part, that "[the Indictment] does not allege conduct related to Gilead, it does not allege conduct related to HIV medications, it does not allege counterfeiting activity, it does allege conduct related to the wholesale pharmaceutical market, it does not allege conduct that is contemporaneous to the conduct at issue in Gilead's Complaint,

and it does not involve any defendant in this case other than Mr. Brosius himself." *Id.*  In light of those distinct differences, Mr. Brosius asserts that Gilead is merely trying "cause embarrassment to Mr. Brosius." *Id.*

In the alternative, the parties request that the Court enter a protective order.  *Id.* at 2, 4-5, 7.

## II.   <u>Discussion</u>

At bottom, there is no genuine dispute regarding the nature and substance of Mr. Brosius's indictment in the District of New Jersey.  The Court understands, from the copy of the Indictment submitted with this Motion to Compel, that Mr. Brosius has been indicted on charges of (i) conspiracy to defraud a healthcare benefit program, (ii) health care fraud, (iii) conspiracy to violate the Anti-Kickback Statute, and (iv) payment of bribes and kickbacks in connection with a federal health care program.  *See* Dkt. No. 1315, at 9-36.  Mr. Brosius fails to explain how those charges are "irrelevant" to the nature of this litigation, especially given the relevance outlined by Gilead above.  Mr. Brosius' attempt to distinguish this litigation from the charges contained in the Indictment (Dkt. No. 1315, at 5) fares no better.  Indeed, Mr. Brosius's attempt to painstakingly carve out distinctions between this case and the substance of the Indictment—with no legal support—does not overcome Fed. R. Civ. P. 26(b)(1)'s broad construction of "relevance."  *See, e.g., Smith-Carrington v. Eli Lilly & Co.*, No. 20-CV-2377 (MKB) (CLP), 2021 WL 11704472, at *3 (E.D.N.Y. July 12, 2021) ("[R]elevance, for purposes of Rule 26 discovery, has been broadly construed to include 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

In light of the substance of the Indictment however, the Court finds that Mr. Brosius maintains the right to invoke his Fifth Amendment privilege.  The privilege against self-incrimination can be invoked in any proceeding where the witness "reasonably believes [that his testimony] could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972).  In keeping with its desire to safeguard Fifth Amendment rights, the Supreme Court has explicitly held that a district court cannot compel a witness in a civil action "to answer deposition questions over a valid assertion of his Fifth Amendment rights." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256-57 (1983); *see also Hansen v. Wwebnet, Inc.*, No. 1:14-CV-2263 (ALC), 2017 WL 1032268, at *2 (S.D.N.Y. Mar. 16, 2017).

Moreover, a district court is clearly "precluded from compelling testimony [from an unwilling witness] in a civil deposition over a valid assertion of the Fifth Amendment privilege, absent a specific assurance of immunity for such testimony." *Pillsbury*, 459 U.S. at 264, n. 24. From Mr. Brosius's position statement, it is clear that he may validly invoke the Fifth Amendment privilege with respect to potentially incriminating questions at his deposition.  Not only does Mr. Brosius have the right to invoke the Fifth Amendment privilege as to particular questions, he "*must* claim the privilege to be protected by it," as "[t]he Fifth Amendment privilege is not self-executing." *United States v. Ramos*, 685 F.3d 120, 127 (2d Cir. 2012) (emphasis added).  "An individual who makes self-incriminating statements without claiming the privilege is deemed not to have been 'compelled' but to have spoken voluntarily." *Id.* (citations omitted).

The Court therefore finds that Mr. Brosius may not simply *refuse* to answer certain questions about his federal criminal indictment—which appears wholly relevant to this instant action—without invoking a pertinent applicable privilege.  Mr. Brosius, in his position statement,

also admits that "it is undisputed that the answers to questions about the allegations in the federal criminal indictment are protected by [his] privilege against self-incrimination." Dkt. No. 1315, at 5. Therefore, Mr. Brosius must either respond to the testimony elicited by Gilead regarding his federal criminal indictment or expressly invoke his Fifth Amendment privilege against self-incrimination.

Gilead and Mr. Brosius, in the alternative, request that the Court to enter a protective order. The Court declines to do so. A district court's protective order is no substitute for the Fifth Amendment privilege. *See Slainte*, 2015 WL 1445331, at *4. "Even a carefully crafted protective order is deemed insufficient to adequately protect an unwilling witness in a civil action from answering questions that could potentially incriminate him." *Andover Data Servs., a Div. of Players Computer, Inc. v. Stat. Tabulating Corp.*, 876 F.2d 1080, 1084 (2d Cir. 1989); *see also In re Grand Jury Subpoena*, 836 F.2d 1468, 1478 (4th Cir. 1988) ("Uncertainty about the ultimate outcome of a protective order will mean that no deponent may always effectively rely on a protective order to secure his right against self-incrimination."), *cert. denied*, 487 U.S. 1240 (1988).

Mr. Brosius has failed to articulate a colorable argument in support of his refusal to answer Gilead's questioning regarding the purported scheme described in his Indictment. Therefore, he must interpose a pertinent privilege or answer Gilead's questions by a date certain.

## III. __Conclusion__

Accordingly, Gilead is permitted to re-open Mr. Brosius's deposition to ask questions about his federal criminal indictment. Mr. Brosius shall not refuse to respond to the questions, but may invoke his Fifth Amendment privilege.

Mr. Brosius's continued deposition (which may take place in-person, Zoom, or in writing) shall occur by **Friday, March 8, 2024**. The Court notes that the parties waited almost three weeks after Mr. Brosius's February 9, 2024 deposition to file this instant Motion to Compel. *See* Text Order dated January 31, 2024; Dkt. No. 1315, at 41. The Court will not grant any further extensions for Mr. Brosius's continued deposition under any circumstances.

      **SO ORDERED.**

Dated:      Brooklyn, New York
              February 29, 2024

                        */s/ Joseph A. Marutollo*
                        JOSEPH A. MARUTOLLO
                        United States Magistrate Judge