

www.pbwt.com

March 20, 2024

Timothy A. Waters
Partner
(212) 336-7601
twaters@pbwt.com

**By ECF**

Hon. Joseph A. Marutollo, U.S.M.J.
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   <u>*Gilead, et al. v. Safe Chain, et al.*</u>, No. 21-cv-4106 (AMD) (JAM)

Dear Judge Marutollo:

In advance of the March 27, 2024 discovery conference, Plaintiffs (together, "Gilead") respectfully submit this letter pursuant to Your Honor's Scheduling Order dated February 16, 2024. Gilead have solicited from all Defendants any additional issues to be addressed in this letter. Gilead has also asked for responsive positions from the specific Defendants at issue in this letter, and has included those submissions below.

**I.    Waiver of the Attorney-Client Privilege by the Total Remedy Defendants**

**a.    Gilead's Position**

Defendant Mohammad Etminan was the principal of Defendant Everything Pharmacy Related II Incorporated, d/b/a Total Remedy ("Total Remedy" and, together with Mr. Etminan, the "Total Remedy Defendants"). In his deposition on February 28, 2024, Mr. Etminan testified repeatedly that he sought, received, and relied on advice from his counsel Herbert Weinberg before buying HIV medications from certain suppliers and that, based on counsel's advice, he asked those suppliers for pedigrees out of an "abundance of caution."

Mr. Etminan's counsel in this case, Matthew Jacobs, asserted the attorney-client privilege and instructed Mr. Etminan not to answer any questions about why he sought advice from his lawyer about these counterfeit suppliers, or his communications with counsel on that topic. Gilead does not contend that those instructions not to answer were, in and of themselves, improper. However, as Gilead noted during the deposition, Mr. Etminan's answers sounded as though he were asserting an advice-of-counsel defense—i.e., arguing that because he sought and relied on the advice of his counsel, any act of infringement was not willful.

Gilead asked if Mr. Etminan was asserting such a defense, and his counsel demurred, saying he would need to consider it. Given that this dispute arose very late in the day, the parties agreed to move forward with the deposition and discuss the issue afterward. Gilead made a record of the kinds of questions it would have asked Mr. Etminan if not for his counsel's privilege instruction.

On March 13, 2024, Gilead wrote to Mr. Etminan's counsel, noting the upcoming deadline to submit a joint letter to Your Honor on this issue, indicating that he had had time to consider his position, and asking him to confirm that, in light of his assertion of the attorney-client privilege, Mr. Etminan would not be asserting an advice-of-counsel defense. Mr. Etminan's counsel declined to do so, and reserved his right to assert an advice-of-counsel defense – without expressly stating he was, indeed, asserting such a defense.

That is improper. It is, of course, black-letter law that the "defendant who asserts an advice-of-counsel defense [] is thereby deemed to have waived his privilege with respect to the advice that he received." *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (citing *In re von Bulow*, 828 F.2d 94, 101–02 (2d Cir. 1987)). A defendant cannot claim he relied on the advice of his counsel without allowing a full inquiry into what he told his lawyer and what his lawyer said in return. *See id.* Mr. Etminan cannot deny discovery into attorney-client communications while "reserving" his right to use his reliance on those same communications as a defense on the merits.

Mr. Etminan is taking the position that he can keep the communications privileged for now—but at summary judgment or trial, he could for the first time assert an advice-of-counsel defense. That would allow him to disclose (after the close of discovery) whatever cherry-picked information he wants about his communications with counsel, while denying Gilead any opportunity to take discovery on those privileged communications. The prejudice to Gilead is clear, and the discovery procedures set forth in the Federal Rules of Civil Procedure do not allow these sort of ambush tactics. *See United States v. Bilzerian*, 926 F.2d 1285, 1291 (2d Cir. 1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. Thus, the privilege may implicitly be waived when [a] defendant asserts a claim that in fairness requires examination of protected communications." (citation omitted)).

Accordingly, courts find that a defendant who refuses to disclose privileged communications during discovery waives his right to assert an advice-of-counsel defense. *E.g.*, *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 891, 894 (S.D.N.Y. 1990) ("A party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; failure to do so constitutes a waiver of the advice-of-counsel defense."); *see also E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc.*, 90 F. Supp. 2d 277, 296 n. 133 (S.D.N.Y. 2000) ("[A]lthough [defendant] asserted good faith as a defense to willful infringement and thus placed the substance of his communications in issue and thereby waived the attorney-client privilege, he asserted the attorney-client privilege at his deposition to prevent inquiry into his communications with counsel."). Having blocked his adversary from conducting discovery on this issue, he will not now be heard to advance reliance on counsel." (citations omitted)). Accordingly, this Court should hold that by continuing to assert the attorney-client privilege over his communications with counsel through the close of fact discovery, Mr. Etminan has forfeited his right to assert an advice-of-counsel defense.

In the alternative, the Court should find that Mr. Etminan's retention of an advice-of-counsel defense means that he has waived the attorney-client privilege. *See Bilzerian*, 926 F.2d at 1291. If the Court finds Mr. Etminan has waived the privilege, it should order Mr. Etminan to produce all written communications with his counsel in whatever form they took, and then appear for a deposition regarding his communications with counsel.

### b. The Total Remedy Defendants' Position

The Total Remedy Defendants do not dispute that a "defendant who asserts an advice-of-counsel defense [] is thereby deemed to have waived his privilege **with respect to the advice that he received**." *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (emphasis added) (citing *In re von Bulow*, 828 F.2d 94, 101–02 (2d Cir. 1987)). What the Total Remedy Defendants oppose is Gilead's attempt to obtain privileged communications between Mr. Etminan and attorney Herbert Weinberg that have nothing to do with the advice Mr. Etminan

received in this matter—that is, advice concerning the purchase of Gilead HIV medications and the acquisition of pedigrees from certain suppliers during the time period at issue in the complaint.

Mr. Weinberg has served as Mr. Etminan's counsel for decades. In addition to being an attorney, Mr. Weinberg is a licensed pharmacist, which makes him especially well qualified to advise pharmacists like Mr. Etminan across a range of matters. Mr. Weinberg has not appeared in this matter or the related *Janssen* case on behalf of Mr. Etminan. But Mr. Weinberg did advise Mr. Etminan concerning the purchase of HIV medications and acquisition of pedigrees from certain suppliers.

Gilead's deposition of Mohammad Etminan took place in Los Angeles on February 28, 2024. It lasted approximately six hours and 50 minutes—just shy of the seven-hour limit. During the first hour of the deposition, Gilead's counsel asked Mr. Etminan various questions implicating privileged communications between Mr. Etminan and Mr. Weinberg, including related to (1) communications pre-dating this lawsuit by decades; and (2) communications post-dating the filing of Gilead's lawsuit.

For example, Gilead's counsel asked Mr. Etminan a series of questions about legal matters occurring in and around 2003—matters with no relevance to the present lawsuit, much less any advice-of-counsel defense. Because answers to these questions may have implicated privileged communications with Mr. Weinberg, I instructed Mr. Etminan not to answer them.

Gilead also asked Mr. Etminan, "Has [Mr. Weinberg] provided you advice in connection with this matter?" In response, I instructed Mr. Etminan, "You can answer, but don't get into any [attorney-client] communications." Mr. Etminan's communications with Mr. Weinberg *after* the filing of Gilead's lawsuit are irrelevant because they have no bearing on any advice Mr. Weinberg may have given to Mr. Etminan during the time period at issue in the lawsuit concerning the purchase of Gilead HIV medications or the acquisition of pedigrees from certain suppliers.

At the start of the second hour of the deposition, after returning from a short break, Gilead's counsel stated the following: "[Mr. Jacobs], earlier you instructed the witness not to answer questions that might have implicated the advice of counsel he received. Will you agree to stipulate that you're not – that Mr. Etminan will not rely on advice of counsel as a defense for arguments in this case?"

This request was out of order for the simple reason that Gilead's counsel had not yet asked Mr. Etminan any questions implicating the advice of counsel defense. As noted above, Gilead's inquiries related to privileged communications between Mr. Etminan and Mr. Weinberg occurring either decades before the filing of Gilead's lawsuit or after its filing.

Later in the deposition—after this issue had arisen again and after counsel for the parties conferred off the record—Gilead's counsel stated the following:

> Gilead and Mr. Etminan have a dispute over attorney-client privilege. Gilead believes that Mr. Etminan has waived the privilege as to the advice he received from Herbert Weinberg, his attorney regarding his purchases from the distributors listed in

> Exhibit 4 and his willfulness as to those purchases. Both parties have agreed to move forward with this deposition and file a letter to resolve this issue in the future, in which Gilead would request to reopen the deposition on this limited topic.
>
> To create a clear record of the dispute, I'm going to ask Mr. Etminan a few questions to demonstrate the types of questions we would ask if the Court finds that the witness has waived attorney-client privilege as to his communications with Herbert Weinberg. I'm not asking every question I have on this topic.  I'm just asking examples.
>
> . . .
>
> Mr. Etminan, what did you tell Herb Weinberg about the distributors listed on Exhibit 4 [*i.e.*, the distributors other than those Gilead refers to as "Authorized Distributors"]?
>
> Mr. Etminan, what did Herb Weinberg tell you about the distributors listed on Exhibit 4?
>
> What did Herb Weinberg tell you about requesting pedigrees from the distributors listed on Exhibit 4?
>
> Did you ask your lawyer whether you should be particularly careful as to the distributors listed on Exhibit 4?

The Total Remedy Defendants do not object to the limited reopening of Mr. Etminan's deposition so that Gilead can question Mr. Etminan on the topics enumerated above, or to discovery of attorney-client communications subject to the same limited scope.  But Mr. Etminan's refusal to waive the advice-of-counsel defense does not require him to "produce ***all*** written communications with his counsel in whatever form they took," as Gilead now contends. (Emphasis added.)  Nor does it require Mr. Etminan to disclose privileged communications that have nothing to do with the advice-of-counsel defense—including communications with counsel about matters predating this litigation by decades and matters post-dating the filing of Gilead's suit.  Given the limited scope of the contemplated deposition—and the fact that Gilead used nearly the entire seven-hour period during its prior deposition of Mr. Etminan—the Total Remedy Defendants submit that any additional deposition should be limited to one hour.

\*     \*     \*

Gilead received the Total Remedy Defendants' position at 5 pm Eastern time today.  Since then, the parties have discussed narrowing their dispute and will continue to discuss it before the March 27, 2024 conference.  Should the parties narrow the dispute, they will promptly notify the Court by letter.

The parties thank the Court for its attention to this issue and look forward to discussing it further during the March 27, 2024 conference.

                                                                        Respectfully submitted,

                                                                         */s/ Timothy Waters*

                                                                         Timothy A. Waters

cc: All counsel of record (via ECF)

14968162