

Matthew Jacobs

(805) 601-7504 · www.jacobslawfirm.com · matt@jacobslawfirm.com
5743 Corsa Avenue, Suite 208, Westlake Village, CA 91362

July 18, 2024

Hon. Joseph A. Marutollo
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Via Email**

Re:   *Gilead, et al. v. Safe Chain, et al.*, 21-cv-4106 (AMD) (JAM)
      Reply in Support of Motion to Strike Plaintiff's Untimely Expert Report

Dear Judge Marutollo:

Gilead's opposition to Total Remedy's motion to strike is far more notable for what it omits than what it states.  ***Most significantly, Gilead does not even attempt to argue that good cause exists for its two-months-late service of Bell's "supplemental" report.***  To the contrary, Gilead admits that Bell's report was deficient because he simply "inadvertently omitted" information from it.  Opposition ("Opp.") ECF 401 at 1.  But Gilead "cannot serve a deficient opening report and then remedy the deficiency through the expedient of a "supplemental" report.'" *Anthem, Inc. v. Express Scripts, Inc.*, 660 F. Supp. 3d 169, 185 (S.D.N.Y. 2023).

Remarkably, Gilead attempts to **blame Total Remedy** for the late service of Bell's supplemental report, claiming that "it was not until November 9, 2023, fourteen months after Gilead's discovery requests, that Total Remedy finally produced the requested data showing its purchases of counterfeit Gilead-branded medication from all sources, including non-parties [the "Non-Party Data"]."  Opp. at 2.  Nonsense.

Total Remedy produced invoices to Gilead reflecting the Non-Party Data in ***October 2022—more than a year before Gilead claims it received them***.  *See* Bates 668-1336.[1]  What Total Remedy produced to Gilead on November 9, 2023, was an Excel spreadsheet neatly ***summarizing*** the previously produced Non-Party Data.  Total Remedy had no obligation to give Gilead this summary document, which it expended substantial time creating and which Gilead could have created itself from the invoices Total Remedy had produced.  But despite the David-versus-Goliath nature of this litigation, and in the interests of comity, Total Remedy gave Gilead the summary document.  Now Gilead tries to punish Total Remedy for this courtesy.

---

[1] The undersigned did not represent Total Remedy at that time, and makes this representation in reliance on discovery logs produced by prior counsel.

Hon. Joseph A. Marutollo
July 18, 2024
Page 2 of 3

Gilead cites four factors courts consider when deciding when to exclude an untimely expert report: "(1) the explanation for the failure to comply with the disclosure requirement; (2) the importance of the witness's testimony; (3) the prejudice suffered by the opposing party having to prepare for the new testimony; and (4) the possibility of a continuance. Opp. at 3 (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006). Collectively, these factors favor exclusion of Bell's untimely report:

*First*, Gilead has provided no explanation whatsoever for its failure to timely serve Bell's complete report. This factor therefore favors Total Remedy.

*Second*, in claiming that Bell's "testimony is central to the calculation of Gilead's damages," Opp. at 3, Gilead effectively concedes that Bell's report has nothing to do with the issue of liability. Moreover, Gilead will still be able to seek more than $23 million in damages from Total Remedy based on Bell's initial report (an astronomical figure, which, for reasons irrelevant to this motion, Gilead has no realistic chance of recovering).

*Third,* Total Remedy is severely prejudiced by the late filing, not just because Bell's new, untimely report increases the damages Gilead seeks by over 50%, but also because it forces Total Remedy's counsel to waste scare time and resources, including comparing hundreds of new line items in the supplemental exhibit to Bell's report to data produced in discovery.

*Fourth*, as the Court's numerous admonitions concerning expert discovery deadlines make clear, a continuance is not a realistic option—and, indeed, neither party has suggested it. As Gilead knows, the costs to Total Remedy Pharmacy of defending this action are substantial; the longer it drags on, the more difficult it is for Total Remedy to defend itself. Any continuance would indisputably favor Gilead—a multi-billion dollar international pharmaceutical company represented by an army of talented and highly competent attorneys—over Mr. Etminan, a pharmacist and owner of a community pharmacy.

A cursory review of the cases Gilead cites in its opposition make clear that either do not support Gilead's position or are easily distinguishable from the facts of this case. For example, Gilead cites *Town & Country Corp. v. Ingenious Designs LLC*, 2022 WL 2757643, at *17 n.9 (S.D.N.Y. July 14, 2022), for the proposition that a supplemental expert report cannot be stricken if it "does not introduce any wholly new theory of damages." Opp. at 3. *Town & Country* is easily distinguishable because the defendants in that case moved to strike plaintiff's supplemental expert report not because it was untimely, but rather because it altered plaintiff's damages theory. The court disagreed with defendants' claim that plaintiff's supplemental report materially altered its damages theory and denied defendants' motion to strike on that basis. Thus, *Town & Country* does not stand for the proposition that ***an untimely*** supplemental report must be accepted by a court unless it alters a plaintiff's damages theory. Indeed, such a rule would effectively render expert discovery deadlines meaningless.



Hon. Joseph A. Marutollo
July 18, 2024
Page 3 of 3

      Gilead also cites *Abbott Labs v. H&H Wholesale Services, Inc.*, 20222 WL 17977495, at *4-5 (E.D.N.Y. Dec. 28, 2022) for the proposition that it is "utterly routine for damages experts to revise the number of damages-causing products as they become aware of errors or other issues." Opp'n at 3. Left unstated by Gilead is that Patterson Belknap represented *Abbott* and the expert in that case was the very same Dr. Bell who submitted the untimely report in this case.

      That errors committed by Patterson Belknap and/or Bell in prior cases have necessitated untimely supplementation of expert reports does not make that practice "utterly routine." Moreover, the portion of the *Abbott* decision that Gilead cites in its opposition indicates that there was good cause for Bell to belatedly revise his expert report in *Abbott*—good cause which is patently lacking here.

      As of the filing of this letter, Gilead has not emailed the undersigned the exhibits filed under seal in support of its opposition. Thus, Total Remedy has not considered them in preparing this reply.

      For the reasons set forth above, and in Total Remedy's initial letter (ECF 1399), the Court should grant Total Remedy's motion to strike Gilead's untimely expert report.

Very truly yours,

Matt Jacobs

