**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

GILEAD SCIENCES, INC., *et al.*,                  :
                                                  :
                              Plaintiffs,         :         Case No. 21-cv-4106 (AMD) (JAM)
                                                  :
v.                                                :
                                                  :
SAFE CHAIN SOLUTIONS, LLC, *et al.*,              :
                                                  :
                              Defendants.         :
--------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF GILEAD'S MOTION**
**TO HOLD DEFENDANT JOHN LEVITAN IN DEFAULT**

Geoffrey Potter
Timothy A. Waters
Thomas P. Kurland
Andrew Haddad

PATTERSON BELKNAP WEBB & TYLER LLP

*Attorneys for Plaintiffs Gilead Sciences, Inc. et al.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 2

I.  The First entry of Default Against Levitan................................................2

    A.  The Court Ordered Levitan to Disclose His Assets and His Sales of Gilead Products............................................................................3

    B.  Gilead Properly Served Levitan with the Court's Orders and the Complaint.........................................................................................4

    C.  Levitan Refused To Make The Court-Ordered Disclosures or Appear in the Case...........................................................................4

II.  In Exchange for the lifting of his Default, Levitan Fraudulently Promised This Court that He Would Disclose His Assets and Sales and Sit for His Deposition ..............................................................................5

III.  Levitan Filed a Fraudulent Bankruptcy On the Day His Disclosures Were Due In This Case and Admitted He Did So to Avoid Disclosing His Assets In This Case ..........................................................................7

    A.  Levitan Did Not Disclose His Assets At the Start Of His Bankruptcy As Was Required........................................................7

    B.  Levitan Refused to Participate In His Own Bankruptcy or Make Any Effort to Fully Disclose His Assets or Liabilities In Response to Gilead and the Trustee's Discovery Requests .........................8

    C.  Levitan's Brief, Chaotic, and Perjurious Zoom Deposition .....................10

    D.  Levitan Failed to Attend the Bankruptcy Court's Show-Cause Hearing Despite Having Been Ordered to Do So .....................................12

    E.  At His In-Person Deposition, Levitan Admitted His Schedules of Assets and Liabilities Were Incomplete and Then Invoked The Fifth Amendment ...........................................................................13

    F.  The Bankruptcy Court Dismissed Levitan's Petition As a Sanction For His Willful Non-Compliance .............................................15

ARGUMENT .................................................................................................... 17

I.  Levitan Intentionally Breached the Deal by Which His Default Was Lifted, So His Default Must Be Reinstated .........................................17

II.  In the Alternative, the Court Should Enter Case-Ending Sanctions Against Levitan ...............................................................................19

CONCLUSION................................................................................................... 23

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aoude v. Mobil Oil Corp.*,
   892 F.2d 1115 (1st Cir. 1989) ................................................................19, 22

*BCM Development, LLC v. Oprandy*,
   490 F. App'x 409 (2d Cir. 2013) .................................................................17

*Cerruti 1881 S.A. v. Cerruti, Inc.*,
   169 F.R.D. 573 (S.D.N.Y. 1996) .................................................................20

*In re: John D Levitan*
   (Bankr. S.D. Fla.), No. 23-19295 (CLC), ECF Nos. 2-5 .......................... *passim*

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*,
   191 F. Supp. 2d 440 (S.D.N.Y. 2002) ...............................................19, 20, 22

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
   427 U.S. 639 (1976) (per curiam) .................................................................20

*Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*,
   663 F.2d 371 (2d Cir. 1981) .........................................................................20

*SEC v. Smith*,
   798 F. Supp. 2d 412 (N.D.N.Y. 2011), *aff'd*, 710 F.3d 87 (2d Cir. 2013) .............20

*Shangold v. Walt Disney Co.*,
   275 F. App'x 72 (2d Cir. 2008) ....................................................................20

*Skywark v. Isaacson*,
   1999 WL 1489038 (S.D.N.Y. Oct. 14, 1999) ....................................19, 20, 22

*United States v. Brosius*,
   24-cr-20255 (S.D. Fla.) ...............................................................................15

*West v. Goodyear Tire & Rubber Co.*,
   167 F.3d 776 (2d Cir. 1999) .........................................................................20

**Statutes**

11 U.S.C. § 121 ....................................................................................................16

11 U.S.C. § 362 ..................................................................................................1, 7

11 U.S.C. § 521 ..................................................................................................7, 8

11 U.S.C. § 1109 ..................................................................................................15

Plaintiffs (together, "Gilead") respectfully submit this memorandum of law in support of their motion to hold Defendant John Levitan ("Levitan") in default.

## PRELIMINARY STATEMENT

Levitan has committed a fraud on this Court and a federal bankruptcy court to avoid this case for two years. His stall tactics have allowed him to run out the clock to his advantage, leaving Gilead at the summary judgment stage without Levitan having made any of his Court-ordered disclosures or participated in any discovery whatsoever in this case.

As the Court is aware, after Levitan defaulted and declined to participate in this litigation for over a year, Judge Reyes brokered a stipulation between the parties: Gilead agreed that Levitan's default would be vacated on the condition that Levitan, among other things, complied with the Court's prior orders to fully disclose his assets and counterfeit sales within 30 days. Levitan made that promise, this Court so-ordered the stipulation, and Levitan's default was lifted. Then, on the 30th day, Levitan made no disclosures and instead filed for bankruptcy in Florida, automatically staying this case pursuant to 11 U.S.C. § 362.

Levitan's bankruptcy was a fraud from the start. The record of those proceedings is extraordinarily clear that Levitan never intended to make any truthful or accurate financial disclosures or otherwise participate in his own bankruptcy. On August 7, 2024, after eight months of bad-faith tactics and routinely flouted court orders, the bankruptcy court dismissed Levitan's petition as a sanction for his noncompliance and barred Levitan from refiling for bankruptcy for two years. In so doing, the bankruptcy court noted that Levitan had not performed even the most basic duties of a bankruptcy debtor, and that the bankruptcy was part of the same bad-faith stall tactics that Levitan had long employed in this case.

The automatic stay has finally lifted. Even assuming *arguendo* that Levitan's time to make his long-promised disclosures in this case was tolled during the pendency of his

1

bankruptcy, more than 30 days have now elapsed, and Levitan has still not made any of the disclosures he promised to make in exchange for the vacating of his default.  Levitan has violated the terms of his deal with Gilead and the Court.  So, his default must be reinstated.

The record is now abundantly clear that Levitan, a convicted money launderer, never intended to disclose his finances, either in this Court or in his own bankruptcy proceedings, and there is absolutely no indication that he is likely to change course now.  His transparent delay tactics have already wasted substantial resources of this Court, the bankruptcy court, and Gilead, and now we are at the summary judgment stage without Levitan having made a single disclosure or participated at all in discovery.  The Court should not countenance any efforts by Levitan to ask – as he has done many, many times before – for more time.  Levitan must be held in default.

## BACKGROUND

For nearly two years, Levitan has engaged in a series of bad-faith tactics to avoid participating in this case.  Two years ago, the Court ordered Levitan to disclose his assets and his counterfeit sales.  Levitan refused to do so and failed to appear in this case at all, so the Court ordered his default.  Almost one year ago, Levitan promised to make his disclosures within thirty days as a condition for Judge Reyes to vacate his default.  Then Levitan quickly reneged on that promise by filing a bad-faith bankruptcy case on the day his disclosures were due.  Gilead summarizes these events below.

## I.   THE FIRST ENTRY OF DEFAULT AGAINST LEVITAN

Levitan is a convicted felon who served 12 years in federal prison for money laundering. *See* Decl. of Thomas Kurland ("Kurland Decl.") dated August 9, 2024, Ex. B 38:13-16.  On July 29, 2022, Gilead added Levitan as a defendant in this action alleging that Levitan helped manage the relationship between Defendant Safe Chain Solutions LLC and its counterfeit suppliers, and that he was responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV

medications being sold into the U.S. drug supply chain.  ECF No. 606-1 ¶¶ 270-76; *accord* ECF No. 1056 ¶¶ 278-84 (the current operative complaint).  At the same time, Gilead also sought asset freeze, seizure, and temporary restraining orders against Levitan and in support of these requests submitted voluminous evidence proving its allegations.  *See* ECF No. 606 *et seq.*; *see also* ECF No. 607 at 43-46 (summarizing the evidence against Levitan).

A.   The Court Ordered Levitan to Disclose His Assets and His Sales of Gilead Products

On August 11, 2022, based on the strength of this evidence, Judge Donnelly entered an asset freeze order, seizure order, and temporary restraining order (collectively, the "Orders") against Levitan.  ECF Nos. 627, 628, 629.  In addition to freezing his assets, the asset freeze order directed Levitan to immediately disclose the following information to Gilead:

> a. a list of all assets held by, for, or on account of [Levitan], including any account for which [Levitan] has signatory authority, in any bank, brokerage house, or financial institution, including account title, account number, and balance;
>
> b. a list of all real properties he/she/it owns or in which [Levitan] presently has a legal interest; and
>
> c. a list of all real properties [Levitan] previously owned or in which [Levitan] previously had a legal interest from January 1, 2019 to the present.

ECF No. 627 ¶ 8.  In addition to authorizing a seizure at Levitan's residence, the seizure order directed Levitan to disclose to Gilead:

> the following information concerning their purchases and/or sales of any product bearing any of the Gilead Marks product from January 1, 2019 to the present: (1) the Drug Supply Chain Security Act pedigree documentation; (2) the price and quantity of each purchase or sale; (3) the product, including the specific type or variety of product; (4) the lot numbers; (5) the contact information, including names, addresses, email addresses, and telephone numbers of all associated individuals and/or companies from which Defendants have purchased or to whom Defendants sold the products.

3

ECF No. 629 at 6.  The seizure order also authorized Gilead to serve Levitan by delivering papers "to any person of suitable age found at [Levitan's home] or, if no persons are present, by leaving them in a conspicuous place at the premises."  *Id.* at 10.

B.     Gilead Properly Served Levitan with the Court's Orders and the Complaint

Gilead executed the Court's seizure order at Levitan's home on August 18, 2022.  *See* ECF No. 1159-1 ¶ 3.  During the seizure, Gilead's attorneys and investigators determined no one was present and then placed hard copies of the complaint, the Orders, and all related papers on Levitan's doorstep.  *See* ECF No. 823 ¶¶ 3, 5, 7; ECF No. 1159-1 ¶ 4.  Gilead's attorneys also spoke directly to Levitan via the internet-connected Ring video doorbell at his front door; Levitan confirmed no persons were present and told Gilead to contact his attorney, David McGee at Beggs & Lane.  ECF No. 1159-1 ¶ 4.  Gilead's attorneys then spoke to McGee's associate, who confirmed Beggs & Lane represented Levitan and that a paralegal from the firm was *en route* to Levitan's residence.  *See id.* ¶¶ 5-6.  Gilead then emailed Levitan's attorneys a link to all the papers that had been served and also gave copies of the papers to McGee's paralegal after she arrived.  *See id.* ¶¶ 6-7.  The paralegal then had several video calls with Levitan during which she described the papers to him.  *Id.* ¶ 7.

C.     Levitan Refused To Make The Court-Ordered Disclosures or Appear in the Case

Having been properly served and with full knowledge of his obligations under this Court's orders, Levitan never disclosed his assets or counterfeit sales to Gilead.  Instead, he had a succession of attorneys contact Gilead on his behalf to try to lift the asset freeze, but discussions fell apart because Levitan refused to make these disclosures, and those attorneys subsequently disappeared.  *See* ECF No. 1207-3, 1207-4 (communications with various counsel for Levitan on this issue).

4

Months later, in October 2022, because Levitan never responded to Gilead's complaint (despite having been served with it in several different ways during the seizure), the Clerk of Court entered a default against him.  ECF No. 839.

## II.   IN EXCHANGE FOR THE LIFTING OF HIS DEFAULT, LEVITAN FRAUDULENTLY PROMISED THIS COURT THAT HE WOULD DISCLOSE HIS ASSETS AND SALES AND SIT FOR HIS DEPOSITION

In May 2023, Levitan's attorney David McGee – whom Levitan identified as his attorney at the seizure and whose paralegal attended the seizure in person – finally entered an appearance in this action, ECF No. 1102.  McGee then waited two more months before moving to vacate Levitan's default on the purported basis that Gilead failed to properly serve Levitan.  *See* ECF No. 1150.  Gilead promptly filed an opposition explaining in detail why its service on Levitan – which included leaving the papers at his house and (at Levitan's request) handing physical copies to McGee's paralegal and emailing the papers to McGee and his associates – was proper under the Seizure Order and Rule 4 of the Federal Rules of Civil Procedure.  ECF No. 1159.

The Court denied Levitan's motion to vacate the default on August 10, 2023.  ECF No. 1169.  At the same time, the Court directed the parties to meet and confer "with a view toward an amicable resolution that would accord with the federal court preference for resolving cases on the merits."  *Id.*  Gilead then proposed in good faith that the parties stipulate that Levitan's default would be conditionally vacated, subject to him making all disclosures required by the asset freeze and seizure orders by no later than September 8, appearing for a deposition by no later than October 6, and responding to the complaint by no later than October 24.  *See* ECF No. 1176, 1176-1.  Given Levitan's refusal to participate in the case to that point, Gilead sought assurance that Levitan would meet his obligations before it voluntarily gave up the default it had obtained.  But Levitan rejected Gilead's proposal outright and offered no alternative proposal.

5

Judge Reyes held a conference to address this on October 10, 2023.  *See* ECF Min. Entry dated October 10, 2023.  Gilead reiterated that it would consent to an agreement "under which [Levitan's] default would be vacated subject to the conditions that he make the disclosures … and appear for a deposition … and respond to [the] complaint" on a quick timeframe.  ECF No. 1207-2 at 8:5-15.  Judge Reyes proposed on the record that Levitan's default be lifted on the condition that he meet the following deadlines: "30 days for the asset freeze disclosures, 45 days for deposition, and 60 days to answer." *Id.* at 12:10-3.  In so doing, Judge Reyes noted the importance of all this occurring before the fact-discovery cut-off of December 31, 2023.  *See* ECF No. 1207-2 at 12:18-20.  The next day, Levitan, through counsel, agreed to this proposal in writing*.  See* ECF No. 1201.

Upon Levitan's assent, Judge Reyes issued an order vacating Levitan's default on the express condition that Levitan make the disclosures required by the asset freeze and seizure orders by November 10, 2023; appear for a deposition by November 25, 2023; and answer the complaint by December 11, 2023.  *See id.*; *see also* ECF No. 1510 (clarifying that November 10 deadline applied to disclosures required by both the asset freeze and seizure orders).

Gilead promptly served discovery requests and a deposition notice on McGee.  *See* ECF No. 1207-1.  But McGee – despite being Levitan's counsel of record, *see* ECF Order dated June 2, 2023 – purported to refuse service of any discovery directed to Levitan on the basis that he was not "trial counsel." *See* ECF No. 1207-1.  And no other lawyer ever appeared for Levitan in this case, despite McGee's representation to the Court that Levitan would make his required disclosures by November 10.

6

III.   **LEVITAN FILED A FRAUDULENT BANKRUPTCY ON THE DAY HIS DISCLOSURES WERE DUE IN THIS CASE AND ADMITTED HE DID SO TO AVOID DISCLOSING HIS ASSETS IN THIS CASE**

On November 10, 2023 – the day by which he promised to disclose his assets and his sales of Gilead products – Levitan instead filed a voluntary petition for bankruptcy relief under Chapter 11, subchapter V of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, triggering an automatic stay of this litigation pursuant to 11 U.S.C. § 362.  *See* ECF No. 1217.  Levitan would later admit, under questioning from counsel for the trustee of his bankruptcy estate, that he filed for bankruptcy on November 10 because it was his deadline to disclose his assets to Gilead in this case:

> Q: So just -- just to be clear, you filed this case on November 10, 2023, which was the deadline for you to file asset freeze disclosures in Gilead case in New York; is that correct?
>
> A: You'd have to ask Bart [Levitan's lawyer] for the dates, but yes, I would assume.
>
> Q: So that was a precipitating cause for the filing on that date?
>
> A: It was part of the problem, yes.

*See* Kurland Decl., Ex. A 2:15-21; Audio File of Rule 341 Creditors' Meeting dated February 21, 2024 at 19:25-19:55.[1]

A.   Levitan Did Not Disclose His Assets At the Start Of His Bankruptcy As Was Required

At the time he filed his initial bankruptcy petition, Levitan did not file the information about his financial assets required by 11 U.S.C. § 521(a)(1).  *See In re: John D Levitan* (Bankr. S.D. Fla.), No. 23-19295 (CLC), ECF Nos. 2-5.  Given that Levitan had promised, and been

---

[1] Gilead is serving the full audio file of the Rule 341 Creditors' Meeting on the Court and Defendants via email contemporaneously with its filing of this motion.

ordered by this Court, to disclose his assets to Gilead that day, Levitan should have had that information ready to go when he filed his petition.  But he did not.

In fact, it took Levitan nearly two additional months to file *any* financial disclosures in his bankruptcy case.  When Levitan failed to include his schedules of his assets, liabilities, income, and expenditures or his statement of financial affairs with his petition, the bankruptcy court set November 24, 2023 as the deadline for Levitan to correct these deficiencies.  *See In re: Levitan*, ECF No. 6.  Levitan then engaged in a series of procedural maneuvers in the bankruptcy court to continue to extend his deadline to produce disclosures, including multiple motions to extend his deadline, and a motion to convert his bankruptcy from a reorganization under Chapter 11 subchapter V to a liquidation under Chapter 7.  *In re: Levitan*, ECF Nos. 25, 37, 42.

Levitan finally filed his schedules and statement of financial affairs on January 8, 2024, two months after he first filed for bankruptcy.  *In re: Levitan*, ECF Nos. 46, 47, 48.  Those schedules were woefully incomplete, including because they do not reflect Levitan's ownership of various additional businesses or Levitan's receipt of millions of dollars in commissions for brokering sales of counterfeit Gilead-branded HIV medications, which Gilead knows about through subpoenaed bank records in this action.  Not knowing this, the trustee of Levitan's estate originally certified that Levitan had met the filing requirements of 11 U.S.C. § 521(a)(1).  *In re: Levitan*, ECF No. 71.  But after Gilead notified the bankruptcy court of the bank records in its possession, *see In re: Levitan*, ECF No. 88, the trustee withdrew that certification.  *In re: Levitan*, ECF Nos. 91.

   B.   <u>Levitan Refused to Participate In His Own Bankruptcy or Make Any Effort to Fully Disclose His Assets or Liabilities In Response to Gilead and the Trustee's Discovery Requests</u>

Gilead appeared as a creditor in Levitan's bankruptcy and served document requests, interrogatories, and a deposition notice on Levitan pursuant to Bankruptcy Rule 2004 on

February 9, 2024.  *See In re: Levitan*, ECF No. 62.  The trustee also served discovery requests on

Levitan that same day.  *See In re: Levitan*, ECF No. 83, Ex. A.  Levitan ignored all of these

requests, forcing Gilead and the trustee to file motions to compel.  *See In re: Levitan*. ECF Nos.

78, 83.  Levitan did not respond to the motions.  On April 10, the bankruptcy court granted both

motions, directing Levitan to (1) respond to the discovery requests by April 23 and (2) appear for

a deposition no later than 30 days after his production of all information responsive to the

requests.  *In re: Levitan*, ECF Nos. 95, 97.  The bankruptcy court also ordered that, if Levitan

failed to produce information responsive to any of the discovery requests, he had to provide a

sworn explanation of what efforts he had undertaken to obtain the information not produced.  *Id.*

The bankruptcy court suggested that if he failed to do so, he would have to appear in person at a

show-cause hearing to explain himself.  *Id.*

On April 25, 2024, Levitan provided Gilead and the trustee with a handful of documents

consisting almost entirely of public filings, such as single-page annual reports filed with the

Florida Secretary of State by privately-held limited liability companies in which Levitan had an

interest.  This production was obviously and intentionally deficient: Levitan did not respond to

any of Gilead's interrogatories, did not produce any communications, did not provide any

documents concerning specific financial transactions between him and the purchasers and sellers

of counterfeits that Gilead described in its requests, and did not even disclose public filings from

all of the companies that he owned.  Levitan also failed to comply with the bankruptcy court's

order that he provide a sworn statement explaining why his production was so inadequate.

Both Gilead and the trustee followed up with Levitan's bankruptcy counsel regarding

these deficiencies several times, but Levitan's counsel never provided a date by which he would

produce more documents.  Accordingly, on May 10, the trustee notified the court of Levitan's

non-compliance with the order compelling him to produce documents and moved to have Levitan held in contempt. *In re: Levitan*, ECF No. 105. On May 15, the court scheduled a show-cause hearing for June 6 and ordered Levitan himself to appear in person.

Gilead did not immediately move for contempt, and voluntarily gave Levitan until May 17, 2024 to produce all documents, and noticed an in-person deposition for May 23. True to form, Levitan never produced those documents and made a mockery of Gilead's attempts to depose him. *See* ECF No. 1382-1 at 5-8.

C.  Levitan's Brief, Chaotic, and Perjurious Zoom Deposition

Initially, Gilead attempted to negotiate a mutually agreeable date for Levitan's deposition, but after Levitan failed to respond, Gilead noticed his deposition in person in Florida on May 23, 2024 – the last permissible day under the bankruptcy court's April 10 order. Then, less than twenty-four hours before the deposition was scheduled to take place (and after Gilead had incurred the costs associated with preparing for it), Levitan's bankruptcy counsel informed Gilead for the first time that Levitan was "out of the country and will not be returning in time to attend the live deposition." Levitan's counsel offered instead that Levitan could appear via Zoom and sit for a second live deposition after he returned. Gilead felt it had no choice but to agree. *See* ECF No. 1382-1 at 21.

On May 23, Levitan appeared via Zoom for a brief, chaotic, largely unproductive, and almost openly perjurious deposition. *See* Kurland Decl., Ex. B. Levitan participated in the deposition using a mobile device while sitting in what appeared to be a busy hotel lobby in what he said was Dubai. *See id.* 8:10-14. Levitan's bankruptcy counsel Bart Houston also participated by Zoom, albeit from a different location. *See id.* 6:19-20. In this deposition, Levitan admitted that his document production was deficient, that he had not provided answers to Gilead's interrogatories, and that he had not provided a sworn statement about what discovery

10

efforts he had undertaken. *Id.* 23:22-24:2, 29:17-31:10, 34:5-25.  In other words, he conceded that he violated the bankruptcy court's orders granting Gilead and the trustee's motions to compel, just as he had previously violated this Court's orders to disclose his assets and sales.

Aside from those admissions, the deposition was a farce.  Levitan was evasive, hostile, uncooperative, and in several cases obviously untruthful, conspiratorial, and inflammatory.  *See id.* 31:20-32:23, 37:3-6, 132:9-134:5, 137:15-138:5, 139:11-140:1.  For example, he claimed without any support that Gilead *bribed the judge who issued the seizure order against him in this case*, which he claimed to have learned from FBI agents whom he said were themselves indicted for their participation in the same scheme. *Id.* 31:20-32:23, 110:4-12.  (It should go without saying that Levitan's statements are false and slanderous.)  Additionally, Levitan asserted that the FBI was investigating whether *Gilead* was selling counterfeit versions of its own medications, and that the FBI forbade Levitan from disclosing his cooperation with that investigation – another false claim for which Levitan naturally declined to provide any support. *See id.* 104:15-106:11, 115:12-117:8, 139:20-140:1.  He also repeatedly cursed at counsel.  *See id.* at 37:3-6 (responding to question about when he was convicted for money laundering: "In 1992, back when you were just learning to be an asshole."); *id.* at 132:25-133 (telling counsel to "[u]se your head for something other than a bad haircut and wake the fuck up").

For essentially every document bearing Levitan's signature that Gilead introduced at his deposition, Levitan claimed his signature was forged.  *See, e.g., id.* 72:16-73:14, 74:6-9, 76:17-22, 103:15-104:3.  He further claimed that all the documents relevant to Gilead's requests were on a computer server that one of his former business partners had stolen before Gilead had even commenced the underlying case against him. *Id.* 23:22-24:2, 34:21-25, 27:20-28:5, 30:11-31:10.

11

Levitan also invited his brother and business partner Daniel Levitan to attend his deposition. Daniel – who is not an attorney, nor a party in Levitan's bankruptcy or this case – repeatedly directed his brother John not to answer Gilead's questions because of some non-specific nondisclosure agreement. *Id.* 24:14-27:12. After Gilead's counsel told Daniel to stop interrupting, Daniel conferenced in the lawyer *David McGee*, who previously appeared for John Levitan in this case to negotiate that the default be lifted, *see supra* Background Section II, and who purported to be there to represent Daniel's company (and John's current employer) Invictus Holdings Inc. *Id.* 77:25-82:22. McGee proceeded to make similarly baseless objections. *Id.*

Levitan was deposed for only three hours. Then he abruptly refused to continue because he said he was tired, his blood pressure was too high, and he had to go prepare for a meeting with the "ruler of Dubai." *Id.* 135:12-136:8, 139:4-141:20.

On May 24 and again on May 30, Gilead contacted Levitan's bankruptcy counsel to schedule Levitan's supplemental production as well as the continued deposition, but Levitan's counsel failed to provide any specific dates. After all this, on June 4, Gilead notified the bankruptcy court of Levitan's non-compliance with the Court's orders and moved for an order to show cause why Levitan should not be held in contempt. *See generally* ECF No. 1382-1.

D.   Levitan Failed to Attend the Bankruptcy Court's Show-Cause Hearing Despite Having Been Ordered to Do So

On June 6, the bankruptcy court heard both the trustee's and Gilead's show-cause motions for contempt. *See* ECF No. 1382-3 (transcript from June 6 hearing). The bankruptcy court ordered Levitan to appear in person; he did not attend the hearing at all, either in person or remotely. His counsel explained that Levitan had notice of the hearing but was still in Dubai and would be out of the country for at least another month. *See id.* 22:15-16.

12

In response, the bankruptcy court aptly stated: "I don't think that the dignity of this Court will be served by having someone ignore an order, essentially, when they were required to be here." *Id.* 10:22-25.  The court also asked whether it should dismiss Levitan's bankruptcy, observing "I just don't know how you get someone like this to comply with what's required in the bankruptcy system," and "[s]hould he even be in bankruptcy if he fails to comply with what's required?" *Id.* 16:9-11, 20:2-3.  The court further observed, "I think I've seen this movie before, and I think a lot of this [i.e., Levitan's flagrant contempt of court orders] happened pre-petition with respect to the documents that [Gilead] asked for, right?" *Id.* at 16:15-17.

On June 27, the court granted Gilead's motion for an entry of an order to show cause. *See* ECF No. 1398-1.  The court directed Levitan to appear in person to conclude his deposition within 30 days, and to appear at a hearing on July 29 to show cause why he should not be held in contempt for violating court orders and why monetary sanctions should not be awarded to Gilead.  *Id.* at 2.  Additionally, the court stated that it "will also consider whether dismissal of [Levitan's] case or denial of [Levitan's] discharge is appropriate." *Id.*

Then, on June 29, the court found Levitan in contempt of court for willfully failing to comply with the order granting the trustee's motion to compel the production of documents.  *See* ECF No. 1398-2.  The court directed Levitan to pay the trustee's fees and costs in the amount of $11,967.62.  *See id.* at 2.

E.     At His In-Person Deposition, Levitan Admitted His Schedules of Assets and
       Liabilities Were Incomplete and Then Invoked The Fifth Amendment

On July 1, Gilead proposed four dates for Levitan's continued deposition to his bankruptcy counsel but got no response.  A week later, Gilead noticed Levitan's in-person deposition for July 25. *In re: Levitan*, ECF No. 132.  Levitan's counsel did not respond to this notice until the late afternoon of Friday, July 19, when he asked to adjourn the deposition to a

week after the deadline provided in the bankruptcy court's show-cause order.  Gilead refused to postpone the deposition without leave of court, and in response, Levitan's counsel agreed to move forward on July 25.  *See* Declaration of Drew Dillworth dated August 9, 2024, Ex. A.

Gilead was finally able to depose Levitan in-person on July 25, 2024 – almost eight months after Levitan had first been ordered to sit for a deposition by Judge Reyes.  During the morning of the deposition, while generally refusing to provide responsive answers to Gilead's questions, Levitan nonetheless made two important admissions.  First, Levitan admitted that he has never searched for documents responsive to Gilead's document demands despite the Order Compelling Discovery Responses, and despite his acknowledgement during his May 23 deposition that he had an obligation to search for and produce those documents.  *See* Kurland Decl., Ex. C 160:23-162:16.  Second, Levitan acknowledged that – despite having previously verified in his bankruptcy that his schedules of assets and liabilities were accurate under penalty of perjury, *see In re: Levitan*, ECF No. 45 at 41-42 – he could not confirm that those schedules were accurate, and claimed not to know all his business interests.  *Id.*190:15-209:7.  When confronted with documentary evidence of his ownership interests in businesses not listed on his schedules – including those through which he received counterfeiting funds – Levitan denied knowledge of such businesses or money he received from such businesses, insisting that his lawyers handled his business interests and that he could not be bothered to know all of the companies in which he owned interests.  *See id.* 197:20-198:9, 199:9-24, 207:6-208:19.  He also once again insisted that various documents featuring his signature were forged.  *See id.* 236:1-18, 237:11-238:19, 241:8-24, 250:20-251:18.

After the lunch break, Levitan switched gears and invoked his Fifth Amendment right against self-incrimination in response to nearly every single question he was asked, which

concerned numerous topics.  *Id.* 266:10-320:2.  For example, he invoked the Fifth as to all of

Gilead's questions about his involvement in the sale of counterfeit Gilead HIV medications.  *See,*

*e.g.*, *id.* 277:11-17, 286:11-22.  He also invoked the Fifth as to questions regarding bank

statements for his personal and business bank accounts, *id.* at 290-13:314:11, and as to his debts

to Adam Brosius, *id.* at 316:2-319:10, another defendant in this case whom Levitan listed as a

creditor on his bankruptcy schedules, *see In re: Levitan*, ECF No. 45 at 13, and who was recently

indicted for selling counterfeit HIV medications, *United States v. Brosius*, 24-cr-20255 (S.D.

Fla.).  Levitan frequently laughed and sneered at Gilead's attorneys while he invoked the Fifth, at

one point referring to a question as "Pathetic" before saying "Fifth."  Kurland Decl., Ex. C

277:11-17.  At one point, Levitan's attorney remarked to Gilead's attorneys, "You're not going

to prove your case with a negative inference" – acknowledging that Levitan was strategically

refusing to provide any discovery whatsoever to avoid liability in this action.  *Id.* 278:1-2.

 F. <u>The Bankruptcy Court Dismissed Levitan's Petition As a Sanction For His
Willful Non-Compliance</u>

 Four days after Levitan's deposition concluded, on July 29, 2024, the bankruptcy court

held a show-cause hearing.  The bankruptcy judge stated from the bench that she would dismiss

Levitan's bankruptcy in its entirety and forbid him from refiling for bankruptcy for two years –

four times as long as the default statutory period of 180 days, 11 U.S.C. § 1109(g) – as a sanction

for his willful non-compliance with the bankruptcy court's orders.  Kurland Decl., Ex. D 23:22-

24:1.  The judge also ordered Levitan to pay Gilead's costs associated with his violations of the

bankruptcy court's orders.  *Id.* 23:16-21.  The judge observed that Levitan's conduct in his

bankruptcy "looks [] like a continuation of the litigation strategy that was started when [Gilead]

obtained a default judgment against this debtor," and Levitan "has been somewhat successful in

holding [Gilead] at bay with respond to discovery … very basic information regarding assets and

liability." *Id.* 4:24-5:2, 7:22-25.  At the conclusion of the hearing, the judge stated for the record that "this Court has entered several orders that have not been complied with, [o]rders that have very specific requirements or directives to [Levitan]," and held that Levitan had failed "even the most basic requirements of being a debtor in this Court." *Id.* 22:19-23:1.  The judge further stated that Levitan's sporadic efforts at bare-minimum compliance were "not good enough, and we're sending the wrong message, if I find that that's good enough to do what this debtor has done over the last few months and then give him another chance." *Id.* 23:12-15.

On August 7, 2024, the bankruptcy court issued a written order dismissing Levitan's bankruptcy with a two-year prejudice period "based on his knowing and willful failure to abide by orders of the Court, including but not limited to the [orders compelling him to produce discovery], and his knowing and willful failure to file accurate schedules of his assets and liabilities." *See* Kurland Decl., Ex. E at 6.  The court also directed Levitan to pay Gilead's counsel's fees and costs associated with Levitan's non-compliance with the bankruptcy court's orders.  *Id.*  In support of its order, the court made various factual findings, including that Levitan "knowingly and willfully failed to comply with … his statutory duties [to file accurate financial schedules] under 11 U.S.C. § 121," *id.* at 2; that "Levitan was evasive, hostile, uncooperative, and frequently gave non-responsive answers, and showed disrespect to the attorney deposing him" in his Zoom deposition, *id.* at 3; and that at his in-person deposition "Levitan admitted he never searched for documents responsive to Gilead's Rule 2004 requests, and that his schedules of assets and liabilities were inaccurate in that they omitted many of his business interests," *id.* at 4 (citations omitted).  That order lifted the stay of Gilead's claims against Levitan in this action.

## ARGUMENT

Levitan's default should be reinstated for two independent reasons.  First, he intentionally breached the deal by which his default was lifted.  And second, Levitan's fraud on this Court merits the entry of case-ending sanctions against him.

## I.   LEVITAN INTENTIONALLY BREACHED THE DEAL BY WHICH HIS DEFAULT WAS LIFTED, SO HIS DEFAULT MUST BE REINSTATED

This Court has already found Levitan to be in default, ECF No. 839, and denied his motion to have his default lifted, ECF No. 1169.  With Gilead's consent, this Court offered Levitan a lifeline: his default would be lifted if he met certain deadlines, beginning with making the disclosures required by the Asset Freeze Order and Seizure Order within 30 days.  Even assuming *arguendo* that the automatic stay tolled Levitan's obligations under this Court's order, it has still been over 30 days, exclusive of the automatic stay period, and Levitan has not made any of the disclosures required under the Seizure Order or the Asset Freeze Order.  His default was lifted on the condition that he meet specific disclosure and other deadlines, and he has failed to do so.  He must now be held in default again.  *See, e.g.*, *BCM Development, LLC v. Oprandy*, 490 F. App'x 409, 409 (2d Cir. 2013) ("Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation.") (citations omitted).

The record leaves no room for doubt that Levitan's nonperformance is intentional.  He never intended to keep his promises to this Court and intentionally failed to meet the conditions upon which his default was lifted.  Levitan admitted under oath that he filed for bankruptcy on November 10, 2023 in order to avoid the making the disclosures that he stipulated to produce, and this Court ordered him to produce, on that day.  *See* Audio File, Rule 341 Creditor's Meeting dated February 21, 2024 at 19:25-19:55.  But among the disclosures Levitan had to make on

17

November 10 was a full disclosure of his assets – which is, of course, what a debtor must produce when he files for bankruptcy.  If Levitan had in fact intended to comply with the promises he made to have his default lifted, then he would have had those disclosures ready to file when he initiated his bankruptcy, or very shortly thereafter.  Instead, Levitan engaged in eight months' worth of delay tactics and bad-faith maneuvers, leading the bankruptcy court to declare, eight months later, that Levitan had not met "even the most basic requirements of being a debtor in this Court," and to dismiss his bankruptcy with a two-year filing bar.  Kurland Decl., Ex. C 22:19-23:1.  The record set forth above speaks for itself:  Levitan's bankruptcy was a fraud from the start, intended only to generate delay and expense while staving off default judgment.  As the bankruptcy court put it, Levitan's fraudulent bankruptcy was "a continuation of the litigation strategy that was started when [Gilead] obtained a default judgment against" him.  *Id.* 4:24-5:2, 7:22-25.  In other words, both before this Court and the bankruptcy court, Levitan voluntarily promised to fully disclose his assets, using that promise to delay entry of default judgment against him with no intention of ever meeting his obligation.

Levitan has been shameless in asking courts for extensions of time in the face of his clear violations of their orders.  Even at the sanctions hearing that ended his bankruptcy, Levitan continued through counsel to ask for more time, promising that now he would begin participating in good faith.  *See id.* 10:2-14:6.  The bankruptcy court had little trouble seeing through that obvious falsehood, stating on the record that Levitan's behavior threatened "the integrity of this system," and that "we're sending the wrong message,  if I … give him another chance."  *Id.* 23:12-15, 25:1-5.  In light of the record, this Court should similarly dismiss out of hand any suggestion by Levitan that he be given additional time to comply.

In sum, Levitan is in willful breach of the so-ordered stipulation into which he entered as a condition of vacating his default.  He is bound by his stipulation and has no excuse for his noncompliance, and the Court should not reward his extensively documented bad-faith tactics by giving him another opportunity to wring additional delay out of yet another promise that *this* time he will participate in this litigation in good faith.  He must be held in default.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD ENTER CASE-ENDING SANCTIONS AGAINST LEVITAN

The Court's analysis can and should stop with the above: Levitan breached his agreement, and so his default should be reinstated.  But because Levitan made knowingly false promises to secure the lifting of his default, and then filed a fraudulent bankruptcy at the last possible moment to frustrate this Court's orders, this Court can also hold Levitan in default as a sanction for his fraud upon this Court.

A fraud upon the Court occurs when "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."  *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)); *see also Skywark v. Isaacson*, 1999 WL 1489038 at *14 (S.D.N.Y. Oct. 14, 1999) (a fraud on the court occurs where "the misconduct at issue seriously affects the integrity of the normal process of adjudication," including "where a party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action" (citations and quotation marks omitted)).  "Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms."  *Auode*, 892 F.2d at 1118.

Once a party's fraud is established by clear and convincing evidence, *SEC v. Smith*, 798 F. Supp. 2d 412, 422 (N.D.N.Y. 2011), *aff'd*, 710 F.3d 87 (2d Cir. 2013), a court has "inherent power … to levy sanctions" to punish the party's deception and deter future misconduct by it or other litigants.  *See Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 386-87 (2d Cir. 1981).  The Court should consider five factors when determining the appropriate sanction:

> (1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the injured party; (3) whether there is a pattern of misbehavior rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to occur in the future.

*McMunn*, 191 F. Supp. 2d at 446 (citing *Skywark*, 1999 WL 1489038, at *15).  In serious cases and where lesser sanctions are insufficient, "entry of judgment against the offending party" is appropriate and necessary.  *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 583 (S.D.N.Y. 1996); *see also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam) (declaring that dismissal "must be available to the district court in appropriate cases" to penalize and deter misconduct).  Dismissal is particularly merited where the party's misconduct is willful, in bad faith, or grossly negligent, *see Penthouse Int'l*, 663 F.2d at 387; *see also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999), and where the actions "resulted in significant costs" to the opposing party, *Shangold v. Walt Disney Co.*, 275 F. App'x 72, 74 (2d Cir. 2008) (summary order).

Here, as set forth above, the record leaves no room for doubt that Levitan intentionally lied when he said he would comply with this Court's orders and make required disclosures in exchange for the lifting of his default.  The only sanction that will appropriately address Levitan's fraud on this Court is an entry of default.  Each of the five factors enumerated in the case law confirms the need for case-ending sanctions here.

First, the record leaves no room for question that Levitan acted in intentional bad faith. Levitan admitted to filing for bankruptcy in order to avoid making the disclosures he promised this Court he would make, and his bad-faith delay tactics before the bankruptcy court are well-documented.  The bankruptcy court was clearly correct in concluding that Levitan never intended to comply and never would comply with his obligations as a debtor, including the disclosure of his assets, and that Levitan's bankruptcy was a continuation of the same bad-faith tactics that he employed before this Court.  *See* Kurland Decl., Ex. C 4:24-5:2, 7:22-25, 22:19-23:1, 23:12-15.

Second, Gilead has been irreparably prejudiced by receiving no disclosures and no discovery from Levitan whatsoever, and discovery is now closed.  The entire point of the stipulation lifting Levitan's default, as so-ordered by this Court, was that Levitan would make disclosures, provide discovery, and serve his pleadings before the end of fact discovery.  By fraudulently promising to participate in this action, and then fraudulently obtaining an eight-month automatic stay, Levitan has successfully avoided giving any meaningful disclosures or discovery either here or in bankruptcy court.  Now fact and expert discovery in this case are over, and Gilead has received nothing from Levitan.

Third, Levitan was added as a defendant two years ago, and he has never once participated in the case in good faith.  His litigation malfeasance extends from the beginning of the case, where he intentionally sat in default until the last moment, through his false promises to this Court to lift the default, through the entirety of his fraudulent bankruptcy.

Fourth, Levitan never corrected his misconduct.  He was given innumerable chances to make an accurate financial disclosure in this case and in the bankruptcy case.  But, as the bankruptcy court held, he intentionally failed to do so.

Fifth, there can be no real question that Levitan will continue to act in bad faith if given the opportunity to continue to do so, as the bankruptcy court found in dismissing his bankruptcy and instating a two-year filing bar.  The intent and effect of Levitan's scheme could hardly be clearer: avoid default, create delay, evade his discovery obligations, run out the clock, and hope he gets away with it.

Levitan's scheme deliberately wasted time and resources of two federal courts, an appointed bankruptcy trustee, and Gilead.  Levitan has intentionally flouted every order this Court has issued with regard to him, and his complete failure to produce any discovery or any disclosures "seriously affects the integrity of the normal process of adjudication," *Skywark*, 1999 WL 1489038 at *14, and "unfairly hamper[s] the presentation of the opposing party's claim," *McMunn*, 191 F. Supp. 2d at 445 (quoting *Aoude*, 892 F.2d at 1118).  In short, Levitan has committed a fraud on this Court.

A default is the only proper sanction for Levitan's fraud.  Any lesser sanction cannot and will not address the prejudice Levitan has caused by his refusal to make any disclosures or produce any discovery.  And by his repeated flouting of court orders and shameless series of false promises to start participating in good faith, Levitan has made clear that no lesser sanction will be effective.  Anything less than case-ending sanctions will not deter future misbehavior from Levitan specifically, nor will it act as a general deterrence to other defendants who are similarly tempted to sabotage discovery through false promises and fraudulent bankruptcy filings.  Quite to the contrary - without case-ending sanctions, Levitan's fraud on this Court and the bankruptcy court would be rewarded.

Again, Gilead believes that the Court need not reach the issue of Levitan's fraud on this Court because his default can and should be reinstated based on his failure to meet the conditions

22

subject to which his default was vacated.  As a practical matter, the reinstatement of Levitan's default will moot the need for case-ending sanctions.  But no matter how the Court approaches the question, the record is abundantly clear that Levitan has abandoned his bargained-for right to defend the merits of this litigation through his intentional misconduct and fraudulent filings before this Court and the bankruptcy court.  He must be held in default.

## **CONCLUSION**

For the reasons stated above, the Court should issue an Order holding Levitan in default and instructing the Clerk of Court to issue a certificate of default against him.


Dated:  New York, New York
         August 9, 2024

                                        Respectfully submitted,

                                        PATTERSON BELKNAP WEBB & TYLER LLP


                                        By: _____
                                             Geoffrey Potter
                                             Timothy A. Waters
                                             Thomas P. Kurland
                                             Andrew I. Haddad
                                        1133 Avenue of the Americas
                                        New York, NY 10036-6710
                                        T:  212-336-2000
                                        F:  212-336-2222
                                             gpotter@pbwt.com
                                             twaters@pbwt.com
                                             tkurland@pbwt.com
                                             ahaddad@pbwt.com

                                        *Attorneys for Plaintiffs Gilead Sciences, Inc. et al.*