UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

GILEAD SCIENCES, INC., GILEAD SCIENCES
IRELAND UC, and GILEAD SCIENCES LLC,

                              Plaintiffs,

             -against-

SAFE CHAIN SOLUTIONS LLC, *et al.*,

                            Defendants.

-------------------------------------------------------------------x

**<u>SEALED</u>**
**REPORT AND**
**RECOMMENDATION**[1]

21-CV-4106
(Donnelly, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      On March 19, 2024, Plaintiffs Gilead Sciences, Inc., Gilead Sciences Ireland UC, and

Gilead Sciences LLC (together, "Gilead") filed a Contempt Motion, styled as a "Motion for Order

to Show Cause for Contempt" seeking an order from this Court finding Defendant Yisel Lopez

("Ms. Lopez") liable for violating the terms of an Asset Freeze Order entered on August 11, 2022.

Dkt. No. 1327.

      In its memorandum of law in support of its contempt motion, Gilead asserts that it has

learned from third-party discovery that Ms. Lopez entered into a contract for the sale of a property

subject to the Asset Freeze Order.  Dkt. No. 1328, at 4.  Gilead seeks an order ensuring that Ms.

---

[1]     Certain exhibits filed with Gilead's Contempt Motion are under seal.  "That is at odds with the principles of public access and transparency."  *Lyons v. New York Life Ins. Co.*, No. 20-CV-3120 (PAE), 2022 WL 837202, at *27 (S.D.N.Y. Mar. 21, 2022), *appeal dismissed* (Oct. 21, 2022) ("on its review of the summary judgment record, the Court found documents that were improperly filed under seal or redacted."); *see also AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 17-CV-598 (BKS) (CFH), 2022 WL 2643583, at *26 (N.D.N.Y. July 8, 2022) ("Portions of a number of the exhibits refer portions of many of these documents are quoted publicly elsewhere in the record, suggesting that maintaining these documents entirely under seal is not justified.").

     Nonetheless, at this time and out of an abundance of caution, the Court is issuing this Report and Recommendation under seal with copies provided to the parties.  The parties may submit a copy of this Report and Recommendation with proposed redactions by September 5, 2024.  If the parties do not submit any proposed redactions by September 5, 2024, the Court will docket this Report and Recommendation, in its entirety, on the public docket.

Lopez is not able to dissipate the proceeds of this sale—along with additional relief "to address her prior violations of the Asset Freeze Order." *Id.* Specifically, Gilead alleges that three violations of the Asset Freeze Order have already occurred: (i) the sale of a Miami property by Ms. Lopez, (ii) the mortgaging of her primary residence in Broward County, Florida, and (iii) contracting for the sale of her primary residence in Broward County, Florida. *Id.*

Following a referral[2] from the Honorable Ann M. Donnelly, United States District Judge, the undersigned respectfully recommends that (i) Gilead's Contempt Motion be **GRANTED**; (ii) Ms. Lopez be held in contempt and, as a remedy, and (iii) that Ms. Lopez be directed to comply with the directives outlined in Section IV of this Report and Recommendation.

## I.    BACKGROUND

### A.    Relevant Facts

This action, which commenced on July 22, 2021, arises out of an alleged HIV drug counterfeiting ring involving three groups of participants: suppliers, distributors, and pharmacies. *See* Memorandum Decision and Order, Dkt. No. 781 at 2; *see also* Fourth Amended Complaint, Dkt. No. 782 ¶¶ 1-11. Gilead alleges that distributor defendants sold "authentic-looking" Gilead-branded bottles repurposed with non-Gilead drugs, such as anti-psychotic medication, that do not treat HIV. *Id* at ¶¶ 1-2, 204-208. Gilead also alleges that defendants sold thousands of Gilead-branded bottles with the correct Gilead medication but accompanied by fake government-required forms called "pedigrees." *Id*. at ¶¶ 216-219. Since Gilead is in the business of, *inter alia*,

---

[2]    The undersigned notes, in the interest of clarity, that Gilead's Contempt Motion stems from an alleged violation of a district judge's order and does not implicate a magistrate judge's contempt authority as outlined in 28 U.S.C. § 636(e). *See Aquavit Pharms., Inc. v. U–Bio Med, Inc.,* No. 19-CV-3351 (VEC), 2020 WL 1900502, at *4 n.2 (S.D.N.Y. Apr. 17, 2020). Therefore, the undersigned's opinion is issued as a Report and Recommendation to the district judge and will be regarded as any other proposed findings of fact and recommended dispositions issued under 28 U.S.C. § 636(b)(1) and Rule 72(b)(1). *See id.*; *Funnekotter v. Republic of Zimbabwe*, No. 09-CV-8168, 2011 WL 5517860, at *2 (S.D.N.Y. Nov. 10, 2011).

producing "life-saving treatments for patients living with HIV" and "pre-exposure prophylactic, or PrEP, medication that protects against HIV-1 infection when taken as prescribed," (*id.* at ¶¶ 1, 190), the consequences of Defendants' alleged conduct can be—as Gilead posits—"dire." *Id.* at ¶ 3. Further, since the foreign drugs in the counterfeit bottles were not obtained via proper prescriptions and since individuals who received and ingested these counterfeits "unwittingly miss[ed] their HIV treatment or falsely believe[d] themselves to be protected against HIV infection," Gilead commenced this action with a heightened interest in putting "an immediately stop to the sale of these dangerous counterfeit medications." *Id.* at ¶ 12.

Gilead seeks, *inter alia*, injunctive and monetary relief against all Defendants for trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); false descriptions and false designations of origin in commerce in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); trademark dilution in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125) and New York General Business Law § 360-1; deceptive business practices in violation of New York General Business Law § 349; common-law unjust enrichment and unfair competition; engaging in a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c); and conspiracy to engage in a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(d). *Id.* at ¶¶ 652-749.

### B.    The Asset Freeze Order

On July 30, 2022, Gilead moved to amend its Third Amended Complaint to "add new Defendants and to add new allegations concerning existing Defendants, and the counterfeiting conspiracy, based on new evidence." Dkt. No. 606, at 1. In addition, Gilead also moved for (i) an *ex parte* seizure order "permitting the seizure of dangerous counterfeit HIV medications and the documentation concerning their purchase, sale, and distribution"; (ii) an temporary restraining

order, to be following a preliminary injunction, "enjoining certain newly added Defendants from the manufacture, sale, distribution, and advertisement of Gilead drug"; and (iv) an asset freeze order against certain newly added Defendants "to preserve Gilead's right to an equitable accounting." *Id.* In support of its motion to amend, Gilead submitted a proposed Fourth Amended Complaint naming*, inter alia*, Mr. Herrera and Ms. Lopez as "newly-added" defendants in this action. *See* Dkt. No. 606-1 (Proposed Fourth Amended Complaint); 606-5 (Redline to the Third Amended Complaint).

On August 11, 2022, following a hearing on Gilead's motion, Judge Donnelly granted Gilead leave to file its Fourth Amended Complaint. Dkt. No. 626.

On August 11, 2022, Judge Donnelly also issued an asset freeze order (hereinafter, the "Asset Freeze Order") against several of the "newly-added" defendants—including Mr. Herrera and Ms. Lopez. Dkt. No. 627, at ¶ 1. The Defendants, referenced in the Asset Freeze Order and referred herein as "Asset Restrained Defendants," were prohibited from (i) "secreting any assets and from transferring or conveying any assets," (*id.* at ¶ 2) and (ii) "transferring, selling, mortgaging, encumbering, or otherwise impairing any ownership or other legal interest they may have in any real property." (*id.* at ¶ 3). Further, the Asset Freeze Order provided that "[a]ll assets held by, for, or on account of any Asset Restrained Defendant, and the balance of any account for which any of them has signature authority, shall be frozen and restrained, and any bank, brokerage house or financial institution holding such funds is restrained from releasing them until further order of this Court." *Id.* at ¶ 6.

The Asset Freeze Order compelled each Asset Restrained Defendant to produce, to Gilead's counsel, (i) a "list of all assets held by, for, or on account of him/her/it, including any account for which he/she/it has signatory authority, in any bank, brokerage house, or financial

institution, including account title, account number, and balance[,] (ii) a "list of all real properties he/she/it owns or in which he/she/it presently has a legal interest[,] and (iii) a "list of all real properties he/she/it previously owned or in which he/she/it previously had a legal interest from January 1, 2019 to the present." *Id.* at ¶ 8.

Finally, the Asset Freeze Order noted that "any act by any of the [Asset Restrained Defendants] in violation of any of its terms may be considered and prosecuted as contempt of this Court." *Id.* at ¶ 11.

Judge Donnelly directed Gilead to effect service of the Asset Freeze Order and all supporting papers by "delivering true copies thereof to any person of suitable age found at Defendants' business or home address, or if no such persons are found, then by any method permitted under Rule 4 of the Federal Rules of Civil Procedure. *Id.* at ¶ 9; Dkt. No. 628, at 5.

### C.    Defendant Yisel Lopez

On September 30, 2022, Gilead filed its Fourth Amended Complaint against Defendants Armando Herrera ("Mr. Herrera") and Ms. Lopez.  Dkt. No. 630 at ¶¶ 174, 243-250, 648-650.  Mr. Herrera is alleged to have "managed, supervised, ratified, and/or personally participated in the trafficking of counterfeit Gilead HIV and other medication."  *Id.* at ¶ 105.  Specifically, Gilead alleged that Mr. Herrera—who purportedly "sits at the top of the known counterfeiting conspiracy"—set up the organization of the counterfeiting ring and exercised ultimate control over numerous defendants.  *Id.* at ¶¶ 105, 243.  But Mr. Herrera was able to "operate incognito and enjoy the proceeds he receive[d] from this criminal enterprise" with assistance from Ms. Lopez— his "live-in girlfriend" who allegedly "keeps significant assets from the criminal enterprise in her name."  *Id.* at ¶¶ 250, 648-49.  Specifically, Gilead asserts that Mr. Herrera "owns no real estate or vehicles in his own name;" instead, counterfeiting proceeds are maintained and laundered under

Ms. Lopez's name. *Id.* at ¶ 250. Gilead's Fourth Amended Complaint alleges that Ms. Lopez owns—as principal—two limited liability companies whose assets include Mr. Herrera's home and "Mr. Herrera's mother's home." *Id.* at ¶¶ 250, 648. On November 26, 2022, Mr. Herrera and Ms. Lopez appeared in this instant action —represented by the same counsel—and interposed an Answer to the Fourth Amended Complaint. Dkt. Nos. 880-881.

On March 1, 2023, Gilead and Ms. Lopez entered into a stipulation and agreement modifying the Asset Freeze Order as applied to Ms. Lopez. Dkt. No. 952, 954. In relevant parts, the parties agreed to modify the Asset Freeze Order to (i) reflect an agreement that Ms. Lopez (and all other related individuals) was preliminarily enjoined from using or diluting Gilead's marks and (ii) convert the Asset Freeze Order into a preliminary injunction. *Id.* The stipulation also noted that the provisions of the Asset Freeze Order, as outlined *supra* in Section I.B, remain in effect. *Id.* at ¶ 4(e), 5. On March 2, 2023, the parties' stipulation and agreement was signed by Judge Donnelly. *See* Dkt. No. 954.

On January 31, 2024, counsel for Mr. Herrera and Ms. Lopez withdrew from representation. Dkt. Nos 1293, 1295; Text Order dated January 31, 2024.

Ms. Lopez is currently proceeding *pro se*.

### D.    The Contempt Motion

On March 19, 2024 Gilead filed the instant Contempt Motion, styled as a "Motion for Order to Show Cause for Contempt as to Yisel Lopez," seeking "an order finding Ms. Lopez in contempt [of the Asset Freeze Order dated August 11, 2022] and requiring her to take steps to minimize the harm caused by her knowing violation of this Court's orders." *See* Dkt. No. 1327-1329. In its memorandum of law in support of its contempt motion, Gilead asserts it has learned from third-party discovery that Ms. Lopez entered into a contract for the sale of a property subject

to the Asset Freeze Order. Dkt. No. 1328, at 4. Gilead seeks an order ensuring that Ms. Lopez is not able to dissipate the proceeds of this sale—along with additional relief "to address her prior violations of the Asset Freeze Order." *Id.* Specifically, Gilead alleges that three violations of the Asset Freeze Order have occurred: (i) the sale of a Miami property by Ms. Lopez, (ii) the mortgaging of her primary residence in Broward County, Florida, and (iii) contracting for the sale of her primary residence in Broward County, Florida. *Id.*

## II.    **LEGAL STANDARDS**

It is well established that "'[t]he power to punish for contempt is inherent in all courts.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quoting *Ex parte Robinson*, 19 Wall. 505, 510, 22 L.Ed. 205 (1873)); *see also People v. Terry*, 45 F.3d 17, 23 (2d Cir. 1995) (noting that the power of contempt is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (citations omitted). "The underlying concern is disobedience to the orders of the [j]udiciary, not merely the disruption of court proceedings." *Hunter TBA, Inc. v. Triple V Sales*, 250 F.R.D. 116, 118-19 (E.D.N.Y. 2008) (Glasser, J.) (cleaned up).

"A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 128 (2d Cir. 2021) (citing 18 U.S.C. § 401, 401(3)); *Ahamed v. 563 Manhattan Inc.*, No. 19-CV-6388 (EK) (CLP), 2023 WL 4986364, at *4 (E.D.N.Y. July 6, 2023), *report and recommendation adopted in part*, 2023 WL 6283280 (E.D.N.Y. Sept. 26, 2023) ("It is well-settled that federal courts have inherent power to punish contempt."). "To demonstrate [contempt], 'a movant must establish that (1) the order the contemnor failed to comply with is clear and

unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 (2d Cir. 2014) (quoting *Perez v. Danbury Hosp.*, 347 F.3d 419, 423–24 (2d Cir. 2003)).  "It is peculiarly within the province of the district court to determine the meaning of its own order," *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995) (cleaned up), so the district court is best positioned to determine whether the "potent weapon" of contempt is the best means of enforcing that order." *Int'l Longshoremen's Ass'n Loc. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967).  "It is not necessary for the moving party to show that the violating party disobeyed the court's order willfully." *Sportco, Inc. v. TRT Tactical, LLC*, No. 14-CV-6044 (JG) (GRB), 2015 WL 3915618, at *1 (E.D.N.Y. June 25, 2015) (citation omitted).

## III.  DISCUSSION

The undersigned respectfully recommends a finding that Ms. Lopez violated the clear and unambiguous terms of the Asset Freeze Order by causing (i) the sale of a Miami property, (ii) the mortgaging of her primary residence in Broward County, Florida, and (iii) contracting for the sale of her primary residence in Broward Country, Florida.  In reaching its conclusion, this Court will review the terms of the Asset Freeze Order and evaluate whether Gilead has shown a *prima facie* case of contempt.

### A.    The Terms of the Asset Freeze Order

By its terms, the Asset Freeze Order entered by Judge Donnelly on August 11, 2022 establishes the scope and applicability of the Order upon the Asset Restrained Defendants pursuant to the Court's authority under the Lanham Act.

Paragraph 1 of the Asset Freeze Order identified Ms. Lopez, among others, as an Asset Restrained Defendant.  Dkt. No. 626, at ¶ 1.

8

Paragraph 2 of the Asset Freeze Order states that "[t]he Asset Restrained Defendants shall be restrained from secreting any assets and from transferring or conveying any assets." *Id.* at ¶ 2.

Paragraph 3 of the Asset Freeze Order states that: "[t]he Asset Restrained Defendants shall be restrained from transferring, selling, mortgaging, encumbering, or otherwise impairing any ownership or other legal interest they may have in any real property." *Id.* at ¶ 3.

Paragraph 6 of the Asset Freeze Order states that: "[a]ll assets held by, for, or on account of any Asset Restrained Defendant, and the balance of any account for which any of them has signature authority, shall be frozen and restrained, and any bank, brokerage house or financial institution holding such funds is restrained." *Id.* at ¶ 6.

Paragraph 11 of the Asset Freeze Order states that: "[t]he Restrained Parties are hereby put on notice that failure to file an opposition shall result in the immediate conversion of this Order into a preliminary injunction which shall be deemed to take effect immediately and shall extend during the pendency of this action. The Restrained Parties shall be deemed to have actual notice of the issuance and terms of such preliminary injunction, and that any act by any of the Restrained Parties in violation of any of its terms may be considered and prosecuted as contempt of this Court." *Id.* at ¶ 11.

On March 1, 2023, the parties stipulated—and the Court agreed—to convert the Asset Freeze Order into a preliminary injunction.  Dkt. Nos. 952, 954.

### B.    *Prima Facie* **Case of Contempt**

 The undersigned respectfully recommends a finding that Ms. Lopez violated the clear and unambiguous terms of the Asset Freeze Order by causing (i) the sale of a Miami property, (ii) the mortgaging of her primary residence in Broward County, Florida, and (iii) contracting for the sale of her primary residence in Broward Country, Florida.

### 1.    The Miami Property

On or about December 1, 2019, a Limited Liability Company ("LLC") was formed under Florida Law named "6490 LLC."  Dkt. No. 1329-4 (Articles of Organization of 6490 LLC).  The LLC's Articles of Organization, in its Article II, lists the street address of the LLC's principal office as 6490 S.W. 31 Street, Miami, FL, 33155.  *Id.* at 1.  The same Article lists the mailing address of 6490 LLC as 6470 SW 31 Street, Miami, FL, 33155.  *Id.*  Articles III and IV of 6490 LLC's Articles of Incorporation list Ms. Lopez as both the Registered Agent and sole manager of the LLC.  *Id.* at 1-2.  Ms. Lopez's address, as noted in Article IV, was listed as 6470 SW 31 Street, Miami, FL, 33155—which is the same mailing address as 6490 LLC.  *Id.*  Ms. Lopez signed the Articles of Incorporation on December 1, 2019—as "member or authorized representative"—under penalty of felony as provided by Florida law.  *Id.* at 2.  The Articles of Incorporation were subsequently filed on with Florida's Secretary of State on December 6, 2019.  *Id.*

On February 21, 2020, a Limited Liability Company Affidavit—prepared by counsel—was executed for the benefit of Ms. Lopez.  Dkt. No. 1329-5 (Limited Liability Company Affidavit).  The Affidavit affirmed, as outlined above, that Ms. Lopez is the "sole member and sole Manager of 6490 LLC" which was "filed with the Florida Department of State of December 6, 2019.  *Id.* at 1; *see also* Dkt. No. 1329-4.  The Affidavit noted that 6490 LLC is the owner of real property location at 6490 S.W. 31 Street, Miami, Florida, 33155 (hereinafter, the "Miami Property").  *Id.*; Dkt. No. 1328, at 7.  The Affidavit also noted that Ms. Lopez is authorized to "execute any instrument affecting the [Miami Property] of behalf of the LLC."  *Id.*  On the same day, a Warranty Deed—executed between non-parties and 6490 LLC—granted 6490 LLC with interest in the Miami Property.  *Compare* Dkt. No. 1329-6 (Warranting Deed Identifying Parcel

Comprising the Miami Property) and Dkt. No. 1329-5 (Limited Liability Company Affidavit Identifying Parcel Comprising the Miami Property).

Put simply, Ms. Lopez—as outlined by the documents produced by Gilead—exercised control over 6490 LLC, an artificial entity serving as owner of the Miami Property located at 6490 SW 31 Street, Miami, FL, 33155 as early as February 21, 2020. *See* Dkt. No. 1328, at 7.

On April 27, 2023, a "Residential Contract for Sale and Purchase"—as amended on May 7, 2023—was executed between 6490 LLC as Seller and non-parties as Buyers of real property located at 6490 SW 31 Street, Miami, FL, 33155. Dkt. No. 1329-11 (Sale Contract for the Miami Property). The Sale Contract reflected a purchase price of $542,500.00. *Id.* at 1. The Sale Contract was signed by Ms. Lopez on behalf of 6490 LLC on May 8, 2023. *Id.* The Sale Contract represented that the transaction was "a cash transaction with no financing contingency." *Id.* at 3.

Ms. Lopez's own sworn testimony does not contradict the facts outlined above as to the Miami Property. During a deposition held on October 20, 2023, Ms. Lopez was asked: "Did you recently sell your house at 6490 Southwest 31st Street?" Dkt. No. 1329-1, at 59:15-16 (Deposition Transcript Excerpt). Ms. Lopez responded: "Correct." *Id.* at 59:17.

As to the proceeds of the sale of the Miami Property, Gilead asserts that it has elicited sworn testimony from Ms. Lopez that the "majority of the funds from the sale of the Miami Property went to repay the mortgage on the property, with approximately $35,000 to $40,000 left over." Dkt. No. 1328, at 9. Gilead has represented, upon review of the "documentary record," that Ms. Lopez received exactly $35,796.01 following the payoff of the mortgage on the Miami Property. *Id.*

In its Contempt Motion, Gilead argues that the sale of the Miami Property is a violation of the Asset Freeze Order. Dkt. No. 1328, at 9. Ms. Lopez disagrees and asserts that the Miami

11

Property was owned by a LLC—specifically 6490 LLC—and was not covered by the terms of the Asset Freeze Order.  Dkt. No. 1340.  Ms. Lopez notes that "[t]he asset freeze order states that I am not allowed to commit certain acts, it does not order the LLC's not to do them."  *Id.* at 2.  In *arguendo*, Ms. Lopez asserts that a finding of contempt would only be appropriate if she were to sell the LLC.  *Id.* at 3.  But since the LLC itself was not sold, Ms. Lopez argues the Asset Freeze Order is not implicated so "the Court should not hold [Ms. Lopez] in contempt for violating portions of an order that are not there [sic] and should not extend the [Asset Freeze Order] to mean anything that the sophisticated plaintiff [Gilead] expressly left out of it."  *Id.*  Ms. Lopez's argument is premised on the fact that her only legal interest is in the LLC itself—not the underlying real property owned by the LLC.

But, as outlined below, Ms. Lopez's arguments are without merit.

### i.    The Terms of the Asset Freeze Order are Clear and Unambiguous

"An injunction is sufficiently clear and unambiguous if it leaves 'no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden.'"  *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (quoting *Drywall Tapers & Pointers v. Local 530*, 889 F.2d 389, 395 (2d Cir. 1989)).  "Thus, unless the parties can ascertain from the four corners of the order precisely what acts are forbidden, the order cannot form the basis for contempt." *Gucci Am.*, 768 F.3d at 143  (cleaned up); *see also GMA Accessories, Inc. v. Eminent, Inc.*, No. 07-CV-3219 (LTS), 2008 WL 2355826, at *3 (S.D.N.Y. May 29, 2008) ("For an injunction to be 'clear and unambiguous' in this context, it need only be 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'").

The terms of the Asset Freeze Order (Dkt. No. 627), later converted to a preliminary injunction (Dkt. No. 952, at ¶ 6), are clear and unambiguous.  The Asset Freeze Order clearly

identified Ms. Lopez as an Asset Restrained Defendant subject to the terms of the Order.  Dkt. No. 627, at ¶ 1.  Paragraph 2 and 3 of the Asset Freeze Order prohibited, or restrained, Ms. Lopez from "transferring or conveying any assets" (*Id.* at ¶ 2) and from "transferring, selling, . . . or otherwise impairing any ownership or other legal interest [she] may have in any real property."  *Id.* at ¶ 3.

### ii.  Gilead Has Asserted Clear and Convincing Evidence of Violations

It is undisputed that Ms. Lopez sold the Miami Property.  *See* Dkt. No. 1329-11 (Sale Contract for the Miami Property reflecting Ms. Lopez's signature); Dkt. No. 1329-1, at 59:15-17 (representing, via sworn testimony, that the Miami Property was sold); Dkt. No. 1346, at 22:8-25 (representing to this Court, during an April 1, 2024 status conference, that the Miami Property was sold).  Indeed, Ms. Lopez effectively concedes that the Miami Property was sold.  Yet, Ms. Lopez argues that she cannot be held in contempt for violating the Asset Freeze Order by selling the Miami Property because the Miami Property was owned and sold by a LLC.  Dkt. No. 1341, at 2-3.  This Court rejects Ms. Lopez's argument.

"It is of course true that courts cannot enjoin the entire universe of potential violators of its orders."  *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010).  Indeed, those who are acting independently of the enjoined party and whose own rights have not been adjudged cannot be bound by an injunction.  *Id.* (citing *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 13-14 (1945)).  But third parties "who are in active concert or participation" with the enjoined parties can themselves be enjoined.  *Id.*  (citing Fed. R. Civ. P. 65(d)(2)).  Rule 65(d)(2) thus "gives force to injunctions and prevents parties from violating them by proxy.  *Id.*  Therefore, "[D]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."  *Regal Knitwear*, 324 U.S. at 14; *N. Atl. Operating Co. v. Evergreen Distributors, LLC*, No. 13-CV-4974 (ERK) (VMS), 2013 WL 5603596, at *2 (E.D.N.Y.

Oct. 11, 2013) (adopting report and recommendation enjoining third parties in an action brought under the Lanham Act); *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826 (CBA)(LB), 2019 WL 6211373, at *5 (E.D.N.Y. Nov. 21, 2019) (finding that Fed. R. Civ. P. 65(d)(2)(C) prevents enjoined defendants from assisting third parties in engaging in activities "that would violate the injunction without themselves running afoul of the injunction."). This Circuit has also found that third parties who reside outside of the territorial jurisdiction of a district court may themselves be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. *Eli Lilly,* 617 F.3d at 195 (citing *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir.1985)).

In light of the reach and applicability of the Asset Freeze Order's injunction to 6490 LLC, Ms. Lopez's argument fails. This Court finds that 6490 LLC was a corporate entity used by Ms. Lopez to aid and abet violations of the Asset Freeze Order by owning and later selling the Miami Property—the latter being a prohibited act. Ms. Lopez was the "sole member and sole Manager of 6490 LLC." *See* Dkt. No. 1328, at 7; 1329-4. It is undisputed that Ms. Lopez caused 6490 LLC to initiate and effectuate the sale of the Miami Property. *See* Dkt. No. 1329-11 (Sale Contract for the Miami Property bearing Ms. Lopez's signature on behalf of 6490 LLC); Dkt. No. 1329-1, at 59:15-16 (Testimony by Ms. Lopez confirming the sale of the Miami Property).

In short, the thrust of Fed. R. Civ. P. 65(d)(2)(C) covers the exact scenario manufactured by Ms. Lopez and rejects Ms. Lopez's contention that 6490 LLC must have also been explicitly bound by the Asset Freeze Order. Indeed, *Regal Knitwear* indicates that the binding effect of an order does not depend on the insertion of conclusory words such as "successors and assigns." 324 U.S. at 14; *see also* 11A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2956 (3d ed. 2020). Rather, the Court must look to the actual relationship between the persons

enjoined and the third party, and if the relationship qualifies as one of those listed in Rule 65(d), third persons will be bound by the injunction whether or not the order specifically refers to successors and assigns. *Id*.; *People of State of N.Y. by Vacco v. Operation Rescue Nat.*, 80 F.3d 64 (2d Cir. 1996) ("Where successors and assigns are in active concert or participation with a defendant or respondent in the violation of an order, or are instrumentalities through which the defendant or respondent seeks to evade an order, they are brought within the scope of contempt proceedings by Rule 65(d).").

Further, Ms. Lopez is substantially intertwined with 6490 LLC because Ms. Lopez exercises considerable control—if not sole control—over 6490 LLC's operations. As sole member and manager, Ms. Lopez entered into agreements on the LLC's behalf and exercised control over the disbursement of the LLC's funds—whether used to repay the mortgage owned by the LLC (Dkt. No. 1328, at 9) or Ms. Lopez's own attorneys' fees (Dkt. No. 1346, at 17:4-20). "Courts in this Circuit have found 'active concert' between non-parties and already-enjoined parties in cases where an enjoined party is substantially intertwined with a non-party, including the shared occupation of office space, payment of employee expenses between the non-party and enjoined party, considerable control by the enjoined party over the non-party's operations, and other substantial interconnections . . . ." *John Wiley & Sons, Inc. v. Book Dog Books*, LLC, 327 F. Supp. 3d 606, 638 (S.D.N.Y. 2018) (quoting *In re Sledziejowski*, 533 B.R. 408, 424 (Bankr. S.D.N.Y. 2015)).

Finally, 6490 LLC had actual notice of the Asset Freeze Order. First, Gilead's Fourth Amended Complaint alleged that Ms. Lopez owns—as principal—two limited liability companies whose assets include Mr. Herrera's home and "Mr. Herrera's mother's home." *Id.* at ¶¶ 250, 648. Next, where (i) Florida Law allows limited liability companies to be served through their registered

agents (Fla. Stat. Ann. § 48.062), (ii) Ms. Lopez served as a registered agent to 6490 LLC (Dkt. No. 1329-4), and (iii) Ms. Lopez was personally served with the Asset Freeze Order by Gilead (Dkt. No. 717),  6490 LLC had actual notice of the applicability of the Asset Freeze Order to its activities.  *See also Abbott Lab'ys*, 2019 WL 6211373, at \*5  (finding that Fed. R. Civ. P. 65(d)(2)(C) prevents enjoined defendants from assisting others in engaging in activities "that would violate the injunction without themselves running afoul of the injunction.").  Although 6490 LLC is a Florida LLC, 6490 LLC is still subject to jurisdiction in this District by actively aiding and abetting Ms. Lopez in violating the Asset Freeze Order despite receiving actual notice of the Court's order.  *Eli Lilly*, 617 F.3d 186, 195 (citing *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir.1985)).  And, as Gilead notes in their supplemental briefing (Dkt. No. 1463), in both New York and Florida, limited liability companies may be served via their registered agent.  See Fla. Stat. Ann. § 48.062 (2) and N.Y. LLC Law § 302(a).

Accordingly, this Court finds that Gilead has established that the proof of Ms. Lopez's noncompliance is clear and convincing.  This Court proceeds to determine whether Ms. Lopez made a showing of diligent compliance.

### iii.    Ms. Lopez Failed to Make a Showing of Diligent Compliance

"Reasonable diligence, at the very least, requires a party to develop reasonably effective methods of compliance." *Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351 (VEC), 2020 WL 1900502, at \*8 (S.D.N.Y. Apr. 17, 2020) (cleaned up).  "A party does not act with reasonable diligence in obeying a court order if it 'complied reluctantly' or 'after a contempt motion had been filed.'" *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-449 (HG)(LGD), 2022 WL 4357410, at \*3 (E.D.N.Y. Sept. 20, 2022) (quoting *E.E.O.C. v. Local 638*, 81 F.3d 1162, 1176 (2d Cir. 1996)).

Here, the record shows that Ms. Lopez has not diligently attempted, in a reasonable manner, to comply with the Asset Freeze Order. As noted *supra* in Section III.B.1.ii, Ms. Lopez may not shield herself from contempt liability by causing a LLC—of whom she is the sole owner, member, and manager—to engage in prohibited acts on her behalf. Despite Ms. Lopez's awareness of the terms of the Asset Freeze Order as applied to her (Dkt. No. 1328, at 10), Ms. Lopez caused the Miami Property to be sold in express violation of Paragraphs 2 and 3 of the Asset Freeze Order. Dkt. No. 627, at ¶¶ 2-3.

Ms. Lopez's proffered rationale—to remit payment for outstanding attorneys' fees (Dkt. No. 1346, at 14:4-20)—misses the mark. The Asset Freeze Order, in its current form, does not provide for a release for the purpose of covering attorneys' fees. Indeed, the parties have previously been able to bargain for a modification of the Asset Freeze Order when other financial constraints arose. *See, e.g.,* Dkt. No. 952. Further, Ms. Lopez was represented by counsel at the time of the sale of the Miami Property in May 2023. *See* Dkt. No. 863 (Notice of Appearance of Roman Leonov as counsel to Armando Herrera and Yisel Lopez dated November 26, 2022); Text Order dated January 31, 2024 (granting motion to withdraw as counsel to Armando Herrera and Yisel Lopez).

Therefore, Ms. Lopez does not have the benefit of asserting a lack of awareness of the plain terms of the Asset Freeze Order as applied to her and the restrictions contained therein. Simply put, Ms. Lopez has failed to make a showing of reasonable diligence in attempting to comply with the terms of the Asset Freeze Order. *See Cricut, Inc. v. APA Tech. Co.*, 698 F. Supp. 3d 538, 548 (E.D.N.Y. 2023) (finding a failure to diligently comply where "the Defendants appear to take 'a reactive approach towards compliance' that required 'prompting from Plaintiff.') (citing *Aquavit*

*Pharms.*, 2020 WL 1900502, at *9).  This Court thus finds that Ms. Lopez failed to diligently comply with the clear and unambiguous terms of the Asset Freeze Order.

Accordingly, the undersigned respectfully recommends that Ms. Lopez be found liable and held in contempt of the Court's Asset Freeze Order and injunction by causing the sale of the Miami Property on or about May 8, 2023.

### 2.    The Broward Property

In its Contempt Motion, Gilead also argues that Ms. Lopez has violated those terms of the Asset Freeze Order by (i) mortgaging her primary residence in Broward County, Florida, and (ii) contracting for the sale of the property.  As outlined below, this Court agrees and respectfully recommends that Ms. Lopez also be held in contempt for these violations of the Court's Asset Freeze Order.

On or about July 24, 2020, a LLC was formed under Florida Law named "660 Enclave LLC."  Dkt. No. 1329-7 (Articles of Organization of 660 Enclave LLC).  The LLC's Articles of Organization, in its Article II, lists the street address of the LLC's principal office as 660 Enclave Circle West, Pembroke Pines, FL, 33027.  *Id.* at 1.  The same Article lists the mailing address of 660 Enclave LLC as 6470 SW 31 Street, Miami, FL, 33155.  *Id.*  Articles III and IV of 660 Enclave LLC's Articles of Incorporation lists Ms. Lopez as both the Registered Agent and sole manager of the LLC.  *Id.*  at 1-2.  Ms. Lopez's address, as noted in Article IV, was listed as 6470 SW 31 Street, Miami, FL, 33155—which is the same mailing address as 660 Enclave LLC.  *Id.*  Ms. Lopez signed the Articles of Incorporation on July 24, 2020—as "member or authorized representative"—under penalty of felony as provided by Florida law.  *Id.* at 2.  The Articles of Incorporation were subsequently filed on with Florida's Secretary of State on July 27, 2020.  *Id.*

On or about September 30, 2020, a Warranty Deed was executed by a non-party in favor of 660 Enclave LLC for interest in the real property located at 660 Enclave Circle West, Pembroke Pines, FL, 33027 (the "Broward Property").

At bottom, Ms. Lopez—as outlined by the documents produced by Gilead—exercised control over 660 Enclave LLC, an artificial entity serving as owner of the Broward Property located at 660 Enclave Circle West, Pembroke Pines, FL, 33027 as early as September 30, 2020. *See* Dkt. No. 1328, at 7.

On or about October 13, 2020, a Mortgage, Assignment of Leases and Rent, and Security Agreement was executed by and among 660 Enclave LLC and two non-parties in the amount of $520,000.00. Dkt. No. 1329-15; *see also* Dkt. No. 1329-8. As Gilead notes, this Mortgage Agreement was executed and encumbered the property prior to the entry of the August 11, 2022 Asset Freeze Order. Dkt. No. 1328, at 10. The Mortgage Agreement was signed by Ms. Lopez on behalf of 660 Enclave LLC of which she is the sole member. Dkt. No. 1329-15, at 10.[3]

But, on February 23, 2023, a second Mortgage and Security Agreement was executed by and among 660 Enclave LLC and a non-party in the amount of $750,000.00 concerning the Broward Property. Dkt. No. 1329-16, at 1-2, 19. This second Mortgage Agreement was also signed by Ms. Lopez on behalf of 660 Enclave LLC. *Id.* at 18.

On March 19, 2024, Gilead—in its Contempt Motion—noted that, as a matter of urgency, it had learned that Ms. Lopez was preparing to "sell the Broward property in further gross violation of the Asset Freeze Order." Dkt. No. 1328, at 10. Gilead asserted that it received paperwork "from the agency representing Ms. Lopez" representing that Ms. Lopez has contracted with a non-party to "sell the Broward Property for $1.4 million." *Id.* The sale of the Broward Property, from

---

[3] The Court also notes that an individual named Armando Herrera served as a witness to the execution of the Mortgage Agreement. Dkt. No. 1329-15, at 10.

Gilead's understanding, was scheduled to close on April 3, 2024.  *Id.*  Gilead sought to restrain the sale of the property because "if not immediately restrained, Ms. Lopez will dissipate the proceeds of the sale of the Broward Property in further violation of the Asset Freeze Order, thereby irreparably prejudicing Gilead."  *Id.*

On March 22, 2024, Gilead's Contempt Motion was referred to the undersigned by Judge Donnelly.  On March 28, 2024, Ms. Lopez filed her Opposition to Gilead's Contempt Motion arguing, *inter alia*, Gilead's request for a finding of contempt as to the sale of the Broward Property is premature as "the 660 property was not even sold yet" so she cannot be "held in contempt of an order preventing an action before such actions takes place[.]" *Id*. at 3.  The undersigned notes that Ms. Lopez's letter, while filed on March 28, 2024, was dated March 20, 2024.  *Id.* at 4.

On April 1, 2024, the undersigned held a telephonic conference where counsel for Gilead and Ms. Lopez appeared to discuss Gilead's Contempt Motion and the sale of the Broward Property—a transaction that, according to Gilead's application, was scheduled to close on April 3, 2024.  *See* Dkt. No. 1336; Minute Entry dated April 1, 2024.

During the conference, the undersigned asked Ms. Lopez to confirm whether the sale of the Broward Property was still expected to close on April 3, 2024.  Dkt. No. 1346, at 4:5-9 (Conference Transcript).  Ms. Lopez responded that the Broward Property had *already* been sold on March 28, 2024.  *Id.* at 4:10-11; 5:1-7.  The undersigned expressed concern that, based on Gilead's own affidavit of service of its Contempt Motion (Dkt. No. 1331) and the Court's subsequent Scheduling Order (Dkt. Nos. 1336, 1343), Ms. Lopez was clearly on notice that the sale would be contested by Gilead.  *Id.* at 11:8-16.

Ms. Lopez explained, in response, that the buyer expressed an interest in closing on the Broward Property earlier and—where a title search did not reveal a prohibition on selling the

property—she agreed to advance the closing date. *Id.* at 11:19-25, 12:1-17. As to the proceeds from the sale of the Broward Property, Ms. Lopez represented that the LLC—660 Enclave LLC—received "1.4 million." *Id.* at 12:13-16. But, after paying off "two loans on the house," Ms. Lopez represented that the 660 Enclave LLC was left with approximately $13,000.00. *Id.* at 13:18-25; 14:1-5.

During the conference, this Court also noted that Ms. Lopez's representations weighed in favor of Gilead supplementing its Contempt Motion. *Id.* at 27:20-25; 28:1-4. The Court granted Gilead leave to engage in limited discovery in support of its Contempt Motion. *See* Minute Entry and Order dated April 1, 2024. Following the conclusion of the limited discovery period, Gilead filed a Supplement Memorandum of Law in Support of its pending Contempt Motion on June 5, 2024. Dkt. No. 1375 (Supplemental Briefing).

Gilead's Supplemental Briefing argues that Ms. Lopez's representations at the April 1, 2024 conference were "a knowing lie, expressly made under penalty of perjury, meant to deceive Gilead and this Court." *Id.* at 2. Gilead asserts that Ms. Lopez—aware of Gilead's Contempt Motion—rushed the sale of the Broward Property. *Id.* at 1. Gilead further argues that the sale of the Broward Property was completed before Ms. Lopez served a Declaration affirming that the Broward Property had not yet been sold—constituting what Gilead deems a false statement. *Id.* at 4. Gilead represents that Ms. Lopez had received proceeds from the sale on March 27, 2024 via a new bank account opened at Truist Bank. *Id.*; *see also* Dkt. No. 1375. But, as Gilead's Supplemental Briefing outlines, the proceeds from the sale of the Broward Property had largely been dissipated by the time the parties convened for a conference on April 1, 2024.

In its Contempt Motion, Gilead argues that two occurrences related to the Broward Property violated the terms of the Asset Freeze Order. First, the encumbrance on the Broward

Property created by the execution of the second Mortgage Agreement violated Paragraph 3 of the Asset Freeze Order.  Dkt. No. 1328, at 10; *cf.* Dkt. No. 627, at ¶ 3 ("The Asset Restrained Defendants shall be restrained from transferring, selling, mortgaging, encumbering, or otherwise impairing any ownership or other legal interest they may have in any real property.").  Second, the subsequent sale of the Broward Property in March 2023 violated the terms of the Asset Freeze Order.  Dkt. No. 1328, at 10; Dkt. No. 1375, at 6.

This Court finds that its earlier analysis—as applied to the sale of the Miami Property—is largely applicable to Ms. Lopez's encumbrance and subsequent sale of the Broward Property.  First the terms of the Asset Freeze Order (Dkt. No. 627), later converted to a preliminary injunction (Dkt. No. 952, at ¶ 6), are clear and unambiguous as to encumbrance and sale of assets.  *CBS Broad. Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) ("An injunction is sufficiently clear and unambiguous if it leaves 'no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden.'") (citations omitted).  The Asset Freeze Order clearly identified Ms. Lopez as an Asset Restrained Defendant subject to the terms of the Order.  Dkt. No. 627, at ¶ 1.  Paragraph 2 and 3 of the Asset Freeze Order prohibited, or restrained, Ms. Lopez from "transferring or conveying any assets" (*id*. at ¶ 2) and from "transferring, selling, *mortgaging, encumbering*, or otherwise impairing any ownership or other legal interest [she] may have in any real property."  *Id*. at ¶ 3 (emphasis added).

Despite the clear and unambiguous language of the Asset Freeze Order, a second Mortgage and Security Agreement was executed by and among 660 Enclave LLC and a non-party in the amount of $750,000.00 encumbering the Broward Property.  Dkt. No. 1329-16, at 1-2, 19.  This second Mortgage Agreement was signed by Ms. Lopez on behalf of 660 Enclave LLC.  *Id*. at 18.  Where a mortgage constitutes an encumbrance on a property (*21647 LLC v. Deutsche Bank Nat'l*

*Tr. Co. as Tr. for New Century Home Equity Loan Tr. 2005-3*, No. 22-2793, 2023 WL 7648624, at *3 (2d Cir. Nov. 15, 2023)), Ms. Lopez's execution of the second mortgage on February 23, 2023 violated Paragraph 3 of the Asset Freeze Order.  Further, Paragraphs 2 and 3 of the Asset Freeze Order restrained Ms. Lopez—and, as outlined *supra*, entities proxies acting actively in concert with Ms. Lopez—from "secreting," "transferring," and "selling" assets that she owns or has a legal interest in.  Dkt. No. 627 at ¶¶2-3; *People of State of N.Y. by Vacco v. Operation Rescue Nat.*, 80 F.3d 64 (2d Cir. 1996) ("Where successors and assigns are in active concert or participation with a defendant or respondent in the violation of an order, or are instrumentalities through which the defendant or respondent seeks to evade an order, they are brought within the scope of contempt proceedings by Rule 65(d).").  But Ms. Lopez represented to the undersigned, on April 1, 2024, that the Broward Property was sold on or about March 28, 2024.  *See* Dkt No. 1346, at 5:1-7; *see also* Dkt. No. 1375 at 2 (supplemental brief by Gilead asserting, *inter alia*, that contempt discovery has revealed that Ms. Lopez has likely intentionally misrepresented that date of sale to the undersigned).

This Court need not address whether Ms. Lopez intentionally lied to the Court at the April 1, 2024 conference because, regardless of disagreements as to the exact date of sale of the Broward Property, the Broward Property was unquestionably sold following the entry of the Asset Freeze Order.  Therefore, the clear and unambiguous terms of the Asset Freeze Order were violated by Ms. Lopez when she (i) mortgaged her primary residence in Broward County, Florida, and (ii) contracted for the sale of the property.  As with the Miami Property (and likely in a more flagrant manner), Ms. Lopez has failed to make a showing of diligent compliance.  This failure is further exacerbated by the fact that Ms. Lopez appears to have hastened the sale of the Broward Property

upon notice of this Court's hearing on Gilead's Contempt Motion—a flagrant violation of the Court's orders.

Accordingly, the undersigned respectfully recommends that Ms. Lopez be found in liable for contempt of the August 11, 2022 Asset Freeze Order.

## IV.  **RECOMMENDED PENALTIES**

Should this Court's Report and Recommendation be adopted as to liability, the undersigned recommends remedial penalties be imposed to secure future compliance with court orders and restore the original purpose of the Asset Freeze Order.  *See S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 146 (2d Cir. 2010) ("[c]ivil contempt sanctions may serve 'dual purposes': securing 'future compliance with court orders' and 'compensa[ting] the party that has been wronged'") (quoting *Paramedics Electromedicina Comercial, Limitada v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004) (alteration in original)); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd..*, 885 F.2d 1, 5 (2d Cir.1989) ("[civil contempt sanctions are] remedial and compensatory, not punitive."); *Int'l Bus. Mach. Corp. v. United States*, 493 F.2d 112, 115 (2d Cir. 1973) ("The hallmark of civil contempt is that the sanction imposed is only contingent and coercive.").

Further, in the interest of fairness and consistency, this Court recommends that the penalties imposed remain consistent (in both scope and substance) with penalties imposed for violations of asset freeze orders in this instant action.  *See, e.g.*, Dkt. No. 547 (Contempt Order as to Defendants Venkata Srinivas Mannava and DSP Consulting Inc, Swetha Ketineni and Babashiloh Enterprises LLC).  But where applicable, the proposed penalties should be tailored to fit the individual circumstances arising out of the instant Contempt Motion.

In light of the foregoing, the undersigned respectfully recommends that penalties be imposed against Ms. Lopez for violations of this Court's Asset Freeze Order (Dkt. No. 627) as follows:

1.      Ms. Lopez should be ordered to deposit the sum of $400,596.01 into the Clerk of Court's escrow account.  This sum represents Gilead's estimations of the sums secreted and dissipated in violation of this Court's Asset Freeze Order.  *See* Dkt. No. 1375, at 6-7; Dkt. No. 1375-6; *compare* Dkt. No. 547 (ordering contempt defendants to deposit the sum of $3,320,000.00 into the Clerk of Court's escrow account—a sum representing the amount of money hidden and secreted in violation of an asset freeze order).

2.      Ms. Lopez should be ordered to file with the Court, no later than seven days from the date of issuance of contempt penalties, a submission via ECF describing her efforts to recover or raise funds in satisfaction or partial satisfaction of her obligation under paragraph 1 of this Order.  The submission shall consist of admissible evidence, such as an affidavit, declaration, and/or documentary evidence.  Following this initial submission, Ms. Lopez shall file a further submission with the Court via ECF every 14 days thereafter, until such time as her obligation under paragraph 1 of this Order is fulfilled or the Court orders otherwise.

3.      If Plaintiffs believe that Ms. Lopez is not fulfilling her obligations under to the contempt penalties, and the parties are not able to resolve the issue via the meet-and-confer process, Plaintiffs should be ordered to file a motion or order to show cause with the Court.  Ms. Lopez is warned that if she fails to comply with the Court's order she may be subject to additional sanctions, up to and including incarceration.[4]

---

[4]      It is well-established that incarceration may be imposed upon civil contemnors for egregious violations existing court orders. *See, e.g., Schwarz v. ThinkStrategy Cap. Mgmt. LLC,* No. 09 CIV.9346 (PAE), 2017 WL 5558682, at *1 (S.D.N.Y. May 9, 2017) (where a defendant was incarcerated for at least 22 months pursuant to the court's civil contempt finding).  Such recommendations (including referrals to

4.      In furtherance of the obligations set forth above, the Court's Asset Freeze Order should be modified as follows:

a.      Any bank, brokerage house, or financial institution holding frozen assets under the Asset Freeze Order shall continue to hold such assets except as set forth in this Order.

b.      Counsel for Gilead or Ms. Lopez may immediately serve this Order upon the banks, brokerage houses, or financial institutions identified in the subparagraphs below.

c.      Upon service of this Order upon Truist Bank, Truist Bank shall transfer the balance of the account ending in 2640 (account holder: 660 Enclave LLC; signatory: Yisel Lopez) to the Clerk of the Court pursuant to the instructions in subparagraphs d and e below.

d.      Within three business days of receipt of this Order, Truist Bank shall deposit the amount specified above into the United States District Court for the Eastern District of New York by check(s) made payable to "Clerk, U.S. District Court."  The check(s) shall state the caption and docket number of this case ("*Gilead Sciences, Inc. v. Safe Chain Solutions*, LLC, 21-CV-4106") and be sent, along with a copy of this Order, by FedEx Priority Overnight to "Brenna B. Mahoney, Clerk of Court, Theodore Roosevelt United States Courthouse, 225 Cadman Plaza East Brooklyn, NY 11201."

---

the United States Attorneys' Office or other appropriate authorities) may be issued by a magistrate judge in a report and recommendation—though the decision to issue such sanctions remains within the discretion of the district judge.  *See, e.g., Benthos Master Fund, Ltd. v. Etra*, No. 20-CV-3384 (VEC), 2023 WL 4350594, at *2-7 (S.D.N.Y. July 5, 2023).

The Clerk of Court shall notify the Court upon receiving and depositing the check(s).

e.    Immediately upon conveyance of such funds to the Clerk of Court, Truist Bank shall send a digital scan of the check(s) by electronic mail to counsel for Gilead Geoffrey Potter (CounterfeitGileadMedications@pbwt.com and gpotter@pbwt.com), counsel for Gilead, and Yisel Lopez (yisellopez87@yahoo.com); and shall send a copy of the check(s) to all judges assigned to this matter.

f.    The Order will remain in effect until further order of this Court directing disbursement of the funds deposited into the Registry Fund of the Treasury.

g.    Except to the extent inconsistent with this Order, the provisions of the Court's Asset Freeze Order shall remain in effect.

5.    All additional payments made by Ms. Lopez to the Clerk of the Court pursuant to this Order shall be made via check(s) made payable to "Clerk, U.S. District Court."  The check(s) shall state the caption and docket number of this case ("*Gilead Sciences, Inc. v. Safe Chain Solutions, LLC*, 21-CV-4106") and be sent, along with a copy of this Order, by FedEx Priority Overnight to "Brenna B. Mahoney, Clerk of Court, Theodore Roosevelt United States Courthouse, 225 Cadman Plaza East Brooklyn, NY 11201."  The Clerk of Court shall notify the Court upon receiving and depositing the check(s).  Immediately upon conveyance of any funds to the Clerk of Court, Ms. Lopez shall send a digital scan of the check(s) by electronic mail to Geoffrey Potter (CounterfeitGileadMedications@pbwt.com and gpotter@pbwt.com), counsel for Gilead, and shall send a copy of the check(s) to all judges assigned to this matter.

6.    The Clerk of the Court is directed to receive and deposit all funds received under this Order into an interest-bearing account, whereupon the funds will be enjoined and held in constructive trust under the custody and administration of the Court to secure and preserve the availability of the relief Plaintiffs seek (including the equitable remedies of disgorgement and restitution) until the final disposition of this action.  Pursuant to Local Civil Rule 67.1, the Clerk is directed to deduct from the income on the investment a fee consistent with that authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office.

## V.    CONCLUSION

In light of the foregoing, the undersigned finds that Gilead has sufficiently demonstrated Ms. Lopez's violations of the Asset Freeze Order.  Accordingly, the undersigned respectfully recommends that (i) Gilead's Contempt Motion be granted; (ii) Ms. Lopez be held in contempt for violating the Asset Freeze Order; and (iii) sanctions be imposed upon Ms. Lopez as outlined *supra* in Section IV.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiffs' counsel to serve a copy of this Report and Recommendation by email, overnight mail, and first-class mail to Ms. Lopez and to file proof of service on ECF by August 30, 2024 at the following addresses:

> YISEL LOPEZ
> 15853 SW 10 STREET
> PEMBROKE PINES, FL, 33027
> yisellopez87@yahoo.com

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Donnelly.  Failure to file objections within

this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:          Brooklyn, New York
                August 29, 2024                    **SO ORDERED.**

                                          ___*/s/ Joseph A. Marutollo*___
                                          JOSEPH A. MARUTOLLO
                                          United States Magistrate Judge