Patterson Belknap

www.pbwt.com

June 28, 2025

Timothy A. Waters
Partner
(212) 336-7601
twaters@pbwt.com

**By ECF**

Hon. Joseph A. Marutollo, U.S.M.J.
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: *Gilead, et al. v. Safe Chain, et al.*, No. 21-cv-4106 (AMD) (JAM)**

Dear Judge Marutollo:

Plaintiffs ("Gilead") write pursuant to Your Honor's June 17, 2025 order regarding Gilead's proposed default judgment motion. We sincerely apologize for the one-day delay in submitting this letter. Counsel erroneously believed this letter had been filed along with Gilead's several other submissions to this Court on Friday, and only belatedly realized it was left unfiled due to an administrative error.

First, attached are two appendices listing the parties against whom Gilead currently intends to move for default judgment. **Appendix A** lists all such "defaulting Defendants against whom certificates of default have been issued by the Clerk of the Court." **Appendix B** lists all such "defaulting Defendants against whom certificates of default have been requested but for which certificates of default have not been issued by the Clerk of the Court."[1]

Second, with regard to the timing of default judgment, Federal Rule of Civil Procedure 54(b) "leaves the decision of when to enter a final judgment entirely to the discretion of the trial court," requiring only that the Court find "there is no just reason for delay," a decision for which "there are no fixed criteria." *Bleecker v. Zetian Sys., Inc.*, No. 12-cv-2151 DLC, 2013 WL 5951162, at *7 (S.D.N.Y. Nov. 1, 2013). For the reasons stated below, Gilead respectfully submits the Court should find no just reason for delay and allow default judgments to move forward.

### A. There Is No Prohibition Against Deciding Default Judgment Now, Because No Defendants Are Jointly Liable

Initially, there is no applicable prohibition against deciding default judgments while claims remain pending against non-defaulted parties. Any such prohibition exists only in cases of true joint liability: where it would be legally impossible for Defendant A to be held liable and Defendant B to be held not liable. *Frow v. De La Vega*, 82 U.S. 552 (1872); *see, e.g.*, *Lemache*

---

[1] Gilead does not currently intend to move for default judgment against any Defendant falling into the third category listed in the June 17 Order ("all defaulting Defendants against whom no certificates of default have been requested or issued.")

*v. Tunnel Taxi Mgmt., LLC* , 354 F. Supp. 3d 149, 152-153 (E.D.N.Y. 2019) (collecting cases finding *Frow* is limited to instances of true joint liability). The Second Circuit has also cast doubt upon whether the *Frow* prohibition remains good law after the adoption of the modern Federal Rules: "We think it is most unlikely that *Frow* retains any force subsequent to the adoption of Rule 54(b). In any event, at most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others." *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746 n.4 (2d Cir. 1976). Here, there is no true joint liability among any of the Defendants, and so the *Frow* prohibition does not apply.

**B. There Is No Risk of Inconsistent Damages Awards, Because No Defaulted Defendant Is Jointly and Severally Liable With a Non-Defaulted Defendant**

In cases where defendants do not share true joint liability, but instead share joint and several liability, there is no question that the Court has discretion under Rule 54(b) to resolve default judgements while claims remain pending against active defendants. *See, e.g.*, *Lemache*, 354 F. Supp. 3d at 154 ("Courts in this Circuit have routinely declined to apply *Frow* in cases asserting joint and several liability, and proceeded to decide the default judgment motion while other parties are litigating."). That said, in such cases, courts have sometimes exercised their discretion to delay default judgments until after resolution of claims against the non-defaulted defendants, citing concerns about potentially inconsistent damages awards among jointly and severally liable defendants. *See id.* at 154-55.

In many cases, when two defendants are jointly and severally liable, it is expected that both defendants will face identical damages awards. For example, in *Lemache*, the plaintiff claimed he was owed unpaid wages on a joint-and-several basis from two entities that were both his employer for purposes of the Fair Labor Standards Act. *Id.* at 153-54. Because that plaintiff had a single claim for unpaid wages, if he proved his case, both entities should be jointly and severally liable for the same amount. *See id.* But because one of those entities had defaulted, the *Lemache* court was concerned that if default judgment was entered before trial, there could be "two awards of unpaid wages that are at odds, even though it would be based on the same work performed by [plaintiff]." *Id.*; *see also, e.g.*, *Gesualdi v. MMK Trucking, Inc.,* 09-cv-1484 SLT AKT, 2010 WL 3619569, at *5 (E.D.N.Y. Aug. 24, 2010) (finding risk of inconsistent damages and deferring default judgment "where the defaulting and non-defaulting Defendants may be held jointly and severally liable for the same damages"), *report and recommendation adopted*, 2010 WL 3619719 (E.D.N.Y. Sept. 9, 2010); *Harvey v. Home Savers Consulting Corp.*, No. 07-CV-2645, 2008 WL 724152, at *1 (E.D.N.Y. Mar. 17, 2008) ("Because defendants are alleged to have committed these acts together, they may be held jointly and severally liable for the same damages. Thus, deferring consideration of damages with respect to the defendants in default until after plaintiffs' contested claims are litigated will minimize the risk of inconsistent awards.").

Here, there is no risk of inconsistent damages awards. Neither of the two remaining non-defaulted Defendants, Brosius and Worldwide Pharma, is jointly-and-severally liable with any defaulted Defendant. Rather, Brosius and Worldwide Pharma are liable for their infringing sales, and each defaulted Defendant is liable for its own, separate infringing sales. Unlike in *Lemache*

and cases like it, Gilead is not seeking a unitary damages award, giving rise to a potential for inconsistent judgments. Rather, as set forth in its unrebutted damages report from its expert Dr. Gregory Bell, Gilead has asserted individualized damages claims against each Defendant, who sold different infringing products in different quantities.

To be clear, Brosius and Worldwide Pharma are jointly and severally liable with *each other*: a corporation is liable on a joint-and-several liability basis with its principal(s) that were the "active and moving force" behind the company's infringement. *E.g.*, *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 172 (E.D.N.Y. 2016). But that is not problematic, because both Brosius and Worldwide Pharma are active defendants (and the only active defendants left in the case), and so their liability will be determined at the same time at summary judgment or trial. The relevant question is whether any non-defaulted defendant is jointly and severally liable with any defaulted defendant. The answer to that question is no, and so there is no risk of inconsistent judgments.

### C. <u>The Equities Support Resolution of Default Judgment Now</u>

Finally, the equities support proceeding to default judgment at this time. Gilead will be prejudiced by a delay in deciding default judgments. The defaulted Defendants have counterfeited HIV medications or laundered the proceeds of that counterfeiting, and Gilead already demonstrated that the defaulted Defendants are at risk of secreting assets at the preliminary injunction phase. *See, e.g.*, *Int'l Gemmological Inst., Inc. v. Rafaeil,* No. 05-cv-2395 JGK JCF, 2005 WL 3880222, at *2 (S.D.N.Y. Aug. 17, 2005), *report and recommendation adopted*, 2006 WL 739822 (S.D.N.Y. Mar. 21, 2006) ("The plaintiff in this case has suffered a significant monetary injury. Postponing the inquest would delay—and perhaps jeopardize—its recovery since a plaintiff cannot begin to collect on a judgment until it is final. During the potentially protracted litigation against the non-defaulting defendants, the defaulting defendants would have ample opportunity to spend, secrete, or otherwise protect their ill-gotten gains. If they are successful in doing so, the delayed inquest could permanently prevent the plaintiff from being made whole."); *Bleecker*, 2013 WL 5951162 at *7 (holding "concerns about inconsistent rulings do not warrant delaying a determination as to damages" where defaulted defendants are at risk of secreting assets).

Respectfully submitted,

*/s/ Timothy A. Waters*

Timothy A. Waters

cc: All counsel of record (via ECF)