UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

GILEAD SCIENCES, INC., GILEAD SCIENCES IRELAND UC, and GILEAD SCIENCES LLC,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS LLC, *et al.*,

Defendants.
-------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

21-CV-4106
(Donnelly, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Currently pending before the Court, on a referral from the Honorable Ann M. Donnelly, United States District Judge, are (1) various motions brought by Defendant John Levitan[1] ("Levitan"), to wit: Levitan's "motion to dismiss, quash, vacate [*sic*] seizure order, set aside default, and for related relief" (Dkt. No. 1651); Levitan's "amended motion to vacate default, to dismiss, and to vacate [*sic*] seizure order" (Dkt. No. 1667); Levitan's motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) (Dkt. No. 1666); and Levitan's motion to appoint counsel (Dkt. No. 1653) (collectively, "Levitan's Motions"); and (2) a motion for default judgment brought by Plaintiffs Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead Sciences, LLC (together, "Gilead") (Dkt. Nos. 1662, 1663[2]). For the reasons set forth below, the undersigned respectfully recommends that Levitan's Motions be granted in part and denied in part. Also for the reasons set forth below, the undersigned respectfully recommends that Gilead's motion for default judgment be denied without prejudice to renewal.

---

[1] Defendant Levitan is named in the caption of the Sixth Amended Complaint as John Levitan. Defendant Levitan identified himself as John D. Levitan, Sr. in his filings. *See, e.g.*, Dkt. No. 1651.

[2] Dkt. No. 1663 is a sealed and unredacted version of Gilead's motion for default judgment.

# I. Background

## A. Factual Background Relevant to Levitan

The following facts are drawn from the allegations in the Sixth Amended Complaint (Dkt. No. 1644), documents deemed incorporated by reference (Dkt. Nos. 1644-1, -2, -3), and matters of which the Court may take judicial notice, such as the various opinions issued in this long-running litigation described below. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

As set forth in the Sixth Amended Complaint, Gilead develops and markets a large portfolio of lifesaving medications, including drugs for the treatment and prevention of HIV, and is the owner of certain well-established and famous registered trademarks that appear on the packaging, tablets, and package inserts of certain genuine HIV and other medications. Dkt. No. 1644 ¶¶ 4, 17. Exhibit A of the Sixth Amended Complaint depicts the complete list of these trademarks. Dkt. No. 1644-1.

As background, the Drug Supply Chain Security Act, 21 U.S.C. §§ 360eee *et seq.*, requires every sale or transfer of a prescription drug to be accompanied by a "pedigree"—consisting of the transaction history, transaction information, and transaction statement—showing the chain of all sales or transfers of that drug, going back to the manufacturer. Dkt. No. 1644 ¶ 224; *see also* 21 U.S.C. § 260eee-1(b)(1)(A); *Gilead Scis., Inc. v. Safe Chain Sols., LLC*, 684 F. Supp. 3d 51, 58 (E.D.N.Y. 2023) ("Each bottle of medication is accompanied by a pedigree—a record documenting the chain of all its sales or transfers going back to the manufacturer."); *Janssen Scis. Ir. Unlimited Co. v. TLC Xpress Pharmacy Inc.*, No. 22-CV-1983 (BMC), 2025 WL 974299, at *2 (E.D.N.Y. Apr. 1, 2025) ("A pedigree contains three pieces of information: the drug's chain of custody, or its 'transaction history'; the details of each sale, or its 'transaction information'; and a formal transfer of ownership, or a 'transaction statement.'" (first quoting 21 U.S.C. § 360eee(25)-

(27); and then citing 21 U.S.C. § 360eee-1)). For Gilead, the pedigrees are "anti-counterfeiting measures" and play "important internal quality-control functions." Dkt. No. 1644 ¶ 231.

In this case, Gilead alleges that Defendants, including Levitan, conspired to refill empty Gilead bottles with the wrong medication, seal the bottles with a counterfeit Gilead tamper-evident foil seal, and sell them to unsuspecting customers. *See id.* ¶¶ 220-23; *see also id.* ¶¶ 4-11 (summarizing a "large-scale, sophisticated counterfeiting conspiracy"). Gilead also alleges that the conspiracy sold other bottles that "contained Gilead medication, but had counterfeit patient information documents, counterfeit caps, and/or counterfeit pedigrees." *Id.* ¶ 220. Gilead alleges that "Defendants created and utilized fake pedigrees that fraudulently represented that the drugs could be traced back to an authentic sale from Gilead." *Id.* ¶ 226. Defendants allegedly sold the repurposed bottles with the falsified pedigrees. *Id.* ¶¶ 220, 222.

Levitan resides in Pensacola, Florida. Dkt. No. 1644 ¶ 106. Gilead alleges that Levitan "is responsible for tens of thousands of bottles of counterfeit Gilead-branded HIV medication being sold into the U.S. distribution stream." *Id.* ¶ 278. Levitan allegedly "managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication accompanied by counterfeit and fraudulent documentation." *Id.* ¶ 106. Levitan allegedly played a "central role in the counterfeiting conspiracy's complex money-laundering apparatus." *Id.* ¶ 280.

Specifically, Gilead alleges that Levitan "was the primary contact for [Defendant] Synergy Group Wholesaler LLC [('Synergy')] and its principal, Defendant Carlos Vega [('Vega')]; Gilead claims that Synergy and Vega in turn—under Levitan's direction— supplied "a large volume of

counterfeits to [Defendant Safe Chain Solutions LLC ('Safe Chain')], selling millions of dollars of Gilead-branded medications with clearly counterfeit pedigrees." *Id.* ¶¶ 281-82.

Gilead points to emails between Levitan and Synergy and Vega regarding Levitan's role in the purported widespread conspiracy. *Id.* ¶ 281. For example, in May of 2021, an "email concerning Synergy" states, "John [Levitan] is going to be involved with inventory and acquisition[.] Feel free to discuss things with him." *Id.* In the following month, Levitan emailed Vega, stating, "We are looking for [more] inventory and I wanted to speak to you, to lock in an agreement for future orders." *Id.* Under Levitan's direction, Gilead alleges Synergy supplied a large volume of counterfeits to Safe Chain. *Id.* ¶ 282.

Gilead further contends that Levitan managed the relationship of Defendant Invicta Wholesale Supply LLC ("Invicta")—another purported member of the conspiracy—and Defendant Safe Chain. *Id.* ¶ 283. On May 21, 2021, Invicta's owner, Defendant Jorge Caba ("Caba"), emailed Levitan and Defendant Adam Brosius, writing "Here is a copy of how the t3 [*i.e.*, the pedigree] is gonna look like. SafeChain address [*sic*] it not on the paper because I don't have it, but it will be there. Thank you for the opportunity." *Id.* On May 25, 2021, Caba sent a copy of "Invicta's state distribution license directly to Levitan." *Id.*

Gilead alleges that Safe Chain conspired with others to sell "counterfeit[ Gilead medication] to pharmacies in New York City." *Id.* ¶ 188. Further, Vega, on behalf of Synergy, travelled to New York to conduct the counterfeiting business. *Id.* Synergy transmitted "the majority of their counterfeiting revenues to New York entities for the purpose of laundering the proceeds in New York and/or purchasing counterfeits in New York." *Id.* Last, the Court has already held that Vega, while acting as Synergy's representative, is subject to the Court's specific jurisdiction because of his role in the sale of counterfeit HIV medication into New York and under

conspiracy jurisdiction. *Gilead Scis., Inc. v. Safe Chain Sols., LLC*, No. 21-CV-4106 (AMD) (RER), 2022 WL 22947596, at *6-9 (E.D.N.Y. Sep. 29, 2022).

Gilead brings claims of, *inter alia*, Lanham Act federal trademark infringement (*id.* ¶¶ 700-714); false description and designation of origin in commerce (*id.* ¶¶ 715-721); federal false advertising (*id.* ¶¶ 722-729); federal dilution of mark (*id.* ¶¶ 730-738); New York dilution of mark and injury to business reputation (*id.* ¶¶ 739-744); New York deceptive business practices (*id.* ¶¶ 745-748); common-law unfair competition (*id.* ¶¶ 749-753); and common-law unjust enrichment (*id.* ¶¶ 754-756) against Levitan.

**B. Procedural History Relevant to Levitan**

Gilead filed this action on July 22, 2021. *See* Dkt. No. 1. On August 11, 2022, the Court entered an Asset Freeze Order and a Seizure Order against certain defendants, including Levitan. *See* Dkt. Nos. 627, 629. On October 28, 2022, the Clerk of the Court entered a certificate of default against Levitan. *See* Dkt. No. 839.

On May 30, 2023, counsel appeared for Levitan for the limited purpose of challenging this Court's jurisdiction. *See* Dkt. Nos. 1102, 1113; *see also* Text Order, dated June 2, 2023. On July 27, 2023, Levitan, through counsel, moved to vacate the certificate of default.[3] *See* Dkt. No. 1150. Gilead opposed the motion. *See* Dkt. No. 1159. Levitan filed a reply. *See* Dkt. No. 1164. On August 10, 2023, the Court denied Levitan's motion without prejudice. *See* Dkt. No. 1169.

Following additional litigation,[4] on October 12, 2023, with Gilead's and Levitan's consent, the Court, *inter alia*, vacated the entry of default against Levitan; directed Levitan to comply with

---

[3] Levitan's motion was improperly filed as a motion to dismiss default judgment. *See* Dkt. No. 1150.

[4] As Gilead describes in its August 9, 2024 motion to reinstate the certificate of default,

> Judge Reyes held a conference to address this on October 10, 2023. *See* ECF Min. Entry

the Asset Freeze Order (Dkt. No. 627) and the Seizure Order (Dkt. No. 629) by November 10, 2023; directed Levitan to appear for a deposition by November 25, 2023; and directed Levitan to file an answer to the Complaint by December 11, 2023. *See* Text Order, dated Oct. 12, 2023; *see also* Text Order, dated Oct. 16, 2023.

On November 14, 2023, Levitan filed a letter indicating that he had filed for bankruptcy on November 10, 2023 in the United States Bankruptcy Court for the Southern District of Florida. *See* Dkt. No. 1217. Levitan's letter stated that the instant proceedings were stayed as to himself, and identified Levitan's separate bankruptcy counsel. *Id.* (citing 11 U.S.C. § 362).

On December 1, 2023, following Gilead's motion to compel discovery regarding Levitan's limited counsel (Dkt. No. 1207), the Court ordered Gilead's limited counsel to explain why he failed to appear at a scheduled discovery conference and to clarify the effect of the notice of bankruptcy. *See* Text Order, dated Dec. 1, 2023. Levitan's counsel responded on December 6, 2023, stating his position that, *inter alia*, his engagement as counsel for Levitan ended on October 12, 2023, the date that the Court vacated the certificate of default against Levitan. Dkt. No. 1237.

On December 7, 2023, the Court denied Gilead's motion to compel and noted that, under 11 U.S.C. § 362(a)(1), the filing of Levitan's bankruptcy petition automatically stayed the commencement or continuation of judicial proceedings against Levitan. *See* Dkt. No. 1241 at 4.[5]

---

> dated October 10, 2023. Gilead reiterated that it would consent to an agreement "under which [Levitan's] default would be vacated subject to the conditions that he make the disclosures . . . and appear for a deposition . . . and respond to [the] complaint" on a quick timeframe. ECF No. 1207-2 at 8:5-15. Judge Reyes proposed on the record that Levitan's default be lifted on the condition that he meet the following deadlines: "30 days for the asset freeze disclosures, 45 days for deposition, and 60 days to answer." *Id.* at 12:10-3. In so doing, Judge Reyes noted the importance of all this occurring before the fact-discovery cut-off of December 31, 2023. *See* ECF No. 1207-2 at 12:18-20. The next day, Levitan, through counsel, agreed to this proposal in writing. *See* ECF No. 1201.

Dkt. No. 1453 at 9.

[5] Page citations are to the ECF-stamped pages.

The Court also noted that Levitan's counsel remained on the docket as counsel for Levitan and he must comply with all Court orders until a motion to withdraw as counsel is granted. *Id.* at 8. Levitan's counsel moved to withdraw as counsel for Levitan on December 18, 2023 (Dkt. No. 1247), which the Court granted on the same day. *See* Text Order, dated Dec. 18, 2023.

On August 15, 2024, after several status updates regarding Levitan's bankruptcy proceeding (*see* Dkt. Nos. 1361, 1382, 1398), Gilead informed the Court that, "[o]n August 7, 2024, the bankruptcy court dismissed Levitan's bankruptcy with a two-year filing bar 'based on his knowing and willful failure to abide by orders of this Court, including but not limited to [orders compelling him to produce discovery], and his knowing and willful failure to file accurate schedules of his assets and liabilities.'" Dkt. No. 1461. Per Gilead, "[t]he bankruptcy court also directed Levitan to pay Gilead's counsel its fees and costs associated with Levitan's non-compliance with the court's orders." *Id.*

On August 9, 2024—two days after Levitan's bankruptcy proceeding was dismissed—Gilead moved to reinstate the certificate of default against Levitan. *See* Dkt. Nos. 1452-55. Gilead alleges that it served Levitan with the motion at his two residences in Florida on August 12, 2024, August 13, 2024, and August 14, 2024. *See* Dkt. Nos. 1461-1, 1461-2. After Levitan did not respond to the motion or otherwise appear in this matter, on August 29, 2024, Gilead filed a letter requesting that the Court grant its motion as unopposed and direct the Clerk of Court to issue a certificate of default against Levitan. *See* Dkt. No. 1467. On September 3, 2024, the Court scheduled a telephonic status conference for September 12, 2024 and ordered Levitan to appear, warning that Levitan's failure to appear "will likely weigh in favor of an entry of default." *See* Scheduling Order, dated Sep. 3, 2024. The Court ordered Gilead to serve the Scheduling Order on Levitan and file proof of service, which it subsequently did. Dkt. No. 1472.

On September 4, 2024, Levitan—now appearing *pro se*—filed a letter, dated September 2, 2024, in which he requested a 45-day extension to retain counsel. *See* Dkt. No. 1473. Gilead opposed Levitan's request. *See* Dkt. No. 1474. On September 12, 2024, Levitan failed to appear at the telephonic status conference, and the Court granted Gilead's motion (Dkt. No. 1452) and reinstated the certificate of default. Minute Entry, dated Sep. 12, 2024. Specifically, the Court stated:

> As a show of good will and in the interest of judicial efficiency, then-Magistrate Judge Ramon E. Reyes Jr. agreed [] following a stipulation by and among Plaintiffs and Defendant John Levitan (then represented by counsel) to vacate the Clerk of Court's Entry of Default as to Mr. Levitan (Dkt. No. 839) if Mr. Levitan agreed to (i) comply with the production of disclosures mandated by an asset freeze order by November 10, 2023, (ii) appear for a deposition by November 25, 2023, and (iii) file an answer by December 11, 2023. *See* Dkt. No. 1201; Text Order dated October 12, 2023. But, on November 14, 2023, a Notice of Bankruptcy Filing was filed by Levitan's counsel—triggering an automatic stay pending the conclusion of the bankruptcy proceedings. Dkt. No. 1217.
>
> Plaintiffs allege that Mr. Levitan's bankruptcy filings were intended to delay (or perhaps circumvent) compliance with the Court's Asset Freeze Order dated August 11, 2022 and his own agreement with Judge Reyes as to the vacatur of the [Dkt. No.] 839 default. *See* generally Dkt. No. 1453; 1461. At this juncture, the Court declines to inquire into Mr. Levitan's motivations for initiating the bankruptcy action or whether the circumstances surrounding the imposition of an automatic stay were manufactured as a "delay tactic."
>
> Nonetheless, Mr. Levitan failed to comply with the very first prong of the stipulation in failing to comply with Judge Reyes's order compelling disclosures by November 10, 2023. Therefore, the Court need not contemplate whether the automatic stay held certain portions of the stipulation in abeyance pending the conclusion of the bankruptcy proceedings. Further, the procedural history of Mr. Levitan's participation in this action—including his failure to appear at the September 12, 2024 conference—supports a finding that the Clerk's Entry of Default dated October 28, 2022 was entered properly. Accordingly, a default is hereby reinstated against Mr. Levitan.
>
> The Clerk of Court is respectfully directed to maintain the notation of default as to defendant John Levitan.

*Id.*

On October 4, 2024, Levitan filed a letter stating that he was never served with Gilead's motion to reinstate default, adding that he was also never properly served with the summons in this action, as evidenced by his purported "Ring audio/video." Dkt. No. 1485 at 1-2. Levitan also noted that he had trouble filing his requests through the ECF-filing system. *See id.* at 2-3. Gilead disputed Levitan's assertions in his October 4, 2024 letter and filed an affidavit of service of the September 3, 2024 Scheduling Order. *See* Dkt. Nos. 1487, 1489.

On August 1, 2025 and December 3, 2025, Gilead moved for default judgment against myriad defendants, including Levitan. *See* Dkt. Nos. 1606, 1636. On January 8, 2026, the Court held a conference with Gilead whereby Gilead agreed to voluntarily withdraw its motion for default judgment, without prejudice to renewal. *See* Text Order, dated Jan. 8, 2026.

On January 21, 2026, Levitan reappeared and filed his "motion to dismiss, quash, vacate [*sic*] seizure order, set aside default, and for related relief." Dkt. No. 1651. On the same date, Levitan filed a notice regarding intervening Supreme Court authority (Dkt. Nos. 1652, 1654) and a motion to appoint counsel (Dkt. No. 1653).

On February 5, 2026, upon Gilead's request, the Clerk of Court formally entered a new certificate of default against, *inter alia*, Levitan pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. *See* Dkt. No. 1656.

Gilead opposed Levitan's January 21, 2026 motion to dismiss on March 20, 2026, in compliance with the Court's directive. *See* Text Order, dated Feb. 6, 2026; Dkt. No. 1661. Gilead also filed its renewed motion for default judgment against several Defendants, including Levitan. Dkt. Nos. 1662, 1663. On April 6, 2026, Judge Donnelly referred Levitan's motions and Gilead's motion to the undersigned. Referral Order, dated Apr. 6, 2026.

On April 27, 2026, Levitan filed a motion for a more definite statement. *See* Dkt. No. 1666. On the same date, Levitan also filed his "amended motion to vacate default, to dismiss, and to vacate [*sic*] seizure order." Dkt. No. 1667. Judge Donnelly referred, *inter alia*, Levitan's motion for a more definite statement and amended omnibus motion, to the undersigned. Referral Order, dated Apr. 29, 2026.

On April 29, 2026, the Court scheduled a telephonic conference for April 30, 2026 concerning, *inter alia*, the following:

> Mr. Levitan shall be prepared to discuss why he failed to comply with the stipulation by and among Plaintiffs and Mr. Levitan (then represented by counsel) to vacate the Clerk of Courts' Entry of Default as to Mr. Levitan (Dkt. No. 839). *See* Minute Entry and Order dated Sep. 12, 2024. Gilead shall be prepared to discuss whether it consents to vacatur of default against Mr. Levitan only, given his recent filings in this action and given that the Second Circuit has long "expressed a strong 'preference for resolving disputes on the merits.'" *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (noting that "because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party").

Scheduling Order, dated Apr. 29, 2026.

On April 30, 2026, Gilead and Levitan appeared for the April 30, 2026 status conference. *See* Minute Entry, dated Apr. 30, 2026. The Court ordered Gilead to file a letter containing any supplemental authority in which the Second Circuit has upheld the entry of default judgment where *pro se* litigants ultimately appeared in the action. *See id.*[6]

On May 2, 2026, the Court ordered as follows:

> On June 17, 2025, the Court ordered Gilead to file a letter explaining "why the Court should allow it to proceed with the anticipated motion for default judgment

[6] In the same Minute Entry, the Court ordered Levitan to respond to Gilead's letter by May 12, 2026, and also ordered Gilead and Levitan to submit *ex parte* settlement letters to the undersigned's chambers by May 12, 2026, in advance of the scheduled May 19, 2026 settlement conference. Minute Entry, dated Apr. 30, 2026. Levitan did not file a response to Gilead's letter but did submit his *ex parte* settlement letter to the undersigned's chambers by the deadline.

> in light of the case law in this Circuit concerning similar requests for default judgment while there are claims still subject to adjudication by actively appearing parties. *See, e.g.*, *Lemache v. Tunnel Taxi Mgmt., LLC*, 354 F. Supp. 3d 149, 156 (E.D.N.Y. 2019) ('[t]he Court believes the more prudent and efficient course is to avoid decision on the default judgment motion against the non-appearing defendants. Doing so avoids the risk of inconsistent outcomes on the question of damages. And there is no advantage or purpose served on resolving only the liability portion of the motion for default judgment.')." Gilead filed its letter at Dkt. No. 1596.
>
> As an addendum to the Court's April 30, 2026 order, Gilead shall address the following in its May 8, 2026 letter. To the extent the Court vacates default judgment against John Levitan, Gilead shall address (1) the impact of having "one or more, but not all, defendants [that] are in default" and "whether an entry of default judgment against the one defendant is appropriate, despite the continued, active litigation of the case against the appearing defendant[]." *Lakers for Garmets & Made Clothes v. Jetax Inc.*, No. 24-CV-2226 (LDH) (ST), 2025 WL 3461453, at *23 (E.D.N.Y. Sep. 17, 2025) (discussing the "*Frow*" principle) (citations omitted)); and (2) whether Gilead still argues that Levitan is jointly and severally liable with all other defaulting defendants (*see* Dkt. No. 1662-2).

Text Order, dated May 2, 2026. Gilead filed its responses to the Court's directives on May 8, 2026. *See* Dkt. Nos. 1678, 1680.

## II. Levitan's Motion to Vacate the Certificate of Default

As an initial matter, "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citations omitted). The solicitude afforded to *pro se* litigants "takes a variety of forms," for example, "the liberal construction of pleadings, motion papers, and appellate briefs," "relaxation of the limitations on the amendment of pleadings," "leniency in the enforcement of other procedural rules," and "deliberate, continuing efforts to ensure that a *pro se* litigant understands what is required of him." *Id.* at 101-02 (citations omitted). "The scope of the solicitude afforded may vary depending on the procedural context and the demands placed by that context upon the inexperienced litigant." *Id.* at 102.

With respect to default judgment, the Second Circuit has explained that

> Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. The first step is to obtain an entry of default. When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention. In such circumstances Rule 55(a) empowers the clerk of court to enter a default. The next step requires the plaintiff to seek a judgment by default under Rule 55(b). Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear. In all other cases Rule 55(b)(2) governs. It requires a party seeking a judgment by default to apply to the court for entry of a default judgment.

*Priestley v. Headminder*, *Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Because Rule 55(c) does not define "good cause," the Second Circuit has established:

> three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment. These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. []. Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result.

*Enron Oil*, 10 F.3d at 96 (citations omitted). Importantly, "[b]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party"; "[i]n other words, 'good cause' and the criteria of the Rule 60(b) set aside should be construed generously." *Id.* "[A]ll doubts must be resolved in favor of the party seeking relief." *Green*, 420 F.3d at 104.

"When the question is one of setting aside a default—as opposed to a default judgment—these factors are assessed less rigorously, because there are fewer concerns about the concepts of finality and litigation repose." *U.S. Commodity Futures Trading Comm'n v. Safety Cap. Mgmt., Inc.*, No. 15-CV-5551 (RJD) (PK), 2017 WL 3236441, at *2 (E.D.N.Y. July 31, 2017) (citations omitted), *report and recommendation adopted*, (E.D.N.Y. July 31, 2017); *see also Ramsaran v.*

*Abraham*, No. 15-CV-10182 (JPO), 2017 WL 1194482, at *10 (S.D.N.Y. Mar. 30, 2017) ("Taking the three factors together, the Court concludes that all the factors support vacating the Certificate of Default, especially considering the more forgiving standard due in the absence of a final entry of default judgment.").

Additionally, "the Court should 'grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*.'" *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 188 (E.D.N.Y. 2025) (adopting report and recommendation and quoting *Enron Oil*, 10 F.3d at 96).

The Court considers each "good cause" *Enron Oil* factor, in turn, below. Ultimately, the undersigned respectfully recommends that Levitan's entry of default be vacated.

**A. Willfulness of Default**

"'[W]illfulness,' in the context of a default, refer[s] to conduct that is more than merely negligent or careless," but is instead "egregious and . . . not satisfactorily explained." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (citation omitted); *see also Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (stating that there is "no reason to expand [the Second Circuit's] willfulness standard to include careless or negligent errors in the default context"). "[T]he relevant inquiry for determining willfulness is the defaulting party's actions after it became aware of the existence of the litigation or entry of default." *Haran v. Orange Bus. Servs. Inc.*, No. 21-CV-10585 (VSB), 2022 WL 2306945, at *2 (S.D.N.Y. June 27, 2022) (quoting *In re FKF 3, LLC*, 501 B.R. 491, 502 (S.D.N.Y. 2013)). "Thus, even where notice was adequate and the defaulting party failed to rebut the presumption of receipt, if the party responded promptly after learning of the action, courts have found that the party's default was not willful." *Id.* (first quoting *In re FKF 3,*

*LLC*, 501 B.R. at 502 (collecting cases); and then citing *Swarna v. Al-Awadi*, 622 F.3d 123, 142-43 (2d Cir. 2010)).

Levitan claims that he was never properly served with the Sixth Amended Complaint. *See* Dkt. No. 1651 at 3. Levitan points to a "video door bell camera and cameras around [Levitan's] property show that no one ever identified as Defendant" appeared to receive service of the operative pleading in this case. *See* Dkt. No. 1667 at 3. Further, Levitan argues that his counsel appeared (prior to his withdrawal) only for purposes of arguing about personal jurisdiction and that Levitan never waived an argument regarding proper service of the pleadings. *See id.* at 5. Levitan adds that "[t]he fact that Levitan sought bankruptcy protection cannot be weaponized as evidence of 'willful default' in this Court." *Id.*

Gilead argues, *inter alia*, that "Levitan was served with the Sixth Amended Complaint: he accepted, on the record, service through counsel as part of a Court-brokered and Court-ordered deal for his original default to be lifted." Dkt. No. 1661 at 12. Gilead adds that Levitan only filed for bankruptcy to avoid the present case. *See* Dkt. No. 1680. Further, Gilead argues that his failure to appear at conferences in 2024 and the undersigned's sanctions order render Levitan's default willful. *See* Dkt. No. 1661 at 10-14.

Here, the undersigned is not persuaded that Levitan's default was willful under the controlling case law. Separate from counsel's prior appearances on Levitan's behalf, Levitan has recently been extremely active in the present action.[7] As background, after Levitan's bankruptcy proceeding was dismissed on August 7, 2024, as a *pro se* litigant, Levitan filed a letter with the Court on September 4, 2024. *See* Dkt. No. 1473. Levitan filed another letter with the Court on October 4, 2024. Dkt. No. 1485. Following motion practice related to Gilead's application for

[7] Levitan also recently filed a lawsuit against Gilead, which was removed to this district on February 27, 2026. *See Levitan v. Gilead Scis. Inc.*, No. 26-CV-2329 (AMD) (JAM) (E.D.N.Y.).

default judgment, Levitan filed multiple motions and various letters to the Court on January 21, 2026. *See* Dkt. Nos. 1651, 1652, 1653, 1654. On April 27, 2026, Levitan filed another motion with the Court. *See* Dkt. No. 1667. Levitan appeared for a telephonic conference on April 30, 2026. *See* Minute Entry, dated Apr. 30, 2026. All told, after having been put on notice of Gilead's most recent motion for default, Levitan has appeared and litigated this action on myriad occasions. *See Veeraswamy*, 765 F. Supp. 3d at 189 (finding that default was not willful where the *pro se* plaintiff "has appeared at the initial conference, communicated with opposing counsel concerning status reports and filings, and litigated her motion and the Government's motion to compel and stay discovery.").

Additionally, there does not appear to be sufficient evidence that, at this stage, Levitan's filing for bankruptcy amounts to the willfulness necessary to establish default. Gilead contends that "[Levitan] admitted" that he filed for bankruptcy "for the purpose of avoiding this case." *See* Dkt. No. 1680 at 7 (citing Dkt. Nos. 1217, 1361, 1382, 1398, 1454-1). But Levitan made no such concession at the April 30, 2026 conference, where he told the Court that his "bankruptcy court proceedings . . . were 100 percent legitimate" and were "not a delay tactic against Gilead." Dkt. No. 1677 at 13.

A closer look at the documents cited by Gilead in support of its argument also reveal no such admission. Gilead cites to a notice of filing of bankruptcy (Dkt. No. 1217); a May 1, 2024 status report written by Gilead about the bankruptcy proceedings (Dkt. No. 1361); a June 13, 2024 status report written by Gilead about the bankruptcy proceedings with attached emails between counsel and copies of deposition and hearings transcripts in the bankruptcy proceeding, where Gilead's attorneys argue that Levitan is abusing the bankruptcy tribunal to avoid his obligations in this case (Dkt. No. 1382); and a July 15, 2024 status report written by Gilead about the bankruptcy

proceedings (Dkt. No. 1398). None of these submissions, however, point to Levitan conceding that he filed for bankruptcy to evade the present litigation. The closest Gilead can come to showing that Levitan filed for bankruptcy to avoid the present case is from a Revised "Rule 341 Creditors' Meeting" transcript dated February 21, 2024, *see* Dkt. No. 1454 2, which contains the following exchange:

> MR. BROWN: Why did you file this [bankruptcy] case, sir?
>
> MR. LEVITAN: Why?
>
> MR. BROWN: Mm-hmm.
>
> MR. LEVITAN: Because I can't function in any business I do or anything I do with the problems of the debt that I have, especially with the problems with Gilead. It just all caused a -- a stop in my -- a standstill in my life for something I was not even involved in.
>
> MR. BROWN: Was there a precipitating cause to the filing?
>
> MR. LEVITAN: Yeah. The precipitated cause was Gilead Sciences had issues with other people that I knew, one person and that's it.
>
> MR. BROWN: Okay. So just -- just to be clear, you filed this case on November 10, 2023, which was the deadline for you to file asset freeze disclosures in the Gilead case in New York; is that correct?
>
> MR. LEVITAN: You'd have to ask Bart for the dates, but yes, I would assume.
>
> MR. BROWN: Okay. So that was a precipitating cause for the filing on that date?
>
> MR. LEVITAN: It was part of the problems, yes.

Dkt. No. 1454-1. The above exchange is, at best, muddled. But it does not, as Gilead suggests, unequivocally show that Levitan has admitted to nefariously filing for bankruptcy to exit the present litigation.

But even if Levitan had engaged in such behavior, "[t]his Circuit's preference for adjudicating disputes on the merits, and [Levitan's] apparent desire to do so through [his] participation thus far, weighs against a finding that [Levitan's] default was willful." *Veeraswamy*,

765 F. Supp. 3d at 189; *see also Puddu v. 6D Glob. Techs., Inc.*, No. 15-CV-8061, 2020 WL 2833852, at *4 (S.D.N.Y. May 31, 2020) (Nathan, J.) ("While it may have been careless or even grossly negligent for Wey—a sophisticated businessman who is no stranger to litigation—to sit by and await service of the pleadings having been made aware of the fact that he had been named as a Defendant in this action, the Court cannot conclude—in light of his explanations and resolving all doubts in his favor—that Wey's actions rise to the level of willfulness."). Indeed, Levitan "is also proceeding *pro se*, which creates complications even for the most well-resourced and educated of litigants representing themselves." *Doe v. Rees*, No. 3:23-CV-1352 (ECC) (ML), 2025 WL 2323438, at *3 (N.D.N.Y. Aug. 12, 2025).

Ultimately, the undersigned concludes that this factor weighs in favor of vacating the default.

**B. Prejudice**

Because "[s]ome delay is inevitable when a motion to vacate a default judgment is granted," delay alone is "not a sufficient basis for establishing prejudice." *Green*, 420 F.3d at 110 (citation omitted). A plaintiff must therefore show "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Gilead's arguments related to prejudice are rooted in delay (*see, e.g.,* Dkt. No. 1680 at 8-9) and such arguments are therefore insufficient to warrant default. *See Veeraswamy*, 765 F. Supp. 3d 168, 190 (E.D.N.Y. 2025) ("At bottom, [the plaintiff's] claimed prejudice amounts to complaints associated with prolonged litigation and additional costs—complaints that are insufficient to establish prejudice that would override a request to set aside a default.").

Gilead also suggests that Levitan will seek to file for bankruptcy again when his two-year bankruptcy bar expires on August 7, 2026, which would further delay resolution of the present case. *See* Dkt. No. 1680 (citing Dkt. No. 1454-5); *see* Dkt. No. 1454-5 ("Pursuant to 11 U.S.C. §§ 105 and 349, the prejudice period set forth in 11 U.S.C. § 109(g) is extended for cause to two years. During the two-year prejudice period, Mr. Levitan is barred from filing a petition under title 11 of the United States Code in any court in the United States of America. Any such filing shall be null and void and will not cause any stay imposed by 11 U.S.C. § 362 to go into effect."). At the April 30, 2026 conference, Levitan told the Court that he is "not interested in filing bankruptcy" and thus any anticipated bankruptcy filing currently remains unripe for consideration. Dkt. No. 1677 at 14.

But even if Gilead's prediction about Levitan's future bankruptcy filings prove to be well-founded, nothing prevents the Court from promptly ordering Levitan to file his Answer to the Sixth Amended Complaint and permitting expedited discovery to be completed prior to August of 2026. Nor does anything prevent Gilead from promptly moving for summary judgment in connection with its claims against Levitan—well in advance of any potential bankruptcy filing (and perhaps in advance of any discovery occurring). The undersigned intends to address these procedural issues further with Gilead and Levitan at the upcoming May 19, 2026 conference.

Thus, the undersigned concludes that this factor weighs in favor of vacating the default.

**C. Meritorious Defenses**

Regarding whether Levitan has any meritorious defenses, "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp.*, 10 F.3d at 98 (citations omitted). "The Second Circuit has stated that a 'defense is meritorious if it is good at law so as to give the fact-finder some determination to make.'" *Weisel*

*v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000) (quoting *Am. All.*, 92 F.3d at 61)). "Likelihood of success is not the measure"; "allegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Id.* (citations omitted). "A defendant seeking to vacate a default need only meet a low threshold to satisfy [the meritorious defense] factor." *U.S. Commodity Futures Trading Comm'n*, 2017 WL 3236441, at *3 (citation omitted).

Here, Levitan has met the low threshold necessary to satisfy this factor. Gilead argues that Levitan "does not proffer any defense at all, let alone a meritorious defense, to Gilead's claims against him." Dkt. No. 1661 at 14. But Levitan argues, as a defense, that this Court lacks personal jurisdiction over him. *See* Dkt. No. 1651 at 6; *see also* Dkt. No. 1675 at 1. Further, Levitan argues that the claims in the Sixth Amended Complaint fail to identify the people Levitan allegedly brought into the conspiracy; what specific acts Levitan committed; "[w]here, when, and how he committed those acts"; "[w]ho he made introductions to" in connection with the alleged conspiracy; and "[w]hat specific counterfeit medications he allegedly sold." Dkt. No. 1667 at 12-13.

While the Court will more fully address Gilead's motion to dismiss below (which is assessed under a different standard than the present standard for vacatur of default), the undersigned finds that although Levitan has not established his defenses conclusively, he has "present[ed] evidence of facts" and legal authorities that may potentially "constitute a complete defense." *Sardarian v. Fed. Emergency Mgmt. Agency*, No. 3:19-CV-910 (CSH), 2020 WL 1542374, at *6 (D. Conn. Jan. 9, 2020) (citations omitted). "Additionally, and under the 'liberal pleading standard' afforded to documents filed by a *pro se* litigant, Defendant's submissions are above conclusory denials which a factfinder could evaluate." *Veeraswamy*, 765 F. Supp. 3d at 190

(quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed'" (citations omitted))).

Though it is potentially a closer call than the other factors, the undersigned concludes that this factor weighs in favor of vacating the default.

**D. Equitable Factors**

Finally, entry of default would result in "a harsh or unfair result" by denying Levitan "the opportunity to defend the action on the merits." *Raheim v. N.Y.C. Health & Hosps. Corp.*, No. 96-CV-1045, 2007 WL 2363010, at *6 (E.D.N.Y. Aug. 14, 2007) (Bianco, J.); *see Veeraswamy*, 765 F. Supp. 3d at 191 ("[u]pholding Defendant's default, especially for a *pro se* party, would 'bring about a harsh or unfair result.'" (quoting *Enron Oil*, 10 F.3d at 960)). And, as noted above, Levitan has "has repeatedly participated in litigation since filing" the current motions. *Id.* In short, it would appear non-sensical to enter default judgment against a defendant who is actively litigating his case.

***

On balance, given Levitan's *pro se* status and in light of the "strong preference" in this Circuit for resolving cases on their merits, the *Enron Oil* factors weigh in favor of vacating Levitan's default in this case. Accordingly, the undersigned respectfully recommends that Levitan's motion to vacate the entry of default be granted under Federal Rule of Civil Procedure 55(c).

**III. <u>Gilead's Motion for Default Judgment</u>**

For the reasons discussed in Part II, *supra*, the undersigned respectfully recommends that Gilead's motion for default judgment against Levitan be denied. Indeed, in light of the undersigned's recommendation that Levitan's motion to vacate the entry of default be granted, the

undersigned "believes the more prudent and efficient course is to avoid decision on the default judgment motion against the non-appearing Defendants." *Lemache*, 354 F. Supp. 3d at 156 ("Doing so avoids the risk of inconsistent outcomes on the question of damages. And there is no advantage or purpose served on resolving only the liability portion of the motion for default judgment.").

As noted above, the Court previously ordered Gilead to address "the question under *Frow v. De La Vega*, [82 U.S. 552 (1872),] regarding whether the entry of default judgment is appropriate prior to trial when fewer than all defendants have defaulted." *Lakers for Garmets & Made Clothes*, 2025 WL 3461453, at *23; Text Order, dated May 2, 2026. While objecting to the vacatur of Levitan's default, Gilead appears to concede that a decision on its motion for default judgment should not be entered if Levitan's default is in fact vacated. As Gilead argues,

> In short, for all the reasons articulated by Magistrate Judge Tiscione in his thorough and detailed analysis of the issue in *Lakers for Garmets* . . . [,] Gilead agrees that because it is seeking a default judgment against Levitan jointly and severally with his co-conspirators for the counterfeits sold through Safe Chain's network, *see* ECF No. 1662-2 at 53, if the Court were to vacate Levitan's second entry of default and allow him to proceed to litigate the merits of Gilead's claims against him at this juncture, *the Court would have grounds to determine, in its discretion, that resolution of Gilead's pending motion for default judgment against Levitan's co-defendants is premature*. And as Gilead has already explained in its default judgment motion, because "it is well established under the Lanham Act that defendants that sold the same infringing products are jointly and severally liable to the damages resulting from the sale (or other use in U.S. commerce) of that bottle," *id.* at 55 . . . , Gilead maintains that Levitan is jointly and severally liable for the bottles he and his co-conspirators sold.

Dkt. No. 1680 at 9 (emphasis added). In light of Levitan's re-appearance and given his role in the purported conspiracy, Gilead's motion for default judgment is now premature.

Accordingly, the undersigned respectfully recommends that Gilead's motion for default judgment be denied without prejudice to renewal.[8]

## IV. Levitan's Motion to Dismiss

Liberally construed, Levitan seeks to move to dismiss the Sixth Amended Complaint on the following grounds: lack of personal jurisdiction, insufficient service, lack of subject matter jurisdiction, improper venue, and Gilead's failure to state a claim. *See* Dkt. Nos. 1651, 1667. All of Levitan's arguments in his motion to dismiss are without merit.

### A. Levitan's Argument regarding Service and Personal Jurisdiction

#### 1. Service

Federal Rule of Civil Procedure 4(e)(2)(C) permits service on an individual by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). On August 18, 2022, Sergeant Ryan Robinson from the Escambia County Sheriff's Office in Escambia County, Florida, provided law enforcement support for the civil seizure at Levitan's residence in Florida. Dkt. No. 823 ¶¶ 1-2. Sergeant Robinson spoke to an individual who identified himself as Levitan through the intercom at Levitan's residence. *Id.* ¶ 3. Levitan instructed Sergeant Robinson to contact his attorney from Beggs & Lane, RLLP, which he did. *Id.* ¶ 4. Within half an hour, a paralegal from Beggs & Lane, RLLP arrived, identified herself as Levitan's representative, and accepted papers on Levitan's behalf. *Id.* ¶ 6.

[8] The Court note that on May 8, 2026, Gilead filed a notice of dismissal, without prejudice, of all claims against certain defendants against whom Gilead did *not* move for default judgment, namely, Maria Bedoya; Quan Hernandez; Carlos Hernandez; Alex Galvan; AMG Logistics Sky LLC; Power Pro Logistics LLC; Cesar Castillo Wholesalers LLC f/n/a Cesar Castillo LLC; DNS Distributor LLC; Vibe Enterprise, Inc.; Sofitel Trading Corp.; Skyline World Group, Inc.; Elite Distribution, Inc.; Titan Distribution & Services LLC; Tidy Garages LLC; ASB Wholesale Distributors LLC; Silverline Pharma Logistics LLC; JM Smith Distribution Corp; MDSD Enterprises LLC; and Liliana Teresa Sampayo Mena. *See* Dkt. No. 1679.

Gilead served Levitan with, *inter alia*, the Fourth Amended Complaint. *Id.* ¶ 5. Amended pleadings should generally be served on every party. Fed. R. Civ. P. 5(a)(1)(B). "No service is required on a party who is in default for failing to appear." Fed. R. Civ. P. 5(a)(2). "But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." *Id*. Here, because Levitan was in default at the time of the filing of the Sixth Amended Complaint, and because Gilead did not add a new claim against Levitan between the Fourth and Sixth Amended Complaints (Dkt. No. 1678 at 2), Levitan was properly served in this action.

**2. Personal Jurisdiction**

Additionally, as Gilead recognizes (Dkt. No. 1661 at 16), "the Second Circuit has advised that 'Rule 4 of the Federal Rules is to be construed liberally 'to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.'" *Veeraswamy*, 765 F. Supp. at 194 (quoting *Sidney v. Wilson*, 228 F.R.D. 517, 524 (S.D.N.Y. 2005)); *see also Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986). Moreover, "given the Second Circuit's clearly expressed preference that litigation be resolved on the merits and its guidance that incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained, as well as the fact that Defendant has actual notice of the instant action, there is no basis to dismiss this case for failure to serve process." *Veeraswamy*, 765 F. Supp. at 194 (quoting *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540 (PKC) (ARL), 2023 WL 6450398, at *8 (E.D.N.Y. Sep. 30, 2023)). Levitan sets forth nothing to undermine the efficacy of the service that Gilead purports to have made upon Levitan. *See, e.g.*, Dkt. Nos. 687, 1645.

To properly exercise personal jurisdiction, three requirements must be met. *NLRB v. Universal Smart Contracts, LLC*, 166 F.4th 304, 314 (2d Cir. 2026) (Sullivan, J.) (citations

omitted). First, "the plaintiff's service of process upon the defendant must have been procedurally proper." *Id.* (citations omitted). Second, "there must be a statutory basis for personal jurisdiction that renders such service of process effective." *Id.* (citation omitted). Finally, "the district court's assertion of personal jurisdiction must otherwise 'comport with constitutional due process principles.'" *Id.* (citation omitted).

As to the first requirement, the undersigned has already respectfully recommended a finding that service on Levitan was proper in this case. As to the second requirement, the available statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k). *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (*Licci I*), 673 F.3d 50, 59 (2d Cir. 2012). Rule 4(k)(1)(A) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Id.* (citing Fed. R. Civ. P. 4(k)(1)(A)). Accordingly, "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located." *Id.* (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)). Thus, the court should look to New York law in determining the availability of personal jurisdiction over Defendant.

"There are two types of personal jurisdiction: specific and general." *Monbo v. Nathan*, 623 F. Supp. 3d 56, 133 (E.D.N.Y. 2022) (citation omitted). "General jurisdiction permits a court to exercise personal jurisdiction over a defendant regardless of whether the underlying claim has a connection to the forum." *Id.* (citation omitted). "Specific jurisdiction requires a connection between the forum exercising jurisdiction over the defendant and the underlying controversy that gave rise to the claim." *Id.* (citation omitted). Under New York law, courts exercise general

jurisdiction pursuant to the New York Civil Practice Law and Rules ("CPLR") § 301, and specific jurisdiction pursuant to CPLR § 302. *Id.*

The Court cannot exercise general jurisdiction over Levitan because he is not domiciled in New York, nor was he served within New York state. Dkt. Nos. 823 (service in Florida); 1644 ¶ 106 (residing in Florida); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (holding "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile"); *Loughlin v. Goord*, 558 F. Supp. 3d 126, 139 (S.D.N.Y. 2021) (describing "tag jurisdiction").

As for specific jurisdiction, "[i]n assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state." *Gilead Scis.* 2022 WL 22947596, at *6 (quoting *Yak v. BiggerPockets, LLC*, No. 20-3498, 2022 WL 67740, at *1 (2d Cir. Jan. 7, 2022)). New York's long-arm statute, CPLR § 302(a)(1), provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." *Gilead Scis*, 2022 WL 22947596, at *6 (quoting N.Y. C.P.L.R. § 302(a)(1)).

Two requirements must be met to establish personal jurisdiction under CPLR § 302(a)(1): "(1) The defendant must have transacted business within the state [or contracts anywhere to supply goods or services in the state]; and (2) the claim asserted must arise from that business activity." *Gilead Scis.*, 2022 WL 22947596, at *6 (citing *Eades v. Kennedy, P.C. L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015)). "Proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as defendant's activities here were purposeful and there is substantial overlap between the transaction and the claim asserted." *Id.*

(quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010)). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Eades*, 799 F.3d at 168). "Courts look to the totality of the defendant's activities within he forum to determine whether a defendant has transacted business in such a way that it constitutes purposeful activity, but more limited contacts regarding services to be performed outside New York would not satisfy Rule 302(a)(1)." *Id.* (alteration in original) (citation omitted). Whether the Court may exercise specific jurisdiction under CPLR § 302(a)(1) ultimately depends on whether the defendant had "full knowledge that the goods will or can be reasonably expected to be sold in New York, where they will infringe plaintiff[s'] [intellectual property rights]." *Id.* at *7 (quoting *Ortiz v. Guitian Bros. Music Inc.*, No. 07-CV-3897, 2008 WL 4449314, at *9 (S.D.N.Y. Sep. 29, 2008)).

Here, the Court may exercise specific jurisdiction under CPLR § 302(a)(1) against Levitan because Levitan had full knowledge that the goods will or can be reasonably expected to be sold in New York, where they will infringe upon Gilead's intellectual property rights. Levitan is alleged to have "managed and directed an enterprise dedicated to the sale of counterfeit HIV medication accompanied by counterfeit and fraudulent documentation. Dkt. No. 1644 ¶ 106. Levitan played a "central role in the counterfeiting conspiracy's complex money-laundering apparatus." *Id.* ¶ 280.

Specifically, Gilead alleges that Levitan was the primary contact between Synergy and Synergy's principal, Vega. *Id.* ¶¶ 281-82. Synergy and Vega, under Levitan's direction, supplied "a large volume of counterfeits" to Safe Chain. Gilead points to specific emails involving Synergy,

introducing Levitan being "involved with the inventory and acquisition," and Levitan's email to Vega looking for more "inventory." *Id.* ¶ 282.

Levitan was also involved with Invicta, another member of the purported conspiracy with Safe Chain. *Id.* ¶ 283. Gilead also points to email between Invicta's owner to Levitan and another individual that discussed how a pedigree "is gonna look like." *Id.*

Finally, Gilead alleges that Safe Chain conspired with others to sell counterfeit Gilead medication to "pharmacies in New York City." *Id.* ¶ 188. Gilead alleges that Vega personally travelled to New York to conduct the counterfeiting business, and Synergy transferred revenues to New York entities, and/or purchasing counterfeits in New York. *Id.* Finally, this Court already found Vega subject to the Court's specific jurisdiction because of his role in the sale of counterfeit HIV medication into New York and under conspiracy jurisdiction. *Gilead Scis.*, 2022 WL 22947596, at *7 ("[T]he evidence shows that he was acting as a representative of Synergy, and he corresponded with Safe Chain after Safe Chain rejected Synergy-sourced Gilead bottles on which were glued a different drug's inserts."). Therefore, the undersigned respectfully recommends that the Court may exercise specific jurisdiction over Levitan under CPLR § 302(a)(1).[9]

Last, the Court must determine whether exercise of jurisdiction comports with federal constitutional requirements of due process. *Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 330-31 (S.D.N.Y. 2025). "Due process considerations require that the defendant

---

[9] Although the issue is not settled by the New York Court of Appeals, "numerous district courts sitting in New York have held that [CPLR] Section 302(a)(1) . . . does not provide for co-conspirator jurisdiction." *Doe 1 v. Gov't of U.S. Virgin Islands*, 771 F. Supp. 3d 379, 390 (S.D.N.Y. 2025) (citations omitted). Further, even though conspiracy jurisdiction is available under CPLR § 302(a)(2) (*Gilead Scis.*, 2022 WL 22947596, at *9), that section only applies to those who "commits a tortious act *within the state*, except as to a cause of action for defamation of character arising from the act." N.Y. C.P.L.R. § 302(a)(2) (emphasis added). While it does not appear that Levitan committed the counterfeiting within New York State, the Court need not reach this question because personal jurisdiction is satisfied on other grounds as discussed herein.

have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 330 (first quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (*Licci II*), 732 F.3d 161, 169 (2d Cir. 2013); and then quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). First, a court evaluates whether a defendant has "sufficient minimum contacts" with the forum, and second, whether, in light of various factors, the exercise of jurisdiction would "comport with fair play and substantial justice." *Id.* at 330-31 (citations omitted).

As to minimum contacts, "[g]enerally, if a defendant meets the contacts requirement under the long-arm statute, it also meets the minimum contacts requirements under the constitutional analysis." *Id.* at 331 (citing *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 279 (2d Cir. 2024)). As discussed above, Gilead has met the requirements of New York's long arm statute, CPLR § 302.

As to fair play and substantial justice, the Court considers the following factors:

> [i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies.

*Dow Jones & Co.*, 797 F. Supp. 3d at 331 (citation omitted); *see also Agric. Logistics LLC v. Survival Transp. Inc.*, No. 22-CV-873 (MKB) (JMW), 2024 WL 4250354, at *8 (E.D.N.Y Aug. 7, 2024), *report and recommendation adopted*, 2024 WL 4116684 (Sep. 9, 2024). When a defendant has the requisite minimum contacts with the forum state, it may still defeat jurisdiction on due process grounds if it can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dow Jones & Co.*, 797 F. Supp. 3d at 331 (citation omitted).

Here, it would be "rare" and "unusual" if a defendant transacted business in New York and claimed asserted arose from that business activity under CPLR 302(a)(2), and the defendant was found to have "offend[ed] traditional notions of fair play and substantial justice." *Licci*, 732 F.3d at 170. Furthermore, Levitan cannot present any compelling case that would render jurisdiction unreasonable. *See Agric. Logistics*, 2024 WL 4250354, at *8 ("given Defendants' default, [the Court] has not been provided, nor does it find, any reason why exercise of specific jurisdiction would be unreasonable").

In any event, the Court's exercise of jurisdiction here would comport with fair play and substantial justice. "With respect to the first factor — the burden imposed on Defendant in having to litigate this action in New York — the Court finds this factor incapable of tilting the scales given modern advances in communication and transportation." *Dow Jones & Co.*, 797 F. Supp. 3d at 332 (citations omitted). Second, New York has a "manifest interest in providing effective means of redress for its residents," specifically, "the misappropriation of trademarks." *Id.* (citations omitted). The third factor tilts the scales in Gilead's favor because Gilead has a strong interest in obtaining effective and convenient relief where Levitan had full knowledge that the goods will or can be reasonably expected to be sold in New York, where they will infringe upon Gilead's intellectual property rights. *See Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 543 (S.D.N.Y. 2015) ("Although Toy Amazon is a California corporation with its principal place of business in California . . . , it has purposefully established contacts with New York by offering goods for sale to consumers there, and Rovio clearly has an interest in obtaining relief for past and future violations of its copyrights and trademarks."). The last two factors are neutral because the action arises under federal law, and all jurisdictions have an interest in developing substantive law. *Dow Jones & Co.*, 797 F. Supp. 3d at 332 (citations omitted).

Accordingly, the Court cannot credit Levitan's argument regarding lack of personal jurisdiction.

**B. Levitan's Argument regarding Subject Matter Jurisdiction and Venue**

The undersigned also agrees with Gilead that "[t]his Court has original subject-matter jurisdiction under both 15 U.S.C. § 1121 and 28 U.S.C § 1338(a) because Gilead's primary claims are under the Lanham Act, and this Court has pendant jurisdiction over Gilead's state-law claims." Dkt. No. 1661 at 11 (citing Dkt No. 1664 ¶ 184).

Levitan argues that venue is improper in the Eastern District of New York. *See* Dkt. No. 1667 at 13. But as Gilead points out, "venue is appropriate in this District because several defendants reside in this District and a substantial part of the underlying events occurred in this District: *e.g.*, numerous sales of counterfeits into this District; the large-scale counterfeiting distribution operation run in this District by Brooklyn-based Defendants Scripts Wholesale Inc. and Diamantstein; and the largescale counterfeit manufacturing, counterfeit distribution, and money-laundering operation run in this District by Queens-based Defendants Khaim, Shukurov, Abdullaev, Boulevard 9229 LLC, and a large number of real estate-holding entities." Dkt. No. 1661 (citations omitted). And, as discussed below, Judge Donnelly has already rejected a similar argument regarding venue in this action.

"Venue in trademark and unfair competition cases is governed by 28 U.S.C. § 1391(b)." *Cartier v. Micha, Inc.*, No. 06-CV-4699, 2007 WL 1187188, at *3 (S.D.N.Y. Apr. 20, 2007) (Chin, J.); *see also Gilead Scis.*, 2022 WL 22947596, at *11 (quoting *Cartier*, 2007 WL 1187188, at *3). Under 28 U.S.C. § 1391(b), venue in general is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *Gilead Scis.*, 2022 WL 22947596, at *11 (quoting 28

U.S.C. § 1391(b)(2)). "The statutory standard for venue focuses not on whether a defendant has made a deliberate contact—a factor relevant in the analysis of personal jurisdiction—but on the location where events occurred." *Id.* at *12 (citations omitted).

As this Court already held as for Vega, venue lies in this district under 28 U.S.C. § 1391(b)(2):

> [t]he alleged scheme involved the sale of counterfeit drugs, some from the defendant, to pharmacies in the Eastern District of New York. Many of the participants in the scheme—most of the pharmacies, counterfeit suppliers, a distributor, and certain businesses associated with money laundering—are also located in the district. Thus, venue lies in this district under Section 1391(b)(2).

*Id.*

If venue is proper for Vega, it is also proper for Levitan. Among other things, Gilead alleges that Levitan was the primary contact between Synergy and Vega. Dkt. No. 1644 ¶ 281-82. Synergy and Vega, under Levitan's direction, supplied "a large volume of counterfeits" to Safe Chain. Gilead points to specific emails involving Synergy, introducing Levitan being "involved with the inventory and acquisition," and Levitan's email to Vega looking for more "inventory." *Id.* ¶ 282. Vega personally travelled to New York City to conduct the counterfeiting business, and Synergy transferred revenues to New York entities, and/or purchasing counterfeits in New York. *Id.* ¶ 188. Further, Safe Chain allegedly conspired with others to sell counterfeit Gilead medication to "pharmacies in New York City." *Id.*; *see also Gilead Scis.*, 2022 WL 22947596, at *7 ("[T]he evidence shows that [Vega] was acting as a representative of Synergy, and he corresponded with Safe Chain after Safe Chain rejected Synergy-sourced Gilead bottles on which were glued a different drug's inserts.").

Levitan argues that venue is improper because he "is a resident of Florida," and "does not reside in New York, maintain offices in New York, or regularly conducts business in New York."

Dkt. No. 1667 at 13. Judge Donnelly, however, has already rejected this precise argument. *Gilead Scis.*, 2022 WL 22947596, at *12 ("The defendant [Vega] argues that venue is nevertheless improper because he does not live in the district, has no agent in this district and does not transact his affairs in this district. . . . But those assertions, even if true, are not enough to show that venue does not lie."). Therefore, venue is proper is this district under 28 U.S.C. § 1391(b)(2).

The undersigned therefore respectfully recommends that Levitan's venue motion be denied.

### C. Levitan's Argument regarding a Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (citation omitted), and must show that the court has subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); Fed. R. Civ. P. 12(h)(3).

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*, 952 F.3d at 75. Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff but need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

Here, Levitan does not adequately demonstrate that Gilead has failed to state a claim. Levitan does not identify which of the several causes of action in the Sixth Amended Complaint Gilead has failed to adequately plead. As noted in Part I.A above, Gilead has sufficiently pleaded with facial plausibility that Levitan is liable for various claims under the Lanham Act and relevant state law causes of action. *See, e.g., Eisenberger v. Friedman*, No. 22-CV-3025 (NSR), 2025 WL 2084429, at *2 (S.D.N.Y. July 23, 2025) (denying *pro se* defendant's motion to dismiss as there were "insufficient arguments to serve as a basis for a 12(b)(6) motion to dismiss, as they do not go to whether Plaintiff has plausibly stated a claim for relief").

Accordingly, the undersigned respectfully recommends that Levitan's motion to dismiss be denied.

## V. <u>Levitan's Motion for a More Definite Statement</u>

Levitan also moves for a more definite statement. *See* Dkt. No. 1666. Rule 12(e) of the Federal Rules of Civil Procedure provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Rule 12(e) motions generally are disfavored because of their dilatory effect [and] the rule is designed to strike at

unintelligibility rather than want of detail." *Asset Co IM Rest, LLC v. Katzoff*, No. 23-CV-9691 (JPC), 2025 WL 919489, at *5 (S.D.N.Y. Mar. 26, 2025) (citation omitted). "A motion pursuant to Rule 12(e) should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Id.* (quoting *Kok v. First Unum Life Ins. Co.*, 154 F. Supp. 2d 777, 781-82 (S.D.N.Y. 2001)). "Whether to grant a motion for a more definite statement is within the discretion of the district court." *Hawkins v. Synchrony Bank*, No. 23-CV-6583 (EK) (VMS), 2025 WL 890476, at *5 (E.D.N.Y. Mar. 24, 2025) (citation omitted). "In exercising this discretion, a court may grant a motion for a more definite statement when neither the [c]ourt nor [the defendants] can reasonably discern what [the plaintiff's] claims are or whom they are against." *Id.* (citation omitted).

Here, Levitan can reasonably discern Gilead's claims and what is being alleged against Levitan. The 194-page Sixth Amended Complaint addresses claims against all Defendants, including Levitan. *See* Dkt. No. 1644. The Sixth Amended Complaint also goes into considerable detail about the role that Levitan played in the alleged criminal enterprise and the specific contacts and defendants to whom he supplied counterfeits. *See id.* ¶¶ 106, 278-284. It cannot be reasonably said that the Sixth Amended Complaint is "entirely unsupported by any specific factual predicate" as to Levitan. Dkt. No. 1666 ¶ 2. Rather, Levitan can, and indeed has, prepared a response to Gilead's pleadings. *See, e.g.*, Dkt. No. 1670 (Levitan's Answer to the Fourth Amended Complaint).

The undersigned therefore respectfully recommends that Levitan's motion for a more definite statement be denied.

## VI. <u>Levitan's Motion to Appoint Counsel</u>

Levitan filed a motion for appointment of counsel, arguing that "[t]his case presents extraordinary legal and factual complexity, constitutional issues, multi-district jurisdictional questions, *ex parte* seizure procedures under the Lanham Act, digital forensics, and the rights of non-party family members." *See* Dkt. No. 1653. Levitan contends that, without counsel, for which the costs are allegedly too high, he "cannot meaningfully participate in a proceeding architected for mass litigation." *Id.* at 1, 6.

The Court may request an attorney to represent a person unable to afford counsel. 28 U.S.C. § 1915(e)(1). However, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *See Leftridge v. Conn. State Trooper Officer #1283*, 640 F.3d 62, 68-69 (2d Cir. 2011). "When deciding whether to appoint a lawyer for an indigent party in a civil action, the following criteria are applied: (1) the merits of the party's claims; (2) ability to pay; (3) plaintiff's efforts to obtain a lawyer; (4) the availability of a lawyer; and (5) plaintiff's ability to gather and deal with the relevant facts." *Arias v. Apple Cutting, Inc.*, No. 96-CV-8272 (DLC), 1998 WL 26194, at *1 (S.D.N.Y. Jan. 22, 1998) (citing *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989)). "The threshold requirement is a showing of sufficient likelihood of success on the merits to warrant the appointment of counsel." *Id.* (citing *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121 (2d Cir. 1988)). "Though the Court has the discretion to appoint counsel, it needs to be exercised judiciously, with the acknowledgment that the time of volunteer lawyers 'is a precious commodity.'" *Singleton v. Rochester City Sch. Dist.*, No. 15-CV-6746 (DGL) (JWF), 2019 WL 13293967, at *2 (W.D.N.Y. Jan. 17, 2019) (quoting *Cooper v. A Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989).

At this stage in the proceedings, the undersigned respectfully recommends that Levitan's motion for appointment of counsel be denied, without prejudice to renewal. Levitan has, in this

very case, previously retained counsel, and it remains unclear as to why he cannot again obtain counsel going forward. In the interim, Levitan may consider contacting the Clerk of the Court, and reviewing the resources available for *pro se* litigants page on the Eastern District of New York website. Access to these resources can be found on the Court's website, including relevant forms and information (https://www.nyed.uscourts.gov/representing-yourself).

Additionally, Plaintiff can contact the Federal *Pro Se* Legal Assistance Project of the City Bar Justice Center (https://www.citybarjusticecenter.org/projects/federal-pro-se-legal-assistance-project) for limited-scope legal assistance.

**VII. <u>Levitan's Motion to Vacate the Seizure Order and the Asset Order</u>**

Liberally construed, Levitan seeks to vacate the August 11, 2022 Asset Freeze Order and Seizure Order against him. *See* Dkt. No. 1667 at 6-11; *see also* Dkt. Nos. 627, 629. Levitan fails to make a cogent argument in support of his motion. At bottom, any countervailing hardship or injury to Levitan arising from the Asset Freeze Order or the Seizure Order would not outweigh the presumptive harm to Gilead in this case, for the reasons articulated by Gilead in seeking these orders earlier in the case. *See* Dkt. No. 607. Nor is it prudent to lift such orders given the current status of the litigation. Moreover, notwithstanding the emergency nature of Gilead's earlier submissions for asset freezes and seizure orders, there is no indication that any greater process afforded to Levitan would have altered the result of the Asset Freeze Order or the Seizure Order with respect to Levitan. *See, e.g., United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896 (2d Cir. 1992).

Levitan's argument that this Court lacks jurisdiction to enter the aforementioned orders is also misplaced, for the reasons articulated by Gilead in its original motion for such orders. *See*

Dkt. No. 607. The undersigned further agrees with Gilead that Levitan's reliance on *Trump v. Casa, Inc.*, 606 U.S. 631 (2025) is wholly inapposite. *See* Dkt. No. 1661 at 18.

Accordingly, the undersigned respectfully recommends that Levitan's motion to vacate the Asset Freeze Order and the Seizure Order be denied without prejudice to renewal in the future.

## VIII. Conclusion

For the reasons set forth above, the undersigned respectfully recommends that Levitan's Motions (Dkt. Nos. 1651, 1653, 1666, 1667) be granted in part and denied in part. And the undersigned also respectfully recommends that Gilead's motion for default judgment (Dkt. Nos. 1662, 1663) be denied without prejudice to renewal.

A copy of this Report and Recommendation is being electronically served on counsel and emailed to Levitan. This Court directs Gilead to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Levitan and to file proof of service on ECF by 11 a.m. on May 18, 2026.

Any objections to this Report and Recommendation must be filed within fourteen (14) days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Donnelly. The "failure to object timely to a [magistrate judge]'s report operates as a waiver of any further judicial review of the [magistrate judge]'s decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d. Cir. 1989)). Indeed, "a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Stevens v. Duquette*, No. 22-1571, 2024 WL 705954, at *1 (2d Cir. Feb. 21, 2024) (quoting *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)). Accordingly,

the failure to file objections within this timeframe or specify the particular issues to be reviewed precludes further review of this Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Frego v. Kelsick*, 690 F. App'x 706, 709 (2d Cir. 2017) (appellate review barred because plaintiff failed to object to the magistrate judge's report and recommendation pertaining to the claim on which plaintiff now seeks to appeal (citing *Caidor*, 517 F.3d at 604)).

Dated: Brooklyn, New York
May 16, 2026

**SO ORDERED.**

*/s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge