UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

GILEAD SCIENCES, INC., et al.,

Plaintiffs,

v.

SAFE CHAIN SOLUTIONS, LLC, et al.,

Defendants.

------------------------------------------------------------ x

Case No. 21-cv-4106 (AMD) (JAM)

**PLAINTIFFS' OBJECTIONS TO THE MAY 16, 2026 REPORT AND RECOMMENDATION AND MEMORANDUM OF LAW IN SUPPORT OF THEREOF**

Geoffrey Potter
Timothy A. Waters
Thomas P. Kurland
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
T: 212.336.2000
F: 212.336.2222
E: gpotter@pbwt.com
twaters@pbwt
tkurland@pbwt.com

*Attorneys for Plaintiffs*
*Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead Sciences, LLC*

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

LEGAL STANDARD ........ 3

ARGUMENT ........ 4

I. THE R&R ERRS IN FINDING LEVITAN'S DEFAULT WAS NOT WILLFUL ........ 4

A. The R&R Erroneously Failed to Consider that Levitan Was Already Allowed Out of His Initial Default While Represented by Counsel – and Then Immediately Defaulted Again ........ 5

B. The R&R Erroneously Failed to Consider the Bankruptcy Court's Express Findings About Levitan's Willful Failure to Disclose Assets or Participate in Discovery ........ 6

C. The R&R Errs in Failing to Consider that After His Bankruptcy Was Dismissed, Levitan Again Disappeared from This Litigation Without Any Excuse or Explanation ........ 10

D. The R&R Errs In Failing to Consider that While Levitan Was In Knowing Default of This Litigation, He Was Actively Pursuing His Own Satellite Litigation Against Gilead and Its Counsel ........ 13

E. The R&R Errs By Crediting Levitan's Pro Se Status ........ 14

II. THE R&R ERRS IN FINDING LEVITAN PRESENTED EVIDENCE OF A MERITORIOUS DEFENSE ........ 15

A. The R&R Erred in Finding Levitan Presented Evidence of a Meritorious Personal-Jurisdiction Defense. ........ 16

B. The R&R Erred in Finding Levitan Presented Evidence of a Meritorious Defense Based on His Frivolous Motion to Dismiss ........ 16

III. THE R&R ERRS IN FINDING GILEAD'S MOTION FOR DEFAULT JUDGEMENT PREMATURE ........ 18

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bricklayers and Allied Craftworkers Local 2 v. Moulton Masonry & Const., LLC*,
779 F.3d 182 (2d Cir. 2015)........6

*Enron Oil Corp. v. Diakuhara*,
10 F.3d 90 (2d Cir. 1993)........4, 18

*Geis Constr. S., LLC v. Delahunt*,
No. 20-CV-3834 (MKB) (JMW),
2023 US Dist LEXIS 56955 (E.D.N.Y. Mar. 31, 2023)........4, 12

*Guggenheim Capital, LLC v. Birnbaum*,
722 F.3d 444 (2d Cir. 2013)........3

*Jaramillo v. Vega*,
675 Fed. App'x 76 (2d Cir. 2017)........3, 15

*Manzanares v. Your Favorite Auto Repair & Diagnostic Center, Inc.*,
No. 17-CV-5001 (MKB) (RML),
2020 US Dist LEXIS 204386 (E.D.N.Y. Nov. 2, 2020)........4, 15

*New York v. Green*,
420 F.3d 99 (2d Cir. 2005)........12

*Puddu v. 6D Global Tech., Inc.*,
No. 15-cv-8061 (AJN), 2020 US Dist LEXIS 95460 (S.D.N.Y. May 31, 2020)........12

*Salomon v. 1498 Realty Corp.*,
148 F.R.D. 127 (S.D.N.Y. 1993)........4

*Sibley v. Choice Hotels Int'l, Inc.*,
304 F.R.D. 125 (E.D.N.Y. 2015)........3

*So Young Cho v. Osaka Zen Spa*,
No. 19-cv-7935 (ER), 2023 US Dist LEXIS 138084 (S.D.N.Y. Aug. 4, 2023)........4

*U.S. v. Veeraswamy*,
765 F. Supp. 3d 168 (E.D.N.Y. 2024)........12

**Statutes**

28 U.S.C. § 636........3

**Other Authorities**

Fed. R. Civ. P. 6........3

Plaintiffs Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead Sciences, LLC (collectively, "Gilead") respectfully object to the portions of Judge Marutollo's May 16, 2026 Report and Recommendation, ECF No. 1681, (the "R&R") that recommend vacating the default entered against Defendant John D. Levitan, Sr. ("Levitan") and denying without prejudice Gilead's pending motion for default judgment, and respectfully submit this memorandum of law in support of Gilead's objections.

## PRELIMINARY STATEMENT

The evidence of Levitan's willful, bad-faith default in this case is overwhelming. At issue is entry of Levitan's *second* default. Levitan had entry of his first default lifted after promising—on the record and through counsel—to immediately begin participating in this case while discovery was still open, including committing to specific so-ordered deadlines to make disclosures required by the Court's Asset Freeze and Seizure Orders, to produce documents, information, and responses to Gilead's pleadings and discovery demands, and to sit for a deposition in this case. Nearly three years later, Levitan has not kept any of those promises.

Levitan's first maneuver to avoid his promised participation in this action was to file for bankruptcy protection on the exact same day as the so-ordered deadline to make his first disclosures. After he engaged in nine months of litigation misconduct in that proceeding, the bankruptcy court issued sanctions and dismissed Levitan's bankruptcy petition because of his "intentional and willful" refusal to produce documents and information about his own assets – the exact same information Levitan promised to produce, but then refused to produce, in this case.

After his fraudulent bankruptcy was dismissed, Levitan's second maneuver was to simply disappear from this case for over sixteen months, watching silently from the sidelines while all discovery was completed. So his default was entered a second time. Levitan has never attempted

to give any explanation or excuse for this disappearing act – nor could he. Because instead of appearing and litigating Gilead's claims against him in this Court, Levitan chose to file a separate *pro se* lawsuit against Gilead and its counsel in Florida state court, bringing frivolous claims directly challenging Gilead's allegations and this Court's orders in *this* case.

The record is undisputed: Levitan deliberately chose not to appear and defend himself in this case while discovery was open, while simultaneously prosecuting his own *pro se* lawsuit *about* this case in a different forum. It is difficult to imagine more direct and conclusive proof that Levitan's decision to default in this action was intentional and willful. For Levitan to now appear before this Court, plead mercy because of his *pro se* status, and ask for entry of his default to *again* be lifted so he can start discovery anew is egregious. It makes a mockery of this Court.

Upon Gilead's objections, this Court must review the R&R's recommended findings *de novo*, but Gilead respectfully submits that the R&R would not survive clear error review. The R&R's evaluation of Levitan's willfulness ignores all of the most salient and brazen facts of this case: Levitan's deliberate wasting of the lifeline he was thrown when entry of his first default was vacated; the bankruptcy court's express findings that he willfully refused to provide in that proceeding (and admitted under oath he did not even look for) the same information he refused to provide in this case; Levitan's utter lack of any explanation or excuse for his non-participation in this case while discovery was open; and Levitan's decision to prosecute his own frivolous *pro se* suit against Gilead and its counsel instead of appearing in this one.

The special solicitude that courts afford *pro se* litigants cannot endure if even the most egregious and obvious bad-faith actors like Levitan are allowed to repeatedly take advantage of that solicitude to wreak havoc on the orderly administration of justice. The flood of frivolous motions and papers with which Levitan has inundated this Court since moving to vacate entry of

his second default is just a hint of what is to come if Levitan is given yet another opportunity to continue his intentional litigation malfeasance. The Court should find that the R&R erred in finding Levitan's default was not willful, erred in finding that Levitan presented evidence of a meritorious defense, and deny his motion to vacate entry of his second default.

**LEGAL STANDARD**

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "When a party raises an objection to a magistrate judge's report, the Court must conduct a *de novo* review of any contested sections of the report." *Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 129 (E.D.N.Y. 2015) (applying *de novo* review to objection to R&R recommending vacatur of defendant's default); *see* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").[1]

As this Court held in denying Levitan's motion to vacate entry of his first default, Levitan's burden is to address "the full standard for vacatur of entry of default, including (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to Plaintiffs." ECF No. 1169 (*citing Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)). In the Second Circuit, "a court need not consider all three criteria, however, because its determination that the default was willful is sufficient to support the denial of a motion to vacate." *Jaramillo v.*

---

[1] Judge Marutollo issued his Report & Recommendation on Saturday, May 16, 2026, *see* ECF No. 1681, so the fourteenth day thereafter fell on Saturday, May 30, 2026. This Objection is therefore timely pursuant to Fed. R. Civ. P. 6(a)(1)(c) (". . . if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.")

*Vega*, 675 Fed. App'x 76, 76 (2d Cir. 2017) (citations omitted); *see also Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 17-CV-5001 (MKB) (RML), 2020 US Dist LEXIS 204386, at *23 (E.D.N.Y. Nov. 2, 2020) ("[W]illfulness alone is a sufficient basis to deny vacating the default.").

"'A default is willful if it is 'more than merely negligent or careless, but is instead egregious and . . . not satisfactorily explained.'" *Geis Construction South, LLC v. Delahunt*, No. 20-CV-3834 (MKB) (JMW), 2023 US Dist LEXIS 56955, at *17 (E.D.N.Y. Mar. 31, 2023) (internal citations and quotations omitted). "[W]here a defendant provides no justification for the failure to respond or deliberately fail[s] to respond to the complaint, the defendant's default may be considered egregious and not satisfactorily explained." *Id.* (internal quotations omitted). Conduct that is "deliberately evasive," even if not in "bad faith," can amount to willful default. *See So Young Cho v. Osaka Zen Spa*, No. 19-cv-7935 (ER), 2023 US Dist LEXIS 138084, at *14 (S.D.N.Y. Aug. 4, 2023).

To satisfy his burden of demonstrating a meritorious defense, the defaulted party must submit evidence that, if accepted by the trier of fact, would constitute a complete defense to the claims against him. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). The defendant must "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *Salomon v. 1498 Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993).

## ARGUMENT

### I. THE R&R ERRS IN FINDING LEVITAN'S DEFAULT WAS NOT WILLFUL

Gilead objects to the R&R's conclusion that Levitan's default was not willful, and respectfully submits that the R&R erroneously failed to discuss or give any weight numerous indicators of Levitan's willfulness.

### A. The R&R Erroneously Failed to Consider that Levitan Was Already Allowed Out of His Initial Default While Represented by Counsel – and Then Immediately Defaulted Again

In its analysis of the willfulness of Levitan's default, the R&R erroneously affords no weight whatsoever to the fact that Levitan was already afforded the "one last chance" that he seeks in his latest motion to vacate his *second* entry of default. On October 12, 2023, Levitan, *while represented by counsel*, agreed in writing to a deal brokered by then-Magistrate Judge Reyes: Levitan *expressly accepted service through counsel*, and promised as a condition of his entry of default being vacated that he would meet a series of hard-and-fast near-future deadlines, the first of which was to cure his longstanding contempt of the Asset Freeze Order by making a full disclosure of his assets. *See* Oct. 12, 2023 Minute Order ("1) vacating entry of default against defendant John Levitan and default will be vacated; 2) requiring defendant John Levitan to comply with asset freeze disclosures by 11/10/2023; 3) requiring Mr. Levitan to appear for a deposition by 11/25/2023; and 4) requiring Mr. Levitan to file answer by 12/11/2023."); *see also* Oct. 16, 2023 Minute Order ("Clarifying the Court's October 12, 2023 ECF Order that Mr. Levitan's disclosures apply to both the Asset Freeze Order (ECF No. 627) and the Seizure Order (ECF No. 629)").

It is undisputed that Levitan did not comply – and to this day, two and a half years later, has never complied – with *any* of the conditions precedent to vacating entry of his default. Simply put: Levitan was already thrown a lifeline, and he squandered it – and he was *not pro se* when he did. The R&R errs in failing to give any weight whatsoever to the circumstances upon which entry of Levitan's *first* default was vacated, and that lifeline squandered, when considering the willfulness of Levitan's *second* default.

Gilead is unaware of any caselaw, and none is cited in the R&R, where a defendant's default is found to be non-willful after entry of his initial default is vacated on his express promise that he will immediately participate in the litigation, and then he actively and intentionally breaks

that promise – all while represented by counsel. That by itself is more than sufficient to find Levitan's default to be willful. *See, e.g.*, *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (affirming finding *pro se* defendant willfully defaulted when he initially requested more time to respond on behalf of his entity co-defendant, but thereafter "failed to file a responsive pleading for over nine months after the receipt of the summons and complaint, nearly eight months after the defendants were informed that the plaintiffs had requested an entry for default, and six months after they were served with discovery demands," noting his "request for an extension of time, through counsel, belies any inference that the failure to file a responsive pleading was merely a mistake.") But as set forth below, this is just the tip of the iceberg of the undisputed record evidence that Levitan's default was willful.

### B. The R&R Erroneously Failed to Consider the Bankruptcy Court's Express Findings About Levitan's Willful Failure to Disclose Assets or Participate in Discovery

The first deadline Levitan agreed to as a condition for vacating entry of his initial default was that he had to cure his contempt of the Asset Freeze Order and Seizure Order by disclosing his assets and the records of his participation in the purchase and sale of counterfeit Gilead-branded HIV medicine by November 10, 2023. *See* Oct. 12, 2023 Minute Order; Oct. 16, 2023 Minute Order. But Levitan did not disclose anything on November 10, 2023. Instead, on that date he filed for bankruptcy and invoked the automatic stay, while represented by counsel. *See* ECF No. 1217.

The R&R errs by failing to take into consideration that Levitan filed for bankruptcy literally on the day he had agreed—and been *ordered*—to begin to make good on his promises to the Court. Levitan certainly has never offered any explanation as to how he could have been honest with the Court in promising to immediately participate in this action when he turned around and filed for bankruptcy less than a month later, all while represented by the same attorneys.

But more fundamentally, the R&R errs in completely ignoring the bankruptcy court's well-supported, repeated, and emphatic findings that Levitan engaged in "knowing and willful" litigation misconduct throughout his bankruptcy proceedings. That includes the bankruptcy court's findings that Levitan "knowingly and willfully" failed to disclose his assets in the bankruptcy court, and that Levitan admitted as much under oath – all while represented by counsel. Levitan filed for bankruptcy on the day he promised this Court he would disclose his assets, and then intentionally failed to disclose his own assets in his own bankruptcy proceeding. It is clear error for the R&R to ignore these facts in determining whether Levitan's failure to live up to the promises he made to vacate entry of his *first* default, and his resultant *second* default, was willful.

In its prior filings, Gilead has extensively detailed Levitan's litigation malfeasance in his bankruptcy proceedings and the bankruptcy Court's repeated issuance of sanctions and findings that Levitan had proceeded in bad faith. ECF No. 1453 at 10-16 (Gilead's memorandum of law in support of its motion to hold Levitan in default a second time, in August 2024); ECF No. 1454-1455 (Gilead's evidentiary support of that motion, including the Bankruptcy Court's Orders); ECF No. 1661 at 2-7 (Gilead's opposition to the instant motion to vacate default, summarizing the bankruptcy court's orders and incorporating its arguments and evidence from its August 2024 motion to hold Levitan in default). For present purposes, Gilead highlights that Levitan's bankruptcy ended with a show-cause hearing why he should not be sanctioned for his bad-faith conduct before the Court. ECF No. 1454-4. The judge observed that Levitan's conduct in his bankruptcy "looks [] like a continuation of the litigation strategy that was started when [Gilead] obtained a default judgment against this debtor," and Levitan was "successful in holding [Gilead] at bay with respect to discovery … very basic information regarding assets liability." *Id.* 4:24-5:2, 7:22-25. At the conclusion of the hearing, the judge stated for the record that "this Court has

entered several orders that have not been complied with, [o]rders that have very specific requirements or directives to [Levitan]," and held that Levitan had failed "even the most basic requirements of being a debtor in this [c]ourt. The record is replete with this." *Id.* 22:19-23:1. The judge went on to say that Levitan's sporadic efforts at bare-minimum compliance were "not good enough, and we're sending the wrong message, if I find that that's good enough to do what this debtor has done over the last few months and then give him another chance." *Id.* 23:12-15.

That show-cause hearing was followed by a written order in which the bankruptcy court issued sanctions and dismissed Levitan's bankruptcy with a two-year filing bar "based on his knowing and willful failure to abide by orders of the [c]ourt, including but not limited to the [orders compelling him to produce discovery], and his knowing and willful failure to file accurate schedules of his assets and liabilities." ECF No 1454-5 at 6. In support of its order, the court made various factual findings, including that Levitan "knowingly and willfully failed to comply with … his statutory duties [to file accurate financial schedules] under 11 U.S.C. § 121," *id.* at 2; that "Levitan was evasive, hostile, uncooperative, and frequently gave non-responsive answers, and showed disrespect to the attorney deposing him" in his deposition, *id.* at 3; and that at deposition "Levitan admitted he never searched for documents responsive to Gilead's [Bankruptcy] Rule 2004 requests, and that his schedules of assets and liabilities were inaccurate in that they omitted many of his business interests," *id.* at 4 (citations omitted).

In sum, the bankruptcy court found that Levitan not only flouted the its orders and his basic duty to disclose his assets, but that he admitted, under oath, that he never even looked for the documents that Gilead demanded and the court ordered him to produce, and that he knew his purported financial disclosures were false. The R&R does not mention, let alone give any weight to, these uncontradicted findings by the bankruptcy court, issued after nine months of litigation

and multiple show-cause hearings. Instead, the R&R focuses solely on an excerpt from Levitan's deposition testimony in the bankruptcy action, where he testified that he filed for bankruptcy because he knew his deadline to produce his financial disclosures in this action – to which he agreed, through counsel, as a condition to vacating entry of his first default – was imminent. R&R at 16. The R&R found that testimony to be "muddled" and that it did not "unequivocally show that Levitan has admitted to nefariously filing for bankruptcy to exit the present litigation." *Id.* Gilead respectfully disagrees that the testimony is muddled, but more importantly, the R&R errs by focusing on a single snippet of Levitan's testimony while ignoring the bankruptcy court's repeated and emphatic findings—based on its own assessment of Levitan's credibility after holding show cause hearings on the matter—that Levitan willfully flouted the bankruptcy court's orders, including his "knowing and willful failure to file accurate schedules of his assets" and produce documents responsive to Gilead's discovery demands.

The R&R similarly errs by crediting Levitan's unsupported statement at a recent conference that his "bankruptcy court proceedings … were 100 percent legitimate" while ignoring the bankruptcy court's findings that Levitan *admitted under oath* that he never looked for the documents to which Gilead was entitled as a creditor and never filed an honest disclosure of his assets. *Id.* And it bears repeating that *Levitan was represented by counsel* throughout the entirety of these bankruptcy proceedings. These were not the actions of a lost *pro se* litigant. They were the actions of a "knowing and willful" contemnor who, despite being aided by counsel, intentionally refused to disclose his assets or meaningfully participate in his own bankruptcy[2].

---

[2] Moreover, Levitan has long since waived any challenge to the bankruptcy court's findings and conclusions. Though Levitan initially sought to appeal the bankruptcy court's contempt findings and dismissal order to the U.S. District Court for the Southern District of Florida, and was granted several extensions to do so, his appeal was ultimately dismissed with prejudice after he failed to timely perfect it. *See Levitan v. Gilead, et al.*, No. 1:24-cv-23205-KNW, at ECF No. 28 (S.D. Fl. Jan. 2, 2025).

In sum, after Levitan promised to disclose his assets and participate in discovery as a condition of vacating entry of his first default, he instead filed for bankruptcy on the day his first disclosures were due, and then the bankruptcy court found that he knowingly and willfully failed to disclose his assets or even look for the documents he was ordered to produce to Gilead. And after his fraudulent bankruptcy was dismissed, Levitan simply disappeared and defaulted again. The record could hardly be clearer that Levitan has repeatedly lied to this Court about his intentions and motivations, and *never* intended to disclose his assets or participate in discovery. If that does not constitute a willful default, it is difficult to imagine what would.

### C. The R&R Errs in Failing to Consider that After His Bankruptcy Was Dismissed, Levitan Again Disappeared from This Litigation Without Any Excuse or Explanation

The R&R further errs in its evaluation of Levitan's willfulness by failing to consider or give any weight to Levitan's complete lack of excuse or explanation for his *second* default.

There can be no question that Levitan was acutely aware of this case when his bankruptcy was dismissed: in his bankruptcy filings he listed Gilead as his primary creditor on the basis of Gilead's claims against him in this litigation. But after the automatic stay was lifted, instead of participating in this case as he had promised, Levitan disappeared from this case altogether. Gilead therefore moved for entry of his default a second time. ECF No. 1452. In response, the Court scheduled a status conference on September 12, 2024, noting specifically:

> Counsel for Plaintiffs along with Defendant John Levitan are expected to appear and be prepared to discuss the Court's October 28, 2022 stipulation and the contemplated Entry of Default as to Mr. Levitan. Mr. Levitan is warned that a failure to appear will likely weigh in favor of an entry of default. Plaintiffs are directed to serve a copy of this Order upon Mr. Levitan, file proof of service by September 5, 2024, and ensure that Mr. Levitan is aware of the upcoming conference.

*See* Sept. 3, 2024 Minute Order. Gilead duly notified Levitan, who wrote a letter to the Court about the upcoming hearing, to which Gilead responded. ECF Nos. 1472-1474.

Despite being unquestionably aware of the conference and being explicitly told his non-appearance would weigh in favor of an entry of default, Levitan chose not to appear at the conference or oppose Gilead's motion. *See* ECF No. 1475. This Court therefore directed the Clerk to enter Levitan's default a second time. *See* Sept. 12, 2024 Minute Order. Then Levitan disappeared from this case again, for another *sixteen months*.

When Levitan next re-emerged in January 2026 and moved to vacate entry of his *second* default, he offered no excuse or explanation for his failure to comply with his prior promises to participate in this case, or for his failure to appear at the September 12, 2024 conference, or for his general disappearance from this lawsuit altogether. *See generally* ECF No. 1651. Indeed, his motion to vacate is unsupported by any proof at all. *Id.* This Court then gave him a final chance to explain himself: Judge Marutollo scheduled a hearing for April 30, 2026, ordering that "Mr. Levitan shall be prepared to discuss why" he failed to live up to his promises to the Court when entry of his first default was vacated, and why he never appeared to contest entry of his second default. *See* Apr. 29, 2026 Minute Order. At that hearing, Levitan once again offered *no excuse or explanation whatsoever*. *See generally* ECF No. 1677 (Transcript of Apr. 30 proceedings). The record is painfully clear that Levitan has never offered an excuse for his default because he has none.

It is undisputed that Levitan was at all times well aware of this litigation; well aware of his obligations under the deal he struck on October 12, 2023 to vacate entry of his original default; well aware of the September 12, 2024 hearing that he decided not to attend; and well aware of the Court's explicit warning that his default would be entered again if he failed to appear at that hearing. And it is undisputed that Levitan simply disappeared from this litigation for over sixteen months thereafter.

The R&R commits clear error in its determination of Levitan's willfulness by not taking these undisputed facts into account, and by failing to give any weight to Levitan's complete failure to explain or excuse his conduct, despite being given multiple attempts to do so. *See, e.g.*, *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) (finding defendants' default to be willful where they "offered no explanation for their counsel's failure to appear or seek any extension of time to respond to the complaint," or "any justification for their own failure to take action [for months] after receiving notice that the clerk had entered a default against them, thereby clearly signaling to [d]efendants that their counsel had not taken the requisite steps to defend their interests in the litigation.") (cleaned up); *Geis*, 2023 U.S. Dist. LEXIS 56955 at *17-18 ("A default is willful if it is more than merely negligent or careless, but is instead egregious and not satisfactorily explained. … A default may be satisfactorily explained when it was caused by a mistake made in good faith. In contrast, where a defendant provides no justification for the failure to respond or deliberately fails to respond … the defendant's default may be considered egregious and not satisfactorily explained.") (internal quotations and citations omitted).[3]

[3] The R&R's error in failing to take into consideration Levitan's complete lack of an excuse or explanation is made clear by the R&R's reliance on caselaw in which a defendant's default was found to be non-willful because the defendant offered an adequate excuse or explanation for his failure to participate in the litigation. *See* ECF No. 1681 at 16-17 (citing *U.S. v. Veeraswamy*, 765 F. Supp. 3d 168, 189 (E.D.N.Y. 2024) (Marutollo, J.) and *Puddu v. 6D Global Tech., Inc.*, No. 15-cv-8061 (AJN), 2020 US Dist LEXIS 95460 at *12 (S.D.N.Y. May 31, 2020)). In *Veeraswamy*, the court concluded that the defendant's default was not willful because she submitted an affidavit in which she "**explain[ed]** that her mailing address was updated and changed in March of 2024—the month in which most of the Government's service attempts were made." 765 F. Supp. 3d at 189-190 (emphasis added). In *Puddu*, the court concluded that the defendant's default was not willful because he "**provide[d] several satisfactory explanations** for why he failed to timely respond to the complaint" in a sworn affidavit accompanying his motion to vacate, including *inter alia* "that he was not aware that his time to respond had begun to run. If he had been aware of that fact, he argues, he would have immediately responded." *See* 2020 US Dist LEXIS 95460 at *10-12 (emphasis added).

**D. The R&R Errs In Failing to Consider that While Levitan Was In Knowing Default of This Litigation, He Was Actively Pursuing His Own Satellite Litigation Against Gilead and Its Counsel**

The R&R further errs by failing to take into account the fact that while Levitan was deliberately remaining in default in this case, he was actively pursuing his own lawsuit against Gilead and its counsel as a *pro se* plaintiff in Florida state court. *See* ECF No. 1680 at 6-7 (discussing Levitan's *pro se* lawsuit and decision to pursue his own independent claims against Gilead and its counsel rather than litigate this case in this Court); R&R at 14, fn. 7 (mentioning in a footnote, as a factual matter and without analysis, Levitan's *pro se* lawsuit against Gilead).

Levitan's *pro se* case against Gilead and its counsel is based entirely on *this* case: the allegations Gilead made against Levitan in support of its claims against him, and the execution of this Court's Seizure Order. *See generally Levitan v. Gilead et al.*, No. 1:26-cv-02329-AMD-JAM, ECF No. 1-1 at pp. 708-736 (E.D.N.Y.). Levitan filed his *pro se* Florida state-court action on September 2, 2024, and was extremely active in that case, filing affirmative motions to compel, for sanctions, to disqualify opposing counsel, to recuse the state-court judge, and to submit additional authority; repeatedly amending his pleadings; filing repeated oppositions to motions to remove, to transfer, and to dismiss his pleadings; and noticing numerous appeals. *See generally, id.*, ECF 1-1; *see also id.*, ECF No. 36 at pp. 8-10 (Gilead's opposition to Levitan's motion for leave to file a third amended complaint, recounting procedural history). That *pro se* lawsuit has now been removed (for the second time) and transferred to this Court (for the second time), and Gilead's motion to dismiss is pending. *See id.* at ECF No. 37.

In short, the undisputed record is that Levitan is an extremely engaged, vigorous and prolific *pro se* litigant against Gilead when he chooses to be – just not in this case. Levitan has spent months and months filing frivolous motions in his *own* lawsuit about *this* lawsuit, while deliberately refusing to participate in *this* lawsuit in any way. Levitan was not merely in willful

default: he was flaunting his willful default by choosing to litigate these exact same issues in a forum of his own choosing while refusing to respond in this action. The R&R committed clear error in failing to even consider Levian's active *pro se* litigation against Gilead and its counsel while he remained in knowing default in this action.

### E. The R&R Errs By Crediting Levitan's *Pro Se* Status

Finally, the R&R errs in its determination of Levitan's willfulness by relying heavily on Levitan's *pro se* status. *See* R&R at 14-17.

As noted above, Levitan was represented by counsel when he made the deal to lift his original default by accepting service through counsel and promising to participate in the case by meeting certain specific deadlines. And Levitan was represented by counsel throughout his fraudulent bankruptcy proceedings, wherein the bankruptcy court found that he knowingly and willfully failed to disclose his assets or even look for the documents he was required to produce to Gilead. Levitan's default was blatantly willful long before he became *pro se*. To view his motion to vacate entry of his second default through a lens of *pro se* solicitude is to ignore the bad-faith, unexplained and inexcusable litigation malfeasance he committed while represented by counsel. And while Levitan became *pro se* by choice after his bankruptcy was dismissed,[4] as noted above he demonstrated for months his ability to vigorously litigate against Gilead without counsel in his own lawsuit, while deliberately ignoring this one.

More fundamentally, to allow Levitan's current *pro se* status to eclipse the overwhelming evidence of his willful default is to do a disservice to the tradition of judicial solicitude for

[4] The Court cannot credit any claim by Levitan that he cannot afford counsel, given that he remains in willful contempt of this Court's Asset Freeze Order and still, four years later, has not disclosed any of his assets, including in the bankruptcy he initiated. Of course, *Levitan has never actually made such a claim*. Even in his putative "motion for appointment of counsel," he claims only that hiring a lawyer for this case would be expensive, not that he cannot afford it. *See generally* ECF No. 1653 at 1.

unrepresented parties. Courts do and should extend leniency to parties that make good-faith mistakes or procedural missteps without the guidance of counsel. Extending that same leniency, repeatedly, to a bad-faith actor with an extensive history of ignoring his obligations while wreaking havoc on the course of a litigation transforms an essential doctrine of fairness to an instrument of abuse. Holding Levitan to account for his willful, bad-faith default is not a departure from the tradition of solicitude for *pro se* parties: it is essential to preserving it.

The fact pattern here demonstrating Levitan's willful default is extreme: the initial vacating of entry of his first default through false promises, made through counsel, to participate in the litigation; the multiplication of court proceedings initiated by Levitan rather than participating in this one; the judicial findings of his "knowing and willful" failure to participate or produce documents; the second default; the complete lack of excuse or explanation for Levitan's non-participation since then; Levitan's prolific *pro se* filings in his own lawsuit *about* this lawsuit while strategically deciding not to participate *in* this lawsuit. Gilead is unaware of another example in the motion-to-vacate-entry-of-default case law in which the factual showing of willfulness even comes close to the record at issue here.

Under any standard, Levitan's default was willful. That should end the inquiry. *Jaramillo v. Vega*, 675 Fed. App'x at 76; *Manzanares*, 2020 WL 6390162, at *7. The R&R errs by holding otherwise.

## II. THE R&R ERRS IN FINDING LEVITAN PRESENTED EVIDENCE OF A MERITORIOUS DEFENSE

The R&R finds that Levitan demonstrated two supposedly meritorious defenses: a personal-jurisdiction defense and a purported defense that Gilead's pleadings were insufficiently specific as to who Levitan's co-conspirators were. Both findings are erroneous.

### A. The R&R Erred in Finding Levitan Presented Evidence of a Meritorious Personal-Jurisdiction Defense.

Levitan's purported personal-jurisdiction defense is expressly limited to his assertion that the initial service of process made against him in August 2022 was improper. ECF No. 1651 at 6; ECF No. 1675 at 1; *see* R&R at 19 (citing ECF No. 1651 at 6 and ECF No. 1675 at 1). As noted above, however, Gilead subsequently re-served all papers on Levitan's counsel, *which service Levitan accepted on the record as part of his Court-brokered deal to lift his original default. See* ECF No. 1201; Oct. 12, 2023 Minute Order; *see also* ECF No. 1205 (Transcript of Oct. 10, 2023 Conference). Levitan has offered absolutely nothing – not even argument – to hint that the subsequent acceptance of service by his counsel was invalid. Thus, any alleged deficiencies with the original service cannot, as a matter of law, serve as a complete defense to Gilead's claims. The R&R erred in holding otherwise. And, of course, it would be a perversion of justice to hold that Levitan could accept service through counsel as a condition for vacating entry of his *first* default, and then argue that same agreed-to service was invalid so as to vacate entry of his *second* default.

### B. The R&R Erred in Finding Levitan Presented Evidence of a Meritorious Defense Based on His Frivolous Motion to Dismiss

The second supposedly meritorious defense mentioned in the R&R is a handful of bullet points included in Levitan's frivolous, half-page-long argument in support of his motion to dismiss. As the R&R recites, in that motion to dismiss: "Levitan argues that the claims in the Sixth Amended Complaint fail to identify the people Levitan allegedly brought into the conspiracy; what specific acts Levitan committed; '[w]here, when, and how he committed those acts'; '[w]ho he made introductions to' in connection with the alleged conspiracy; and '[w]hat specific counterfeit medications he allegedly sold.' R&R at 19 (quoting ECF No. 1667 at 12-13 (alterations in R&R)). That slew of assertions about the contents of the pleadings is based entirely on Levitan's assertion that "the sole allegation against Levitan is found in Paragraph 106, which states in a single

conclusory sentence that he 'managed and directed an enterprise dedicated to the sale of counterfeit Gilead HIV medication.'" ECF No. 1667 at 12. The R&R erred in finding Levitan's assertions about the pleadings to be meritorious defense for two independent reasons.

First, a simple search for Levitan's name in the Sixth Amended Complaint proves that Levitan's representations about the contents of the pleadings is simply untrue. In addition to paragraph 106, which introduces Levitan, paragraphs 278 through 284 of the pleadings provide additional specific allegations about Levitan, under the header "Leader Defendant John Levitan." Those paragraphs specify numerous specific individuals and companies that Levitan introduced to specific members of the conspiracy, including directly quoting emails that Levitan sent to and received from members of the conspiracy. ECF No. 1644 ¶¶ 278-284. In fact, the R&R itself presents a summary of Gilead's allegations concerning Levitan's involvement with one of the counterfeit suppliers:

> Gilead alleges that Levitan was the primary contact between Synergy and Synergy's principal, Vega. *Id.* ¶¶ 281-82. Synergy and Vega, under Levitan's direction, supplies "a large volume of counterfeits" to Safe Chain. Gilead points to specific emails involving Synergy, introducing Levitan being "involved with the inventory and acquisition," and Levitan's email to Vega looking for more "inventory." *Id.* ¶ 282.

R&R at 25-26.[5] That is not Judge Marutollo's interpretation of Gilead's pleadings: it is a simple factual summary of what it says on the page, contrary to Levitan's obviously false assertion that his name appears only once in the Sixth Amended Complaint at paragraph 106. To state the obvious: lying about the contents of the pleadings cannot constitute a meritorious defense.

---

[5] The Sixth Amended Complaint also contains detailed allegations concerning Synergy's sale of counterfeit Gilead-branded HIV medicine including specific examples showing hundreds of bottles were fraudulently sold with counterfeit pedigrees. ECF No. 1644 at ¶¶ 304-308, 409-417.

Second, the R&R erred because Levitan failed to offer any evidence in support of his supposed defense. As the Second Circuit has held: "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d at 98 (citations omitted). Here, Levitan does not even offer conclusory denials, let alone evidence: he does not deny that he was involved in the counterfeiting conspiracy, or that he (for example) was the primary contact between Synergy and Safe Chain, or that he ordered counterfeits from Synergy to sell through Safe Chain. He certainly does not offer any evidence that the emails Gilead quotes in its pleadings, which Gilead collected directly from Safe Chain's email servers during the execution of this Court's first Seizure Order, are somehow false.

In the end, Levitan offers only a bare and unequivocally false assertion that Gilead's pleadings do not identify who Levitan communicated with or which counterfeits he is responsible for. Under controlling Second Circuit precedent, that is insufficient as a matter of law to establish a meritorious defense in support of a motion to vacate default. *Enron*, 10 F.3d at 98. The R&R errs in finding Levitan offered evidence of a meritorious defense.

## III. THE R&R ERRS IN FINDING GILEAD'S MOTION FOR DEFAULT JUDGEMENT PREMATURE

After recommending that Levitan's default be vacated, the R&R recommends that, in light of the lifting of Levitan's default, Gilead's pending motion for default judgment be denied without prejudice as premature. R&R at 20-21. Because the recommendation that Levitan's default be vacated is erroneous, Gilead's motion for default judgment is not premature, and so the recommendation that the default judgment motion be denied as premature is erroneous as well.

## CONCLUSION

For the reasons stated above and in Gilead's previously filed papers in connection with Levitan's motion to vacate, the Court should find, upon a *de novo* review of the R&R, that the R&R erred in recommending that Levitan's motion to vacate be granted and that Gilead's pending motion for default judgment be denied as premature. The Court should instead deny Levitan's motion to vacate and direct that decision be rendered on Gilead's motion for default judgment.

Dated: New York, New York
June 1, 2026

PATTERSON BELKNAP WEBB & TYLER LLP

By: ______________________
Geoffrey Potter
Timothy A. Waters
Thomas P. Kurland
1133 Avenue of the Americas
New York, New York 10036
T: 212.336.2000
F: 212.336.2222
E: gpotter@pbwt.com
twaters@pbwt
tkurland@pbwt.com

*Attorneys for Plaintiffs*
*Gilead Sciences, Inc., Gilead Sciences Ireland UC, and Gilead Sciences, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of June 2026, electronically filed the foregoing Objections to the May 16, 2026 Report & Recommendation, and Memorandum in Support Thereof, through the CM/ECF system, serving all counsel and *pro se* parties of record and separately caused to be re-served via electronic mail to John D. Levitan, Sr., plaintiff pro se, at jdlsr@johnlevitan.com, along with copies of all cases cited therein that are unpublished or reported exclusively on computerized databases.

________________________________
THOMAS P. KURLAND